Michael I. Katz (CA State Bar No. 181728)
    mkatz@mabr.com
Charles S. Barquist (CA State Bar No. 133785)
    cbarquist@mabr.com
Jared J. Braithwaite (CA State Bar No. 288642)
    jbraithwaite@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone:  (949) 202-1900
Facsimile:   (949) 453-1104

Attorneys for Defendant LITRINIUM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **M/A-COM Technology Solutions Inc.,** a Delaware corporation; **Mindspeed Technologies, S.A.S.**, a French corporation, <br><br> Plaintiffs; <br><br> v. <br><br> **Litrinium, Inc.**, a Delaware corporation; **Jerome Garez**, an individual; and **Does 1 through 20**, inclusive, <br><br> Defendants. | Case No. 8:19cv-00220-JVS-JDE <br><br> **Defendant Litrinium Inc.'s Motion to Dismiss** <br><br> HON. JAMES V. SELNA <br> UNITED STATES DISTRICT JUDGE <br> SANTA ANA, COURTROOM 10C <br><br> Assigned to:   Hon. James V. Selna <br> Trial Date:     None set <br> Hearing Date: April 22, 2019, 1:30 p.m. |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 22, 2019, at 1:30 p.m. in Courtroom 10C of this Court at 411 West 4th Street, Santa Ana, California, 92701, Defendant Litrinium, Inc. ("Litrinium") will and hereby does move the Court to dismiss with prejudice all claims against Litrinium asserted by Plaintiffs M/A-COM Technology Solutions Inc. ("MACOM") and Mindspeed Technologies, S.A.S. ("Mindspeed"; collectively, "Plaintiffs") in the above-captioned action under Federal Rule of Civil Procedure 12(b)(6). In their Complaint, Plaintiffs fail, as a matter of law, to state claims for against Litrinium for misappropriation upon which relief can be granted. Additionally, Plaintiffs' claim for violation of Bus. & Prof. Code § 17200 is preempted by the California Uniform Trade Secrets Act. This Motion to Dismiss is based on this Notice of Motion and Memorandum of Points and Authorities submitted herewith, Litrinium's Request for Judicial Notice and supporting Declaration of Michael I. Katz submitted concurrently, Plaintiffs' Complaint, and other such matters that the Court may consider.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 25, 2019, and in which Plaintiffs' counsel agreed to amend the Complaint but has failed to do so.

## RELIEF SOUGHT

Litrinium seeks an order dismissing Plaintiffs' Complaint against it with prejudice.

DATED: March 20, 2019

Respectfully, Submitted,

MASCHOFF BRENNAN

By: */s/ Michael I. Katz*

Michael I. Katz
Charles S. Barquist
Jared J. Braithwaite

Attorneys for Defendant LITRINIUM, INC.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................... ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 1

II.  THE ALLEGATIONS IN THE COMPLAINT.................................................. 2

III. LEGAL STANDARDS ................................................................................. 7

    A.   To survive a motion to dismiss, a complaint must contain sufficient
        factual matter to plausibly support its claims...................................7

    B.   The California Uniform Trade Secrets Act preempts tort remedies arising
        from the alleged misappropriation of trade secrets...........................8

IV.  ARGUMENT ................................................................................................ 9

    A.   Because Plaintiffs' allegations are directed to conduct in France by a
        French citizen employed by a French company, the Complaint fails to
        state a claim under the CUTSA or DTSA. .......................................10

    B.   Plaintiffs fail to allege trade secret misappropriation by Litrinium. ...............11

        1.   Plaintiffs fail to allege facts to plausibly state that Garez improperly
            acquired any trade secrets........................................................13

        2.   Even if Plaintiffs' alleged that Garez improperly acquired trade
            secrets, Plaintiffs fail to allege disclosure to Litrinium............................14

        3.   Plaintiffs also fail to plausibly allege that Garez used Plaintiffs' TIA
            technology at Litrinium with or without Litrinium's knowledge. ...........16

    C.   Plaintiffs' vague allegations fail to plausibly allege misappropriation of
        any information that constitutes a trade secret.................................18

    D.   Plaintiffs fails to allege facts sufficient show that it took reasonable steps
        to preserve the secrecy of the information claimed to have been
        misappropriated............................................................................21

    E.   Plaintiffs' claim for violation of Bus. & Prof. Code § 17200 is preempted
        by the California Uniform Trade Secrets Act..................................22

V.   CONCLUSION ........................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atl. Inertial Sys., Inc. v. Condor Pac. Indus. Of California, Inc.*,
  545 F. App'x 600 (9th Cir. 2013) ...................................................................9

*Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*,
  No. 16-cv-03737-JCS, 2017 WL 412524 (N.D. Cal. Jan. 31, 2017)...................8

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2018 WL 2298500 (N.D. Cal. May 21, 2018)..................................................21

*Bell Atl Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................15

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
  2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) .................................................11

*Delphix Corp. v. Actifo, Inc.*,
  2014 WL 4628490 (N.D. Cal. Mar. 19, 2014)..................................................14

*Eclectic Pros. E. v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................................8, 16

*Garmon v. Cty. of L.A.*,
  828 F.3d 837 (9th Cir. 2016) ...........................................................................8

*Gems v. Diamond Imports, Inc.*,
  No. 15-cv-03531-MMC, 2016 WL 6902804 (N.D. Cal. Nov. 22, 2016)...........22

*Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*,
  674 F.2d 1336 (9th Cir. 1982) ........................................................................20

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .....................................................................................8

*Leadsinger, Inc. v. BMG Music Publ'g.*,
  512 F.3d 522 (9th Cir. 2008) ..........................................................................23

*Les Concierges, Inc. v. Robeson*,
  2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) .............................................15, 17

*Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc.*,
  No. 15-CV-01267-SC, 2015 WL 4128484 (N.D. Cal. July 8, 2015) ............9, 22

*Menzel v. Scholastic, Inc.*,
  2018 WL 1400386 (N.D. Cal. Mar. 19, 2018).................................................12

iv

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ...........................................................................7

*N. Alaska Salmon Co. v. Pillsbury*,
  174 Cal. 1 (1916) ...........................................................................................11

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .............................................................11

*Pellerin v. Honeywell Intern., Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012).........................................12, 13, 15, 18

*Physician's Surrogacy, Inc. v. German*,
  2018 WL 638229 (S.D. Cal. Jan. 31, 2018).....................................................14

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) ...........................................................................20

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ........................................................................8, 9

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ............................................................................8

*Stoffwechselforschung GmbH v. ProSciento, Inc.*,
  2017 WL 1198992 (S.D. Cal. Mar. 31, 2017) .................................................21

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013).............................................19, 21

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
  587 F.3d 1339 (Fed. Cir. 2009)........................................................................20

*VasoNova Inc. v. Grunwald*,
  No. C-12-02422 WHA, 2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ...........23

*Waymo LLC v. Uber Tech., Inc.*,
  256 F.Supp.3d 1059 (N.D. Cal. 2017) ......................................................8, 9, 22

*Whyte v. Schlage Lock Co.*,
  101 Cal. App. 4th 1443 (2002) .................................................................15, 18, 21

**Statutes**

18 U.S.C. § 1837.........................................................................................................10

18 U.S.C. § 1839...........................................................................................11, 12, 18

Bus. & Prof. Code § 17200........................................................................2, 9, 22, 23

Cal. Civ. Code § 3426.........................................................................9, 11, 12, 20, 21

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This is an action for trade-secret misappropriation filed by a French company, Mindspeed SAS, against its former employee in France, Jerome Garez, who was hired over one year ago by Defendant Litrinium, in France. Plaintiffs' Complaint, however, lacks facts to state its claims and amounts to unfounded accusation. While Plaintiffs agreed to amend the deficient allegations of the Complaint almost one month ago, Plaintiffs have not done so. During this time, Plaintiffs broadcast their Complaint and deficient allegations broadly in the market to disrupt Litrinium's business. Accordingly, Litrinium files this 12(b)(6) motion to dismiss on the following grounds:[1]

**Plaintiffs' claims are outside the territorial reach of the CUTSA and DTSA**. The Complaint fails to state a cognizable claim because it alleges only conduct in France, by a French citizen, employed by French Plaintiff Mindspeed. The alleged wrongdoing is outside the territorial reach of the California Uniform Trade Secrets Act ("CUTSA") and the federal Defense of Trade Secrets Act ("DTSA").

**Plaintiffs fail to allege misappropriation by Litrinium**. Plaintiffs fail to allege a single act of misappropriation by Litrinium. Plaintiffs assert the conclusory allegation, on information and belief, that some unspecified trade secret related to Plaintiffs' Transimpedance Amplifier ("TIA") products were incorporated into Litrinium's TIA products after Garez left Plaintiffs' employ to join Litrinium. Plaintiffs theory is that its trade secrets must have inevitably been used, based on Litrinium meeting with Garez (which is typical before hiring a new employee) and based on his having accepted employment in the same industry. But the doctrine of inevitable disclosure is rejected in California, and hiring an employee does not equate with misappropriation.

**Plaintiffs fail to allege any misappropriation by Garez**. Plaintiffs' Complaint falls short of alleging facts sufficient to plead that Garez misappropriated anything. Plaintiffs do not allege any unauthorized access by Garez of any trade secrets; they do not even specifically allege that he had access to the supposed trade secrets. Indeed, Plaintiffs

---

[1] Defendant Jerome Garez, who is a resident and citizen of France, has not been served.

allege that the unspecified trade secrets that were stolen were "unrelated to Garez's work at Mindspeed SAS." Plaintiffs further imply that the trade secrets at issue constitute TIA designs, but make no allegation that Garez could (or in fact did) copy or export any designs from Plaintiffs' design database containing any trade secrets.

**Plaintiffs vague descriptions in the Complaint fail to give notice of the alleged trade secrets at issue**. Nowhere does the Complaint notify Defendants with any specificity of the trade secrets at issue, i.e., what Garez or Litrinium are alleged to have misappropriated. The Complaint vaguely refers to data, designs, components, processes, etc. Plaintiffs (and numerous other market participants) have disclosed the design of numerous TIA products in both in published patents, references, articles and datasheets. A representative sample of patents are attached to the Declaration of Michael I. Katz ("Katz Decl."), filed concurrently herewith, as Exhibits 3–14. Plaintiffs come nowhere near identifying their trade secrets with sufficient particularity to distinguish them from what is in the public domain, or known in the art.

**Plaintiffs' § 17200 Unfair Competition Claim is Preempted**: Plaintiffs' Third Cause of Action, for violation of Section 17200 of California's Business & Professions Code, is preempted by CUTSA because it is based on the same facts as a trade-secret misappropriation claim.

## II.   THE ALLEGATIONS IN THE COMPLAINT

According to the Complaint, the technology at issue concerns TIA designs and technology. (Compl. ¶ 12.) The Complaint fails to explicitly describe a single trade secret allegedly misappropriated by any Defendant, fails to allege how any Defendant even had access to such a trade secret, and fails to allege any facts showing that such trade secrets were used by any of the Defendants. The Complaint fails to allege any conduct within California or the United States giving rise to a claim. And nowhere does the Complaint even begin to say what aspect of TIA "design and technology" Plaintiffs claim as its trade secrets.

In lieu of factual allegations, Plaintiffs build their Complaint on a string of assumptions, all asserted on "information and belief," each of which is insufficient under well-established law. For example, Plaintiffs allege that defendant Garez "was principally responsible" for TIA technology at MACOM, without stating what specific aspect of the TIA "design" or "functionality" with respect to which TIA products Mr. Garez was responsible for or had access to while at MACOM.[2] (Compl. ¶ 12.) Indeed, at paragraph 18 of the Complaint, Plaintiffs allege that the design and development of MACOM's "2nd generation 28G TIA required substantial effort from multiple individuals employed by Plaintiffs, and not just defendant Garez…." What Plaintiffs fail to allege in the Complaint, is what aspect of what design or functionality of MACOM's 2nd generation 28G TIA involved Mr. Garez specifically. The Complaint further fails to allege where Plaintiffs' "design" documentation is stored, or whether Mr. Garez was even able to export such information, and if so, whether he in fact did.

Moreover, the allegations in the Complaint fail to specify whether the trade secret at issue is the overall design of any TIA product or products, or only the design of some component of its TIA product or products, or instead consists of a "design concept" that MACOM has yet to implement. Plaintiffs allege, again on information and belief, that "the development of these [TIA] components at MACOM were of particular commercial interest to Litrinium," (Compl. ¶ 13.) The vague terms "development" and "components"—which are different than then the terms "designs" and "functionality" — are also never clarified in the Complaint. Perhaps the trade secret is some aspect of the development of a TIA component? If so, Plaintiffs' Complaint does not state what aspect of the development, or what component.

Nor do Plaintiffs state to which TIA product the alleged trade secrets relate. Plaintiffs, at paragraph 13, identify numerous distinct MACOM TIA products—

---

[2] The Complaint interchangeably uses MACOM and Mindspeed in reference to Mr. Garez's former employer. (*See*, *e.g.*, Compl. at ¶ 3, 12–13, 15.) For simplicity and consistency, Defendants use "MACOM" or "Plaintiffs" in this Motion and supporting memorandum.

"including a PAM-4 TIA, 28G Burst Mode TIA, 28 G Gen1 TIA, 10g Gen2 TIA, 28G APD TIA, single and quad versions, and 28G PIN TIA sing and quad versions" but fails to say which involve the trade secrets at issue.

The Complaint nowhere gives notice of what has allegedly been misappropriated, or allegedly used, and how that something is distinguishable from what is known among the industry about TIA development and design, as reflected in textbooks, published patent documents, references and articles, or what know-how engineers in the field would know, as opposed to some identifiably trade secret. Attached as Exhibits 3–14 to the Declaration of Michael I. Katz, filed concurrently herewith, are numerous patents and public references, reflecting the substantial and detailed information about TIAs known in the art by the public.

The lack of detail in the Complaint, in contrast, tends to confirm that MACOM's Complaint is a sham pleading designed to enable MACOM to use the mere fact that it filed a Complaint to publicize its false allegations of trade-secret theft for anticompetitive purposes. This is confirmed by the fact that Litrinium, when the lawsuit was filed, offered to submit the parties' technology for review by a neutral expert, to resolve the issues once and for all. MACOM failed even to respond to the request, and instead proceeded to widely disseminate its trade secret theft allegations throughout the global market, including to Litrinium's investors. Attached to the Katz Declaration as Exhibits 1 is a letter related to Litrinium's offer to submit the technologies to review, and Exhibit 2 is MACOM letter, authored by its in-house counsel, which MACOM began widely disseminated immediately following Litrinium's overture, and after the parties met and conferred on this Motion.

The reliance exclusively on allegations based on "information and belief" show that this is an anti-competitive lawsuit which Plaintiffs filed without adequate diligence or good faith basis. The generic and conclusory assertions also confirm it. At paragraph 15 of the Complaint, Plaintiffs allege. on information and belief, that Litrinium recruited Mr. Garez, (Compl. ¶ 15) and that "defendant Garez used Plaintiffs' resources and developed

confidential and proprietary design concepts while employed by Mindspeed SAS, which were then incorporated into Litrinium's products." Plaintiffs fail to allege whether Litrinium (or Garez for that matter) had any culpable state of mind or conduct with respect to the alleged "incorporation" of these unspecified "design concepts." Nowhere in the Complaint do Plaintiffs give any factual notice of what those "design concepts" are, or what aspect of the TIA design or functionality its purportedly a trade secret.

Nor do Plaintiffs state any basis for knowing the design of Litrinium's TIA products. Litrinium is confident that Plaintiffs did not examine Litrinium's TIA products, since if they had, examination would have confirmed that Litrinium did not use any of Plaintiffs' trade secrets, whatever they might be. Nor do Plaintiffs allege that they obtained, by any lawful means, an understanding of the design of Litrinium's TIA products, predicate to any good faith assertion that the designs were in any respects even similar, or that "design concepts"—whatever that term means—were somehow incorporated into Litrinium's 28G TIA products. (In fact, such an allegation is categorically false, as Litrinium designed its own 28G TIA product almost 15 months before Mr. Garez started to work for Litrinium).

Plaintiffs allegations, all stated on information and belief, simply assume that Litrinium incorporated into its own TIA design, some unspecified trade secret information that Garez was privy to while employed by MACOM, merely because Mr. Garez worked on certain TIA products while at MACOM, before joining Litrinium. This is a classic version of the "inevitable disclosure" doctrine rejected by California law. It is not a viable basis upon which to assert a claim of trade secret misappropriation. Yet Plaintiffs allegations say exactly that: "Based on information and belief, defendant Garez used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Mindspeed, which were then incorporated into Litrinium products."

The closest Plaintiffs' Complaint comes to stating a theory of misappropriation is in paragraph 16 of the Complaint, which begins "[t]his confidential and proprietary information generally includes, but is not limited to, design concepts and data developed

in connection with different versions of the 2nd generation design of the 28G TIA that defendant Garez was working on while employed by Mindspeed S.A.S., and in particular *a 3rd generation 28 TIA, which was unrelated to his work at Mindspeed SAS.*" [Emphasis added].

This allegation raises more questions than it answers. For one, the pleading standard under *Ashcroft v. Iqbal* is not met. 556 U.S. 662 (2009). *Iqbal* requires more than stating that the trade secrets at issue "generally include[s], but is not limited to", and it certainly requires much greater specificity than referencing "design concepts and data developed with different versions" of unspecified products. Moreover, if the trade secrets at issue concern a "3rd generation 28 TIA" *not related* Garez's work, how did Garez have access to the alleged designs or design concepts, and how or when did he take them? The Complaint is silent and fails to allege any facts that could support even Garez's access, let alone misappropriation. Moreover, what exactly, is being claimed as a trade secret, with respect to this 3rd generation 28TIA, which is not related, according to the Complaint, to the designs of all the other MACOM products alleged in paragraph 13?

Rather than comply with *Iqbal* by making specific allegations establishing the trade secrets at issue, the Complaint instead throws around a lot of technical jargon—the names of MACOM products—and then speaks in the broadest and vaguest possible generalities of designs, data, development, components, and design concepts.

What are the trade secrets at issue? The Complaint tells us nothing. It does confirm, however, that it does not try to identify them with any degree of completeness, when it says, at paragraph 16, that "[t]his confidential and proprietary information generally *includes, but is not limited to*, design concepts and data developed with different versions of the 2nd generation design of the 28G TIA that defendant was working on while employed at Mindspeed SAS." (Emphasis added). It also shows that Plaintiffs are making a guess, an empty assumption, that there are a lot of trade secrets involved, when at paragraph 18, Plaintiffs allege "due to the fact that the design and development of Plaintiffs' 2nd generation 28G TIA required substantial effort from multiple individuals

employed by Plaintiffs, and not just defendant Garez, the misappropriation of trade secrets by defendant Garez is substantial … in scope." Like so much else in the Complaint, this is an impermissible assumption based on sheer conjecture, as opposed to allegations of fact that might begin to support Plaintiffs' "information and belief".

The fact that a French employee of Mindspeed SAS, working in France, resigned his employment to work for Litrinium in France, is not a basis for filing a Complaint in federal court asserting a violation of either the CUTSA or the DTSA. Nor is the fact that Litrinium generally sells TIA products, just as MACOM does.

The fact that Litrinium may have gained traction in the market and prevailed in head-to-head competition against MACOM is not the basis for a trade-secrets case; it simply is the result of lawful market competition that has left MACOM behind. Plaintiffs brought this lawsuit to crush a start-up company, timing the filing of the Complaint one year after Mr. Garez left MACOM, but the very week that Litrinium was engaged in a round of financing, and just after Litrinium started to prevail in head to head competition with MACOM in the market. MACOM' is using this lawsuit to try to scare customers from doing business with Litrinium and investors from investing.

Once Plaintiffs' speculative and conclusory allegations are stripped from the Complaint, as they must be on this motion, what remains is insufficient to survive a motion to dismiss on all of the causes of action against Litrinium. *See Iqbal*, 556 U.S. at 678–79.

**III.  LEGAL STANDARDS**

**A.   To survive a motion to dismiss, a complaint must contain sufficient factual matter to plausibly support its claims.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," and facts that are "merely consistent" with liability but are also consistent with nonliability fall short of "plausibility." *Iqbal*, 556 U.S. at 678; *Eclectic Pros. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (plausibility requires alleging "facts tending to exclude the possibility" that the defendant's "alternative explanation is true," which means that "establishing only a 'possible' entitlement to relief . . . [does] not support further proceedings").

Furthermore, on a motion to dismiss, while courts accept a plaintiff's well-pleaded facts as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555). "In keeping with these principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. And where a plaintiff has failed to state a plausible claim for relief and any attempts by the plaintiff to amend its pleading would be futile, the court should dismiss the complaint with prejudice, and without leave to amend. *Garmon v. Cty. of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

### B. The California Uniform Trade Secrets Act preempts tort remedies arising from the alleged misappropriation of trade secrets.

The CUTSA "provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (citations omitted), disapproved on other grounds in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *see also Waymo LLC v. Uber Tech., Inc.*, 256 F.Supp.3d 1059, 1062 (N.D. Cal. 2017). "CUTSA preemption extends to claims based on the misappropriation of confidential and proprietary information, regardless of whether it qualifies as a 'trade secret.'" *Avago Techs. U.S. Inc. v. Nanoprecision Prods., Inc.*, No. 16-cv-03737-JCS,

2017 WL 412524, at *6 (N.D. Cal. Jan. 31, 2017) (citing *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *5–6 (N.D. Cal. Dec. 11, 2012)); *Waymo*, 256 F.Supp.3d at 1063.

The CUTSA, therefore, preempts § 17200 unfair competition claims where both the CUTSA and unfair competition claims are "based on the same nucleus of facts." *Silvaco*, 184 Cal.App.4th at 232 (quoting *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal.App.4th 939, 962 (2009)); *see also Atl. Inertial Sys., Inc. v. Condor Pac. Indus. Of California, Inc.*, 545 F. App'x 600, 602 (9th Cir. 2013) (noting CUTSA preemption of statutory and common law unfair competition claims). On a motion to dismiss based on CUTSA preemption, "[t]he preemption inquiry . . . focuses on whether [the facts supporting the preempted claim] are no more than a restatement of the same operative facts supporting trade secret misappropriation." *Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4128484, at *6 (N.D. Cal. July 8, 2015) (citation omitted).

## IV. ARGUMENT

Plaintiffs assert two claims for trade secret misappropriation: (1) a federal claim under 18 U.S.C. § 1836 et seq. (the "Defend Trade Secrets Act," or "DTSA"), and (2) a California law claim under Cal. Civ. Code § 3426 et seq. (the "California Uniform Trade Secrets Act," or "CUTSA"). To state a claim for misappropriation under either cause of action, Plaintiffs must allege that (1) they owned a trade secret; (2) defendants misappropriated the trade secret; and (3) Plaintiffs suffered damages from the misappropriation. *Space Data Corp. v. X*, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (noting that the "elements of misappropriation under the DTSA are similar to those under the CUTSA"); *see also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (applying California decisions interpreting the CUTSA to DTSA claims because the "elements of a trade secret misappropriation claim under the DTSA are substantially similar" to the CUTSA).

Both misappropriation claims suffer from the same legal deficiencies: Neither allege that any of the Defendants improperly acquired, misused, or disclosed any alleged trade secrets. Nor have Plaintiffs pleaded any facts indicating that the information at issue is a trade secret. Plaintiffs have also has failed to distinguish between Litrinium and Garez and, as such, has not alleged any conduct specifically attributable to Litrinium that gives rise to a plausible misappropriation claim. Accordingly, both claims for misappropriation fail as a matter of law as against all Defendants, and the Complaint should be dismissed.

### A. Because Plaintiffs' allegations are directed to conduct in France by a French citizen employed by a French company, the Complaint fails to state a claim under the CUTSA or DTSA.

Plaintiffs' Complaint makes allegations supposedly about conduct in France, by a French former employee—in France. There are no allegations of fact in the Complaint regarding supposed misappropriation by Litrinium in California or anywhere in the United States.

The Complaint specifies that Garez's conduct occurred while employed in France by the French entity, Mindspeed. (Compl. ¶¶ 15–16.) Both the DTSA and the CUTSA are geographically limited, and thus cannot reach the foreign conduct of Garez. The DTSA applies to conduct outside the United States only if "the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof" or if "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837. Garez is neither a citizen nor a permanent resident alien of the United States. (*See* Compl. ¶¶ 2–3) The only act alleged to have been taken by Garez in the United States is set forth at paragraph 17 of the Complaint, as follows:

> "On information and belief, prior to his departure from Mindspeed SAS, and during his regularly scheduled business trips to Plaintiffs' Newport Beach, California offices, defendant Garez utilized these trips to California to visit Litrinium with

Bajwa in order to coordinate defendant Garez's misappropriation of Plaintiffs' trade secrets."

This paragraph is totally devoid of a single specific allegation of any act of misappropriation that occurred in the United States. Moreover, it is totally devoid of any allegation of an act of misappropriation by Litrinium. What is clear, moreover, is that Mr. Garez, after resigning from Mindspeed, went to work for Litrinium in an office "in France, at least as early as March 7, 2018."

The CUTSA also is geographically limited—it is subject to the general presumption against extraterritoriality of California statutes. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017) (dismissing CUTSA claim because "[n]o legislative history suggests the [CUTSA] was intended to have extraterritorial effect" and the "presumption [against extraterritoriality] is not rebutted here"); *see also O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) ("[T]he California Supreme Court has made clear that [extraterritoriality] limitations are *presumed to be present* unless the legislature's contrary intention 'is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'"); *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily, the statutes of a state have no force beyond its boundaries."). Again, Plaintiffs have not alleged any conduct specific to Litrinium, much less actionable conduct that occurred in California.

Plaintiffs' trade-secret claims against Litrinium should be accordingly dismissed.

**B.    Plaintiffs fail to allege trade secret misappropriation by Litrinium.**

Plaintiffs' Complaint should also be dismissed as to Litrinium on the independent ground that MACOM fails to plausibly allege misappropriation by Litrinium.

To state a claim for misappropriation under the DTSA or the CUTSA, a plaintiff must plead that the information at issue was "acquired by improper means." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). Under the DTSA, "improper means" includes "misrepresentation, [and] breach or inducement of a breach of a duty to maintain

secrecy," and expressly excludes any "lawful means of acquisition." 18 U.S.C. § 1839(6). Likewise, "improper means" under the CUTSA refers to "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." Cal. Civ. Code § 3426.1(a).

No such conduct by Litrinium has been pled. The Complaint must be dismissed. *See Pellerin v. Honeywell Intern., Inc.*, 877 F. Supp. 2d 983, 989-90 (S.D. Cal. 2012) ("the standard on a motion to dismiss is 'whether the plaintiff has pled enough facts raising a plausible claim that the defendant misappropriated those trade secrets'") (citation omitted). Indeed, Plaintiff has failed any misappropriation by Garez.

Plaintiffs' sole allegation against Litrinium is that it recruited and then hired Mr. Garez to work in France. (Compl. ¶¶ 15, 19.) There is not a single allegation that Litrinium knew, or had reason to know, of any misappropriation of trade secrets by Mr. Garez. The closest the Complaint comes is at paragraph 17, in which Plaintiff alleges again, on information and belief, without any supporting facts:

> "On information and belief, prior to his departure from Mindspeed SAS, and during his regularly scheduled business trips to Plaintiff's Newport Beach offices, defendant Garez utilized these trips to California to visit Litrinium and/or connect with Bajwa in order to coordinate defendant Garez's misappropriation of Plaintiffs' trade secrets."

What's missing are pleaded facts about the information that supposedly leads Plaintiffs to the conclusory belief that Defendants misappropriated trade secrets—or even facts to support Plaintiffs' alleged belief that Mr. Garez visited Litrinium in the U.S., or when these supposed meetings occurred. "[C]onclusory allegation based on information and belief remains insufficient under *Iqbal/Twombly*." *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, *2 (N.D. Cal. Mar. 19, 2018) (citing *Arista Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). The Complaint fails to state proper trade-secret claims for two reasons.

### 1. Plaintiffs fail to allege facts to plausibly state that Garez improperly acquired any trade secrets.

The claims against Litrinium are even weaker than that, as Plaintiffs fail to properly allege that Garez gained access to the purported trade-secret information at issue, and therefore, fails to properly allege that Garez even *could* improperly disclose that information to Litrinium.

Plaintiffs alleges that MACOM maintains internal network security procedures to restrict access and insure that internal company information is not publicly available, and that Plaintiffs carefully monitor the results of their internal product efforts. Nowhere does the Complaint allege that Garez was able to access or take product designs to be able to even show them to someone outside of MACOM. This deficiency undermines Plaintiffs' claims against all Defendants.

In lieu of facts, Plaintiffs allege, in a conclusory and unsupported fashion, that Garez was "responsible for" TIA designs and functionality within MACOM. (Compl. ¶¶ 12, 13.) But this amounts to nothing more than a bare accusation that by virtue of being a Mindspeed employee, Garez (and, in turn, every other Mindspeed employee) had an *opportunity to access* the technology at issue.

Such generalized allegations of *potential access* to trade secret information are routinely rejected by courts at the pleadings stage as "insufficient to establish misappropriation." *Pellerin*, 877 F. Supp. 2d at 989 (granting motion to dismiss where defendant failed to "allege any facts in support of the legal conclusion that Plaintiffs . . . 'acquired and/or used'" trade secrets). In *Citcon USA, LLC v. RiverPay Inc.*, for example, the plaintiff alleged, in support of its DTSA and CUTSA claims, that its former employee "maintain[ed] his login and password" to a specific "MySQL database" after taking a new job with a competitor. 2018 WL 6813211, at *6 (N.D. Cal. Dec. 27, 2018). But the plaintiff failed to plausibly allege "how, or when [the defendant] took advantage of the access to log into the database. . . . In other words, [the plaintiff] essentially allege[d] that [the defendant] kept a key to a locked room but [did] not allege that [he] ever unlocked

the room to access its contents." *Id.* The court reasoned that without the allegations that the room had been unlocked to access its contents, plaintiff had failed to state a plausible claim of misappropriation, and dismissed the complaint accordingly. Courts in this circuit routinely dismiss misappropriation complaints that allege the potential for access, as opposed to actual access. *See also, e.g.*, *Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018) (allegations that defendants used a third-party email address to misappropriate plaintiff's trade secrets deemed insufficient without allegations of *when* the email address purportedly was used). Plaintiffs' misappropriation claims against Garez fail on this basis alone.

Plaintiffs rely entirely on the assumption that Garez accessed and then took its trade secrets based on the mere fact that Litrinium also sells TIA products. (Compl. ¶ 13 ("On information and belief, the development of these components at MACOM were of particular commercial interest to Litrinium").) There is no basis to infer from the mere fact that Litrinium and MACOM compete in the same space that Garez retained or improperly accessed the purported trade secret information either before or following his departure from MACOM. *See Human Longevity, Inc.*, 2018 WL 6617633, at *6 (granting motion to dismiss where alleged facts were "not adequate to infer that Defendant . . . improperly acquired new or different information after [he] left his employment with" plaintiff).

### 2. Even if Plaintiffs' alleged that Garez improperly acquired trade secrets, Plaintiffs fail to allege disclosure to Litrinium.

MACOM's Complaint is also devoid of any allegation that Garez disclosed any of Plaintiffs' trade secrets to Litrinium. The closest the Complaint comes is to allege based on "information and belief," that Defendant Garez used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Mindspeed, which were then incorporated into Litrinium products." This suggestion, yet again made "[o]n information and belief," is entirely speculative and, thus, insufficient to survive this motion. *See Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19,

2014) (dismissing complaint in part because allegation made "on information and belief" gives rise to "a reasonable inference [] that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations" and "creates a further inference that plaintiff . . . is [] engaging in speculation to an undue degree").

Plaintiffs also fail to allege the when or how of Garez's purported disclosure to Litrinium. With no information provided as to the foundation of Plaintiffs' "information and belief," this statement is the epitome of a conclusory allegation (*see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")), and is inadequate to support the inference that Garez improperly disclosed information, or Litrinium had any knowledge it was receiving or using any trade-secret information, within the meaning of the DTSA or the CUTSA. *See Human Longevity, Inc.*, 2018 WL 6617633, at *6 (deeming allegation "inadequate to support the inference that [Defendant] improperly disclosed information" despite allegations that Defendant forwarded emails containing Plaintiff's alleged trade secrets, when precise "nature of the alleged [emails] is unclear"); *Veronica Foods Co.*, 2017 WL 2806706, at *14 (dismissing allegations of misappropriation of specific documents such as customer lists and supplier lists as based on "'naked assertions'" and "'conclusions'").

Plaintiffs' misappropriation claims are entirely predicated on a legally impermissible assumption. California has explicitly rejected the doctrine of "inevitable disclosure." *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete."). That means that, under the CUTSA, "a party cannot prove trade secret misappropriation by speculating that a former employer's new employment will inevitably lead the former employee to rely on the former employee's trade secrets." *Pellerin*, 877 F. Supp. 2d at 989; *see also, e.g.*, *Les Concierges, Inc. v. Robeson*, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("[A] threat of misappropriation cannot, as a matter of California law, be inferred from the fact [the defendant-employee], upon voluntarily terminating his

employment with [the plaintiff-employer], immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties he performed while employed by [the plaintiff-employer].") District Courts in California have rejected DTSA claims predicated on a similar theory—that a defendant who had access to trade secret information while employed by the plaintiff must have disclosed that information when he started working at a competitor and "beginning development of a program to compete with" his former employer.[3] *Human Longevity, Inc.*, 2018 WL 6617633, at *6.

For all these reasons, Plaintiffs fail to allege facts giving rise to a plausible inference of misappropriation by Garez or Litrinium within the meaning of the DTSA or CUTSA, and its claims against Litrinium should be dismissed accordingly.

### 3. Plaintiffs also fail to plausibly allege that Garez used Plaintiffs' TIA technology at Litrinium with or without Litrinium's knowledge.

The Complaint contains only vague allegations that "[b]ased on information and belief, defendant Garez used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Mindspeed SAS, which were then incorporated into Litrinium products." (Compl. ¶ 16.) The Complaint is entirely silent as

---

[3] Plaintiffs' theory of misappropriation is particularly speculative since the Complaint lacks allegations that Litrinium could not have independently developed its product features, and thus that it could only have done so by obtaining alleged trade secrets through improper means. *See, e.g.*, *Eclectic Properties East*, 751 F.3d at 996-97 (requiring complaint to allege "facts tending to exclude the possibility" that an "alternative explanation is true," and holding that "establishing only a 'possible' entitlement to relief . . . [does] not support further proceedings").

to any wrongful conduct by Litrinium. Here, Plaintiffs accuse Litrinium of trade-secret misappropriation merely by virtue of Litrinium hiring a former MACOM employee.[4]

Plaintiffs offer only conclusory allegations that Litrinium used any of Plaintiffs' alleged trade secrets. Plaintiffs do not allege the specific trade secrets purportedly used, how they were used, or when they were used. Courts have declined to infer misappropriation from competition. To the contrary, courts have held that competition is "to be expected," and that allegations of competition, without more, are insufficient to survive a pleadings challenge to a misappropriation claim. *Veronica Foods Co.*, 2017 WL 2806706, at *14 (holding that any such allegation of competition must be coupled with "allege[d] facts that are not 'merely consistent with' both a theory of innocent market entry and [misappropriation], but rather '*tend[ ] to exclude*' an innocent explanation" to survive a motion to dismiss) (emphasis added).

Indeed, courts have gone further and stated that the mere act of a competitor developing a competing product or service—even if the competitor employs the plaintiff's former employees—cannot carry a trade secret misappropriation claim beyond the pleadings stage. *See, e.g.*, *Human Longevity, Inc.*, 2018 WL 6617633, at *6 (granting motion to dismiss because "development of a program to compete" with plaintiff does not "giv[e] rise to a plausible inference of misappropriation" or "plausibly suggest an entitlement to relief"); *Les Concierges, Inc.*, 2009 WL 1138561, at *2 (a trade secret plaintiff "must submit evidence beyond its former employee's knowledge of trade secrets and subsequent change of employers"); *See Veronica Foods*, 2017 WL 2806706, at *14 (where defendants are alleged to have developed a product to compete in a previously under-competitive market, it "increases the need for specific allegations showing that

---

[4] To the extent Plaintiffs' claims against Litrinium alternatively are predicated on the allegation that Litrinium received its technology from Garez, the claim also fails for the reasons discussed *supra* in Part IV.A.1. The claim similarly fails to the extent predicated on the allegation that Litrinium somehow induced Garez to breach any duty, because the Complaint is devoid of any allegations of actions taken by Litrinium to induce a breach of that duty.

Defendants used trade secret knowledge" because competing products and services are "to be expected from a new [competitor] entering the market").

### C. Plaintiffs' vague allegations fail to plausibly allege misappropriation of any information that constitutes a trade secret.

The Complaint cannot survive this Motion for the independent reason that Plaintiffs failed to plausibly allege that the information purportedly misappropriated by Defendants constitutes a trade secret. Plaintiff's Complaint fails to identify what aspect of its technology is the trade secret allegedly misappropriated. Moreover, Plaintiff fails to identify any of its technology with the specificity required under Iqbal, to distinguish what is claimed from what is known in the art and in the public domain, including MACOM's own published patents. The design and other detail available in the public domain is far more detailed than what is identified in the Complaint. *See* Katz Decl. at ¶¶ 4–15 and Exs. 3–14.

To survive a motion to dismiss, a plaintiff alleging violations of the DTSA and the CUTSA must describe the trade secret that it contends has been misappropriated "'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Pellerin*, 877 F. Supp. 2d at 988 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Trade secrets have specific characteristics under federal and California law, *see* 18 U.S.C. § 1839(3); *Whyte*, 101 Cal. App 4th at 1454 ("The test for trade secrets is whether the matter sought to be protected is information (1) which is valuable because it is unknown to others and (2) which the owner has attempted to keep secret."), and a trade secret plaintiff must plead those specific characteristics to state a plausible claim for relief.

Plaintiffs failed to meet that standard. Plaintiffs' Complaint alleges that its trade secrets includes general and broad categories of information:

> "Plaintiffs' trade secrets include valuable designs, data and sales information related to the development of TIAs and all iterations and advancements related to Plaintiffs' TIA technology …"

(Compl. ¶ 21.) This definition, while offering the thinnest veneer of technical jargon, could encompass *anything* related to Plaintiffs' TIA business. The definition is incredibly broad and, as such, does not give notice of any specific information that Plaintiffs could possibly claim as trade secret.[5] Indeed, Plaintiffs do not even attempt to allege *how* any of this information warrants protection as trade secrets. *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) ("Materials are not trade secrets just because Plaintiff says they are.").

Plaintiffs' allegations based on this broad definition are insufficient because "they do not even give the Court or Defendants notice of the boundaries of this case" as a complaint must to survive a motion to dismiss. *Space Data Corp.*, 2017 WL 5013363, at *2. In *Vendavo*, for example, the plaintiff alleged its purported trade secrets in similarly broad terms to Plaintiffs here—to include "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements." 2018 WL 1456697, at *3. The court deemed these "conclusory and generalized allegations [] insufficient" because the plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated." *Id.* That is precisely what Plaintiffs have done here, and precisely why Plaintiffs' allegations cannot survive this Motion.

Plaintiffs' and others in the TIA-technology space own patents which publish many aspect of TIA design, components, and know how. *See* Katz Decl. at ¶¶ 4–15 and Exs. 3-14. Plaintiffs fail to plead any facts in the Complaint to distinguish what they claim as a trade secret from what is disclosed in these references, or a large volume of other references in the public domain. "[I]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (citation omitted); *see also Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) ("Matters disclosed in a patent publication destroy any trade secret contained therein.").

For example, Patent Publication No. US 2017/0026011 is one of Plaintiffs' published patent applications regarding a "Transimpedance Amplifier," and its figures show Plaintiffs' TIA designs and electronic environments for using the TIAs. Katz Decl. at ¶¶ 14–15 and Exs. 13–14. Similarly, Plaintiffs' U.S. Patent No. 8,509,629 is also directed to "a transimpedance amplifier for high rate applications," and its figures also show a circuit diagram for the disclosed TIA. Katz Decl. at ¶ 10–11 and Exs. 9–10. Additionally, patent filings by others with respect to TIAs show that TIA designs, data, development, and advancements are not uniquely Plaintiffs'. *See* Katz Decl. ¶¶ 4–9, 12–13 and Exs. 3-8, 11-12. Plaintiffs' nebulous description of its trade secrets overlaps with Plaintiffs' own patent filing and the general knowledge of TIAs in the industry. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465 (9th Cir. 1990) ("matter[s] of common public knowledge" cannot be a trade secret); Cal. Civ. Code § 3426.1 Legis. Comm. Cmts ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market.").

In sum, the Complaint "is too sweeping and vague for Defendant[s] to be on notice of what trade secrets are at issue and where the boundary between those secrets and

general knowledge might lie." *Synopsys*, 2013 WL 5770542, at *6. Courts routinely dismiss overbroad trade secret definitions like Plaintiffs'. *See, e.g.*, *Space Data Corp.*, 2017 WL 5013363, at *2 ("vague references to an enormous array of potential sources do not suffice to survive Defendant's motion to dismiss"); *Human Longevity, Inc.*, 2018 WL 6617633, at *5 (dismissing complaint where "allegations of [trade secret technology] are expansive and lack particularity"); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (allegations of "design review templates," "fluidics design files," and "source code files" lacked particularity to constitute a trade secret); *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, 2017 WL 1198992, at *6 (S.D. Cal. Mar. 31, 2017) (dismissing as impermissibly vague allegations of "methods and procedures for preparing clinical development plans to perform clinical studies," "methods and procedures in the design, performance, and data analysis of clinical studies," "methods and procedures for data management and analysis," and "database design, computer software, and procedures for implementing a database to manage and recruit volunteers for various clinical studies"); *Whyte*, 101 Cal. App 4th at 1454 (deeming new product information "too broad" to constitute a trade secret because "it does not differentiate between truly secret information (such as formulas and product design) and new product information which has been publicly disclosed"). This Court should do the same.

**D.   Plaintiffs fails to allege facts sufficient show that it took reasonable steps to preserve the secrecy of the information claimed to have been misappropriated.**

Plaintiffs' broad definition of the purported trade secrets creates an independent infirmity in the Complaint because Plaintiffs do not allege that either of Plaintiffs took reasonable steps to maintain the secrecy of their alleged technology. *See* Cal. Civ. Code § 3426.1(d) (a "trade secret" must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). The only information as to which Plaintiffs' allege taking any steps to preserve secrecy is referred to at paragraph 10 of the

Complaint, which refers only to "the ability to make design decisions based on both knowing what may or may not be successful, as well as the knowledge about both the likely path to the marketplace based on information received from customer and internal work". As to this vague information, the Complaint at Paragraph 11 states that Plaintiffs take "substantial steps to keep *such information* secret." (Emphasis added.) What is entirely unclear, however, is what steps are taken to preserve the confidentiality and secrecy of the other technical information alleged throughout the remainder of the Complaint, including at paragraphs 12, 13, 15, and 16.

### E.   Plaintiffs' claim for violation of Bus. & Prof. Code § 17200 is preempted by the California Uniform Trade Secrets Act.

The Court should dismiss Plaintiffs' § 17200 unfair competition claim as preempted by CUTSA. Plaintiffs' unfair competition claim is just a restatement of its CUTSA claim with the same facts. Specifically, Plaintiffs' § 17200 claim incorporates all of Plaintiffs' allegations related to the trade secret claims of the Complaint. (*See* Compl. at ¶ 42.) Plaintiffs also explicitly state that the § 17200 claim is based on the allegations that Defendants "misappropriat[ed] Plaintiffs' confidential and proprietary information," stated later as "said misappropriation of trade secrets." (Compl. at ¶ 43; *see also* Compl. at ¶ 45 ("Defendants have acquired and used Plaintiffs' confidential and proprietary trade secret information through material misrepresentations and omissions.")). Plaintiffs' § 17200 claim is devoid of factual support unrelated to alleged misappropriation of confidential information or trade secrets. (*See* Compl. ¶¶ 42–47.)

Courts have repeatedly held that where § 17200 claims are based on the same nucleus of operative facts as CUTSA claims, the § 17200 claims are preempted by CUTSA and should be dismissed. *See, e.g.*, *Waymo*, 256 F.Supp.3d at 1063–64; *Lilith Games*, 2015 WL 4128484, at *6 ("Because Lilith alleges the same factual allegations in its UCL and CUTSA claims, the UCL claims are preempted by the CUTSA. . ."); *Gems v. Diamond Imports, Inc.*, No. 15-cv-03531-MMC, 2016 WL 6902804, at *4 (N.D. Cal. Nov. 22, 2016) ("[T]he 'gravamen' of Diamond Imports' unfair competition claim being

the misappropriation of trade secrets, said claim is displaced under CUTSA"); *VasoNova Inc. v. Grunwald*, No. C-12-02422 WHA, 2012 WL 4119970, at *4 (N.D. Cal. Sept. 18, 2012) (dismissing UCL claim because of CUTSA preemption).

Accordingly, the Court should dismiss Plaintiffs' § 17200 claim with prejudice because there are no facts that to support an independent § 17200 claim. Dismissal with prejudice is appropriate because all of Plaintiffs' claims are premised on the same allegations and alleged theft of trade secrets, and any attempt at amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 532–533 (9th Cir. 2008).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice, without leave to amend.


DATED: March 20, 2019                    Respectfully, Submitted,

                                         MASCHOFF BRENNAN

                                    By: */s/ Michael I. Katz*
                                         _____
                                         Michael I. Katz
                                         Charles S. Barquist
                                         Jared J. Braithwaite

                                         Attorneys for Defendant LITRINIUM, INC.