Michael I. Katz (CA State Bar No. 181728)
    mkatz@mabr.com
Charles S. Barquist (CA State Bar No. 133785)
    cbarquist@mabr.com
Jared J. Braithwaite (CA State Bar No. 288642)
    jbraithwaite@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone:   (949) 202-1900
Facsimile:   (949) 453-1104

Attorneys for Defendant LITRINIUM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **MACOM Technology Solutions Inc.**, a Delaware corporation; **Mindspeed Technologies, S.A.S.**, a French corporation, | Case No. 8:19cv-00220-JVS-JDE |
| Plaintiffs; | **Defendant Litrinium Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint** |
| v. | Assigned to:   Hon. James V. Selna |
| **Litrinium, Inc.**, a Delaware corporation; **Jerome Garez**, an individual; and **Does 1 through 20**, inclusive, | Trial Date:    None set |
| Defendants. | Hearing Date: June 3, 2019, 1:30 p.m. |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 3, 2019, at 1:30 p.m. in Courtroom 10C of this Court at 411 West 4th Street, Santa Ana, California, 92701, Defendant Litrinium, Inc. will and hereby does move the Court to dismiss with prejudice all claims against Litrinium asserted by Plaintiffs MACOM Technology Solutions Inc. and Mindspeed Technologies, S.A.S. in the above-captioned action under Federal Rule of Civil Procedure 12(b)(6). In their First Amended Complaint (Dkt. 30), Plaintiffs fail, as a matter of law, to state claims upon which relief can be granted against Litrinium for misappropriation. This Motion to Dismiss is based on this Notice of Motion and Memorandum of Points and Authorities submitted herewith, Litrinium's Request for Judicial Notice and supporting Declaration of Michael I. Katz submitted concurrently herewith, Plaintiffs' First Amended Complaint, and other such matters that the Court may consider.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 25, 2019.

## RELIEF SOUGHT

Litrinium seeks an order dismissing Plaintiffs' First Amended Complaint against it with prejudice.

DATED: May 6, 2019

Respectfully, Submitted,

MASCHOFF BRENNAN

By: */s/ Michael I. Katz*

Michael I. Katz
Charles S. Barquist
Jared J. Braithwaite

Attorneys for Defendant LITRINIUM, INC.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................. ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.  LEGAL STANDARDS ................................................................................ 3

III. ARGUMENT ............................................................................................ 4

    A.   Because Plaintiffs' allegations are directed to conduct in France by a French citizen employed by a French company, the FAC fails to state a claim under the CUTSA or DTSA. ...................................................................5

    B.   Plaintiffs' vague allegations fail to plausibly allege misappropriation of any information that constitutes a trade secret....................................................8

        1.   Plaintiffs' allegations stating only generic, open-ended information fail to plead plausible trade secrets.............................................................9

        2.   The FAC fails to identify plausible trade secrets because the purported description expressly identifies information that, on its face, is public in nature..............................................................................11

        3.   The generic categories of information identified by Plaintiffs as their trade secrets do not distinguish from what is generally known as reflected by publicly filed patents .............................................................15

    C.   Plaintiffs fail to allege facts sufficient to show that they took reasonable steps to preserve the secrecy of the information claimed to have been misappropriated. ..................................................................................17

    D.   Plaintiffs fail to allege trade secret misappropriation by Litrinium. ................19

        1.   Plaintiffs fail to allege facts to plausibly state that Garez improperly acquired any trade secrets.....................................................................20

        2.   Even if Plaintiffs had alleged that Garez improperly acquired trade secrets, Plaintiffs fail to allege disclosure to Litrinium............................22

        3.   Plaintiffs also fail to plausibly allege that Garez used Plaintiffs' TIA technology at Litrinium with or without Litrinium's knowledge. ...........24

IV.  CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Arista Record LLC v. Doe*,
    604 F.3d 110 (2d Cir. 2010) ..................................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................... 2, 4, 6

*Bell Atlantic Corp v. Twombly*,
    550 U.S. 544 (2007) ...................................................... 2, 4, 7, 22

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
    2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) ............................... 5

*Citcon USA, LLC v. RiverPay Inc.*,
    2018 WL 6813211 (N.D. Cal. Dec. 27, 2018) ............................. 21

*Delphix Corp. v. Actifo, Inc.*,
    2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ............................ 22

*Eclectic Pros. E. v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ............................................... 4, 24

*Emazing Lights LLC v. De Oca*,
    2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ............................... 10

*Gamez v. Woodland Direct Inc.*,
    2017 WL 8185854 (C.D. Cal. Mar. 31, 2017) ............................... 7

*Garmon v. Cty. of L.A.*,
    828 F.3d 837 (9th Cir. 2016) ................................................... 4

*Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*,
    674 F.2d 1336 (9th Cir. 1982) ............................................... 15

*Human Longevity, Inc. v. J. Craig Venter Institute, Inc.*,
    2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ...................... passim

*Les Concierges, Inc. v. Robeson*,
    2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) ......................... 23, 25

*Menzel v. Scholastic, Inc.*,
    2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ............................ 20

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ................................................. 4

*N. Alaska Salmon Co. v. Pillsbury*,
    174 Cal. 1 (1916) ................................................................. 6

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ........................................................... 6

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012) .................................................. passim

*Physician's Surrogacy, Inc. v. German*,
  2018 WL 638229 (S.D. Cal. Jan. 31, 2018) .............................................. 21

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) ..................................................................... 16

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ....................................................................... 4

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .................................... 4, 11, 14

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ..................................... 11, 14

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
  587 F.3d 1339 (Fed. Cir. 2009) ................................................................ 15

*Vendavo, Inc. v. Price f(x) AG*,
  2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ..................................... 5, 15

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. Jun. 29, 2017) .......................... 8, 20, 23, 25

*Vivendi SA v. T-Mobile USA, Inc.*,
  586 F.3d 689 (9th Cir. 2009) ..................................................................... 7

*Whyte v. Schlage Lock Co.*,
  101 Cal. App 4th 1443 (2002) .............................................................. 9, 23

## Statutes

18 U.S.C. § 1837 ........................................................................................... 5

18 U.S.C. § 1839 ...................................................................................... 9, 19

California Civil Code § 3426 ............................................................... 18, 19

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This is Defendant Litrinium Inc.'s second 12(b)(6) motion to dismiss the trade secret claims asserted by Mindspeed SAS, a French company, and its U.S parent MACOM. Plaintiffs have also included defendant Jerome Garez, a former employee of Mindspeed SAS in France, despite waiting nearly a year after he was hired in France by Litrinium. Plaintiffs amended their Complaint before the Court could hear the first motion; Plaintiffs' First Amended Complaint does not cure the defects in the Complaint. This Motion is predicated on the following incurable defects in the pleading:[1]

**Plaintiffs' claims are outside the territorial reach of the CUTSA and DTSA**. The FAC fails to state a cognizable claim because the only wrongful conduct it alleges occurred in France, by a French citizen, employed by French Plaintiff Mindspeed SAS. Although the Complaint includes allegations of conduct in the United States, at paragraphs 9, 21, and 26, there are only conclusory legal conclusions of misappropriation, devoid of facts that would satisfy the pleading requirements set forth in *Iqbal*. The FAC does not include any specific allegations of facts that could establish acts of misappropriation in California or the United States and therefore fails to state a claim within the territorial reach of the California Uniform Trade Secrets Act ("CUTSA") and the federal Defense of Trade Secrets Act ("DTSA").

**Plaintiffs fail to allege misappropriation by Litrinium**. Plaintiffs fail to allege a single factual act of misappropriation by Litrinium. Plaintiffs assert only the conclusory allegation, on information and belief, that some unspecified trade secrets related to Plaintiffs' transimpedance amplifier ("TIA") products were incorporated into Litrinium's TIA products. Plaintiffs do not allege what trade secrets, if any, Plaintiffs have a good faith basis for asserting were incorporated into Litrinium's products. Tellingly, Plaintiffs do not allege that they conducted any analysis of Litrinium's products to make this determination prior to filing their pleading. Instead, Plaintiffs merely assume that some trade secret must have been used, based only on the fact that Garez, their former

---

[1] Defendant Jerome Garez, who is a resident and citizen of France, has not been served.

employee, was hired by Litrinium. All Plaintiffs allege, in fact, is that Litrinium met with Garez (which is typical before hiring a new employee) and that Garez accepted employment and is now working for Litrinium in France in a similar position to his employment with Mindspeed SAS. From this, Plaintiffs assume Litrinium has used their trade secrets, merely because Litrinium hired Garez and met with him before doing so. This is tantamount to saying that, purely on the basis of Garez working in a similar job, it is inevitable that Garez must have used Plaintiffs' trade secrets. This inevitable-disclosure theory of Plaintiffs' case is a doctrine California has firmly rejected. Moreover, Litrinium's meeting a potential employee prior to hiring him cannot form the basis for an inference that Litrinium misappropriated trade secrets because it is equally consistent with lawful conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'") (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 557 (2007)).

Plaintiffs do not allege (because they cannot) that they gave Litrinium any notice of their suspicions that Garez had taken their trade secrets, even though Plaintiffs allege that they formed these suspicions when he ended his employment one year earlier. (*See* FAC ¶ 20 ("A forensic analysis of [Garez's] laptop and desktop computers issued to Garez was conducted shortly after his departure.") The failure to immediately or timely give notice to Garez, or to his new employer, Litrinium, is not the conduct of a company that is concerned that its trade secrets have been misappropriated, nor is it consistent with the requirement that a company take reasonable steps to protect its information for it to qualify as a trade secret.

**Plaintiffs fail to allege any misappropriation by Garez**. Plaintiffs' FAC also falls short of alleging facts sufficient to plead that Garez misappropriated any trade secrets. Plaintiffs allege that Garez supposedly deleted (not took) unspecified information "unrelated to his job duties." (FAC ¶ 18.) They further allege that this unrelated work had to do with designs for a PON (Passive Optical Network) receiver. (*Id.*) Notably, Plaintiffs,

even after amending their pleading, do not allege that Litrinium has a PON component product like the one that Garez was working on in activities "unrelated" to his job duties at Mindspeed SAS. Nor is it clear that any information set forth at paragraph 14 of the FAC, which purports to describe the alleged trade secrets, relate in any way to Garez's "unrelated work." Plaintiffs also allege that Garez accessed a USB device using his work computer, but the FAC includes no allegation stating whether the USB device relates in any way to Plaintiffs' purported trade secrets, or even whether the act of attaching a USB device to a work computer was prohibited or commonplace at Mindspeed SAS.

**Plaintiffs vague descriptions in the Complaint fail to give notice of the alleged trade secrets at issue**. The FAC fails to notify Litrinium with any specificity of the trade secrets at issue. Plaintiffs, in their initial Complaint, vaguely referred to data, designs, components, and processes. (Dkt. 1 at ¶ 16.) The FAC, at paragraph 14, is equally vague, but now uses expansive language instead. The FAC describes the purported trade secrets at issue generically to include every aspect of TIA design and process imaginable, without specificity that could put Litrinium on notice of what the trade secrets actually are. As explained below in Section III.B, Plaintiffs (and numerous other market participants) have disclosed the design and processes of numerous TIA products in published patents, references, articles and datasheets. A representative sample of patents is attached to the Declaration of Michael I. Katz, filed concurrently herewith, as Exhibits 3–16. Litrinium disclosed these patents to Plaintiffs as exhibits to the original motion to dismiss. Plaintiffs made no effort, in the month-long period they took to amend their pleading, to describe their trade secrets in a way that would distinguish them from these published references in the public domain. Plaintiffs come nowhere near identifying their trade secrets with sufficient particularity to distinguish them from what is in the public domain or known in the art, as would be required to plead a plausible claim.

## II.  LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," and facts that are "merely consistent" with liability but are also consistent with nonliability fall short of "plausibility." *Iqbal*, 556 U.S. at 678; *Eclectic Pros. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (plausibility requires alleging "facts tending to exclude the possibility" that the defendant's "alternative explanation is true," which means that "establishing only a 'possible' entitlement to relief . . . [does] not support further proceedings").

Furthermore, on a motion to dismiss, while courts accept a plaintiff's well-pleaded facts as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 555). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. And where a plaintiff has failed to state a plausible claim for relief and any attempts by the plaintiff to amend its pleading would be futile, the court should dismiss the complaint with prejudice, and without leave to amend. *Garmon v. Cty. of L.A.*, 828 F.3d 837, 842 (9th Cir. 2016).

### III. ARGUMENT

Plaintiffs assert two claims for trade secret misappropriation: (1) a federal claim under the DTSA and (2) a California law claim under CUTSA. To state a claim for misappropriation under either statute, Plaintiffs must allege that (1) they owned a trade secret; (2) defendants misappropriated the trade secret; and (3) Plaintiffs suffered damages from the misappropriation. *Space Data Corp. v. X*, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (noting that the "elements of misappropriation under the DTSA are similar to those under the CUTSA"); *see also Vendavo, Inc. v. Price f(x) AG*, 2018

WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (applying California decisions interpreting the CUTSA to DTSA claims because the "elements of a trade secret misappropriation claim under the DTSA are substantially similar" to the CUTSA).

Both misappropriation claims suffer from the same legal deficiencies: Neither is tied to any supposed misconduct within the applicable territorial scope. Plaintiffs fail to plead facts indicating that the information at issue is a trade secret. And Plaintiffs fail to plead facts plausibly establishing misappropriation. Plaintiffs also fail to distinguish between Litrinium and Garez and, as such, have not alleged any conduct specifically attributable to Litrinium that gives rise to a plausible misappropriation claim. Accordingly, both claims for misappropriation fail as a matter of law, and the FAC should be dismissed.

### A. Because Plaintiffs' allegations are directed to conduct in France by a French citizen employed by a French company, the FAC fails to state a claim under the CUTSA or DTSA.

Plaintiffs' FAC makes specific factual allegations about conduct *in France*, by Mr. Garez, as a French citizen employed under the laws of France. The FAC fails, however, to include allegations plausibly stating acts of alleged misappropriation in California or even the United States. As a result, the FAC fails to plausibly set forth claims within the territorial scope of the DTSA or CUTSA.

Both the DTSA and the CUTSA are geographically limited, and thus cannot reach the foreign conduct of Garez. The DTSA applies to conduct outside the United States only if "the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof" or if "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837. Garez is neither a citizen nor a permanent resident alien of the United States. (*See* FAC ¶¶ 2–3.) The CUTSA also is geographically limited—it is subject to the general presumption against extraterritoriality of California statutes. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017) (dismissing CUTSA claim because "[n]o legislative

1    history suggests the [CUTSA] was intended to have extraterritorial effect" and the

2    "presumption [against extraterritoriality] is not rebutted here"); *see also O'Connor v.*

3    *Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) ("[T]he California Supreme

4    Court has made clear that [extraterritoriality] limitations are *presumed to be present*

5    unless the legislature's contrary intention 'is clearly expressed or reasonably to be

6    inferred from the language of the act or from its purpose, subject matter or history.'"); *N.*

7    *Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily, the statutes of a state

8    have no force beyond its boundaries."). Again, Plaintiffs have not alleged any conduct

9    specific to Litrinium, much less actionable conduct that occurred in California.

10        Accordingly, to survive dismissal, the FAC must contain allegations of fact, as

11    opposed to conclusory legal assertions, that satisfy *Iqbal* for purposes of plausibly

12    alleging misappropriation in California or the United States. *Iqbal*, 556 U.S. at 679

13    ("While legal conclusions can provide the framework of a complaint, they must be

14    supported by factual allegations."). But there are no specific allegations in the FAC, as

15    required under *Iqbal*, of any potentially wrongful conduct amounting to acts of

16    misappropriation by Litrinium at all—and none against either defendant with respect to

17    California or anywhere in the United States.

18        Plaintiffs specific and non-conclusory factual allegations relate entirely to France.

19    Plaintiffs allege that Garez, while employed by Mindspeed SAS in France, "used

20    Plaintiffs' resources and developed confidential and proprietary design concepts . . ."

21    (FAC ¶ 17.) They further allege that "[a] forensic investigation of Garez's activities

22    conducted after his departure established that while still employed by Plaintiffs [Garez]

23    was working on projects unrelated to his job duties that were hidden from Plaintiffs.

24    These projects included a burst mode PON receiver and a 3rd generation 28G TIA. These

25    unrelated projects included developing circuits, including running temperature sweeps

26    and other parametric simulations to test the robustness of the designs as well as

27    developing schematics of these designs." (FAC ¶ 18.) The FAC at paragraph 20 alleges

28    that a forensic analysis of Mr. Garez's computers conducted "shortly after his departure"

showed that he "deleted technical information from his company laptop" and "accessed files on his work laptop using a USB device within one month of his departure." The FAC does not state what files were deleted or what was accessed—whether personal or related to any alleged trade secrets—so when push comes to shove, the allegations in the FAC of Garez's conduct even in France fall short of stating any act of misappropriation.

The only act alleged to have been taken by Garez in the United States is set forth at paragraph 21 of the FAC, as follows:

> "On information and belief, prior to his departure from Plaintiffs' employ, Garez used his regularly scheduled business trips to Plaintiffs' Newport Beach, California offices to visit Litrinium and/or connect with Bajwa in order to coordinate defendant Garez's misappropriation of Plaintiffs' trade secrets."[2]

The statement, made solely on information and belief, that Garez visited Litrinium and a Litrinium executive "in order to coordinate defendant Garez's misappropriation of Plaintiffs' trade secrets" is exactly the kind of legal conclusion dressed up as a fact that falls short of stating a plausible claim. *See Twombly*, 550 U.S. at 557 (finding bare allegations of conspiracy conclusory without pleading of underlying facts); *see also Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 694, (9th Cir. 2009); *Gamez v. Woodland Direct Inc.*, 2017 WL 8185854, at *2 (C.D. Cal. Mar. 31, 2017) ("If the factual allegations based on "information and belief" are made without further facts, the allegations do not survive a motion to dismiss.").

The FAC is devoid of a single, specific allegation of any act of misappropriation that occurred in the United States. Moreover, it is devoid of any allegation of an act of misappropriation by Litrinium. What is clear, moreover, is that Mr. Garez, after resigning from Mindspeed SAS, went to work for Litrinium in an office "in France." (FAC ¶ 25.)

---

[2] Elsewhere in the FAC, these "regularly scheduled business trips" are exposed as only two business trips in March and September of 2016, 1½ to 2 years before Garez left Mindspeed SAS and completely divorced from Plaintiffs' misappropriation allegations.

Also conclusory and failing the requirement of *Iqbal* is the allegation, at paragraph 26 of the FAC, that "Plaintiffs are informed and believe that Litrinium's office located in France is just a mechanism to employ Garez, and that all substantive Litrinium operations are conducted through its California entity, including the use of misappropriated trade secrets and confidential information taken by Garez from Plaintiffs." The phrase "the use of misappropriated trade secrets and confidential information taken by Garez" is again no more than a legal conclusion, not a statement of fact that could satisfy *Iqbal*. *See Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, *14 (N.D. Cal. Jun. 29, 2017) (finding allegations of use without underlying facts to be "'naked assertions' and 'conclusions' [that] are not the sort of factual allegations that the Court must accept as true at the pleading stage"). Notably, Plaintiffs do not purport to have inspected any of Litrinium's products to confirm that any trade secrets are incorporated in them. In fact, the FAC does not identify a single Litrinium product purportedly relevant to Plaintiffs' allegations, by name or otherwise.

Despite being notified previously of this deficiency through the parties' conference regarding Plaintiffs' original Complaint and through Litrinium's first motion to dismiss, Plaintiffs' FAC fails to include any alleged *facts* tying the alleged misconduct to California or the United States. Quite the opposite, the allegations of Plaintiffs' FAC on their face are tied to France, and Plaintiffs seek to form a nexus to California or the United States by inserting legal conclusions made on information and belief, which fail to satisfy the requirements under *Iqbal*. Plaintiffs' trade-secret claims against Litrinium should be accordingly dismissed.

## B.   Plaintiffs' vague allegations fail to plausibly allege misappropriation of any information that constitutes a trade secret.

The FAC should be dismissed because Plaintiffs fail to plausibly allege that the information purportedly misappropriated by Defendants constitutes a trade secret.

To survive a motion to dismiss, a plaintiff alleging violations of the DTSA and the CUTSA must describe the trade secret that it contends has been misappropriated "'with

sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."' *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Trade secrets have specific characteristics under federal and California law, *see* 18 U.S.C. § 1839(3); *Whyte v. Schlage Lock Co.*, 101 Cal. App 4th 1443, 1454 (2002) ("The test for trade secrets is whether the matter sought to be protected is information (1) which is valuable because it is unknown to others and (2) which the owner has attempted to keep secret."), and a trade secret plaintiff must plead those specific characteristics to state a plausible claim for relief.

Plaintiffs purport to identify their trade secrets at paragraph 14 of the FAC. Plaintiffs fail to identify any of their technology with the specificity required under *Iqbal*, to distinguish what is claimed from what is known in the art and in the public domain, including MACOM's own publications and patents. Litrinium attached a good number of U.S. patent documents in support of its first motion to dismiss. Plaintiffs have made no attempt in amending their pleading to describe the alleged trade secrets in a manner that distinguishes them from this public domain material, which is again submitted in support of this motion. (*See* Katz Decl., Exs. 3–16.) Five months into this litigation, Plaintiffs continue to identify broadly worded, generic information as their trade secrets. The defects, discussed below, fall into three, overlapping categories: (1) the putative "trade secrets" are generic and open-ended, (2) the putative trade secrets identify categories of information that on their face are not secret, and (3) the alleged trade secrets are not described in sufficient detail to distinguish them from what is generally known.

### 1. Plaintiffs' allegations stating only generic, open-ended information fail to plead plausible trade secrets.

One of the primary amendments in the FAC is the replacement and repackaging of Plaintiffs' prior vague trade-secret description with a more extensive, but equally vague, description in eight categories set forth at paragraph 14 of the FAC. Six of those eight

categories are open-ended, using the word "including" as a means of avoiding identifying the metes and bounds of what is claimed as a trade secret, as follows:

1. "method for developing a transimpedance amplifier (TIA) according to customer requirements and specifications for passive optical networks (PON), including …"

2. "internal circuit design operational methodologies, including …"

3. "mechanical development methodologies, including …"

4. "internally developed information about the ST Microelectronics (STM) B55 process, including …"

5. "design of the TIA, subject to the constraints of an integrated circuit (IC) process and photodetector (PD) packaging including …"

8. "compilation of all trade secrets set forth above including …"

(FAC ¶ 14.) Plaintiffs' use of the open-ended term "including" in paragraph 14(1)–(5) and 14(8) ensnares publicly available information and makes the purported definitions so expansive as to render them practically meaningless, and Plaintiffs' formulation fails to set forth a plausible trade secret claim. *See Emazing Lights LLC v. De Oca*, 2016 WL 3658945, *2 (C.D. Cal. Jan. 7, 2016) (finding insufficient a trade secret definition that " 'include[s], but [is] not limited to,' the enumerated items [because any] piece of information could potentially be labeled a trade secret under this definition.").

Paragraph 14(8) of the FAC exemplifies the FAC's open-ended description of purported trade secrets, as follows:

"compilation of all trade secrets set forth above including those combined with public technology and confidential and non-confidential business information to produce MACOM products."

Effectively, this is an everything-but-the-kitchen-sink identification that has no metes or bounds. Plaintiffs contend that all non-confidential and public-domain technology is part of their trade secrets, if used or combined—whatever that means—to produce MACOM products.

This defect epitomizes the failure to meet the requirements under *Iqbal*. The FAC "is too sweeping and vague for Defendant[s] to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie." *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, *6 (N.D. Cal. Oct. 24, 2013). Courts routinely dismiss overbroad trade-secret definitions like Plaintiffs'. *See*, *e.g.*, *Space Data Corp.*, 2017 WL 5013363, at *2 ("vague references to an enormous array of potential sources do not suffice to survive Defendant's motion to dismiss"); *Human Longevity, Inc. v. J. Craig Venter Institute, Inc.*, 2018 WL 6617633, *5 (S.D. Cal. Dec. 18, 2018) (dismissing complaint where "allegations of [trade secret technology] are expansive and lack particularity").

## 2. The FAC fails to identify plausible trade secrets because the purported description expressly identifies information that, on its face, is public in nature.

The inclusion in paragraph 14(8) of public technology and non-confidential business information highlights a second, related defect in the pleading. Not only is the identification open-ended, but it claims as Plaintiffs' trade secrets information that, on its face, is public in nature. This same defect is apparent in the first four categories of information identified in FAC paragraph 14 as Plaintiffs' trade secrets.

### a) Those in the TIA industry develop TIAs according to customer requirements and specifications.

Paragraph 14(1) of the FAC purports to identify, as a misappropriated trade secret, a "method for developing a transimpedance amplifier (TIA) according to customer requirements and specifications for passive optical networks (PON), including performance parameters and shortcomings based on trial and error from internal development efforts." This fails to identify the metes and bounds of any conceivable trade secret. Simply replace "transimpedance amplifier" in this description with any other product, and this conclusion is obvious: whether it be a "method" for developing a boat,

car, or a cell phone, one would be hard pressed to assert that "developing [a product] according to customer requirements and specifications" is a trade secret.

### b) Any designer of TIA circuits considers pricing on parts, production costs, testing, and yields.

Paragraph 14(2) of the FAC is another generic statement of a "design methodology" that is nothing more than a statement that, in designing a TIA, one considers the price of parts, production costs, testing and yields. Again, any manufacturer, whether it be of a consumer item or any widget sold for any purpose, will consider such basic elements in developing a product that is competitive in the market. This is not a plausible identification of a trade secret compliant with *Iqbal*.

### c) Those in the TIA industry develop TIAs according to mechanical size restrictions and customer preferences.

Paragraph 14(3) of the FAC again identifies a broad category of information, "mechanical development methodologies," which is a fancy way to say the physical dimensions and placement of a product. But the appearance and size of a product are not trade secrets.

Plaintiffs' example of "[m]aximum die size allowable in different types of ROSAs and optimal die aspect ratio" is easily shown to be publicly available to any entity manufacturing TIAs.[3] For example, the figures below from Plaintiffs' own TIA datasheet show the die size allowable for connectors on an optical sub-assembly as well as the exact die size and placement of the TIA. (Katz Decl., Ex. 1 at pp. 2 and 15.)

---

[3] ROSA is an acronym for receiver optical sub-assembly. These devices, when purchased, can easily be opened up, and the die size and die aspect ratios easily observed.



**MACOM Published Diagram of Optical Receiver Assembly**



**MACOM Published Pad Configuration**

The second example of paragraph 14(3) is "knowledge of customer preferred PAD locations and ROSA signal integrity challenges (high speed behavior of ROSA pin/substrate)." The FAC includes no allegation explaining how "customer preferred PAD locations" can possibly be a trade secret. Nowhere do Plaintiffs allege that a *customer's* specifications are a secret owned by *Plaintiffs*. Customers, when testing competing TIAs for inclusion in their optical networking equipment, necessarily tell each TIA vendor what their preferred PAD locations are so that they can test competing TIAs to compare their performance. Nowhere does the FAC allege that "customer preferred PAD locations" are not communicated to all TIA suppliers responding to requests for proposal.

> **d)  Those in the TIA industry generally gather information about cost, manufacturing time, and availability from major global manufacturers, like STMicroelectronics and TowerJazz.**

Paragraph 14(4) of the FAC is yet another broad description of general-industry information. STMicroelectronics (STM) and TowerJazz (TJ) are third-party chip manufacturers. Both STM and TowerJazz provide customers with all of the information identified by Plaintiffs as "internally developed information." Rather than belabor each detail, one need only point out that cost is obviously an item communicated to the market by each manufacturer, and cycle time and availability is again by its nature something that changes in real time depending on the present use and capacity of each

manufacturer's production facilities. A customer need only call STM or TowerJazz and ask how long it will take to fulfill the order, what the turnaround time is, and the price.

> **e)   Those in the TIA industry, by necessity, design TIAs subject to the constraints of integrated circuits and photodetectors.**

With respect to paragraph 14(5), once again, the "design of the TIA" would apply to any design of TIAs. The performance targets and limitations of current MACOM products are actually listed on Plaintiff MACOM's own website, a screen shot of which appears below. (Katz Decl., Ex. 2 at p. 13.)

| Part Number | Description | Block Diagram Key* | Max Data Rate (Gbps) | Differential Transimpedance Gain (kOhms) | Small Signal Bandwidth (GHz) | Input Overload Current (mA) | Input Referred Noise (IRN, RMS nA) (nA) |
|---|---|---|---|---|---|---|---|
| | | | * * * | | | | |
| MATA-03003 | 28 Gbps Quad Channel Transimpedance Amplifier | C, D, G, I | 28 | 3.8 | 21 | 4 | 1400 |

Transimpedance Amplifiers (TIA) (continued)

All of the above "descriptions," while offering a veneer of technical jargon, could encompass *anything* related to Plaintiffs'—or anyone else's—TIA products and business. The definitions are extremely broad and, as such, do not give notice of any specific information that Plaintiffs could possibly claim as trade secret. Plaintiffs do not even attempt to allege *how* any of this information warrants protection as trade secrets. *Synopsys*, 2013 WL 5770542, at *6  ("Materials are not trade secrets just because Plaintiff says they are.").

Plaintiffs' allegations based on this broad definition are insufficient because "they do not even give the Court or Defendants notice of the boundaries of this case," as a complaint must to survive a motion to dismiss. *Space Data Corp.*, 2017 WL 5013363, at *2. In *Vendavo*, for example, the plaintiff alleged its purported trade secrets in similarly broad terms to include "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of

research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements." *Vendavo*, 2018 WL 1456697, at *3. The court deemed these "conclusory and generalized allegations [] insufficient" because the plaintiff "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated." *Id.* That is precisely what Plaintiffs have done here, and precisely why Plaintiffs' allegations cannot survive this Motion.

### 3. The generic categories of information identified by Plaintiffs as their trade secrets do not distinguish from what is generally known as reflected by publicly filed patents

Plaintiffs' and others in the TIA-technology space own patents that show many aspects of TIA design, components, and know-how. (*See* Katz Decl., Exs. 3–16.) Plaintiffs and others also make other information about their products publicly available by publishing it on the Internet. Plaintiffs fail to plead facts in the FAC to distinguish what they claim as trade secrets from what is disclosed in other references in the public domain. "[I]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (citation omitted); *see also Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir. 1982) ("Matters disclosed in a patent publication destroy any trade secret contained therein.").

For example, Patent Publication No. US 2017/0026011 is one of Plaintiffs' own published patent applications regarding a "Transimpedance Amplifier." This publication shows Plaintiffs' TIA designs and electronic environments for using the TIAs. (*See* Katz Decl., Exs. 15–16.) Similarly, Plaintiffs' U.S. Patent No. 8,509,629 is also directed to "a

transimpedance amplifier for high rate applications," and its figures also show a circuit diagram for the disclosed TIA. (Katz Decl., Exs. 9–10.) Additionally, patent filings by others with respect to TIAs show that TIA designs and processes are not uniquely Plaintiffs'. (*See* Katz Decl., Exs. 3–8, 11–13.) Plaintiffs' nebulous description of their trade secrets overlaps with Plaintiffs' own patent filings as well as what is disclosed in patent filings by numerous others in the TIA industry. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465 (9th Cir. 1990) ("matter[s] of common public knowledge" cannot be a trade secret); Cal. Civ. Code § 3426.1 Legis. Comm. Cmts. ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market.").

Below we discuss in detail a few of the purported "trade secrets" in paragraph 14 of the FAC, showing in more detail how what is described in the FAC is shown in public patents. Bear in mind, this is a small representative sample of the public references in this area. Plaintiffs have made no attempt to distinguish these or any other such references.

### a)   A "design for automatic gain control in the TIA to prevent overload" is generic and in the public domain.

Paragraph 14(6) of the FAC claims as a trade secret a "design for automatic gain control in the TIA to prevent overload." This is nothing more than the statement of a generic, public-domain design involving a generic function which can be found in multiple U.S. patents. *See* U.S. Patent No. 9,030,263, entitled "Transimpedance Amplifier (TIA) Circuit and Method," (Katz Decl., Ex. 11 at Abstract ("A TIA circuit and method are provided that merge the automatic gain control function with the bandwidth adjustment function to allow the TIA circuit to operate over a wide dynamic range at multiple data rates."); *see also* U.S. Patent No. 6,084,478, entitled "Transimpedance Amplifier with Automatic Gain Control," Katz Decl., Ex. 7; U.S. Patent No. 5,646,573, entitled "Automatic Gain Control Transimpedance Amplifier," Katz Decl., Ex. 6.)

With so many publicly available examples of TIA designs for automatic gain control, paragraph 14(6) is overly broad and does not plausibly set forth a trade secret "'"with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."'" *Pellerin*, 877 F. Supp. 2d at 988.

> **b)   A "design of DC offset compensation at the input of a TIA for PON" is generic and in the Public Domain.**

Paragraph 14(7) of the FAC is also a generic statement of a well-known TIA design found in the public, including U.S. Patent No. 9,577,753, entitled "Transimpedance Amplifier." In that patent, "FIG. 1A is a block diagram illustrating a PON System."[4] (Katz. Decl., Ex. 13 at Fig. 1A, col. 2, ln. 3.) And Figure 3 shows a DC offset compensation at the input of a disclosed embodiment of a TIA.



This public example of a design of DC offset at the input of the TIA shows that paragraph 14(7) is overly broad and does not plausibly set forth a trade secret that could form a basis of Plaintiffs' trade-secret allegations. *Pellerin*, 877 F. Supp. 2d at 988.

> **C.   Plaintiffs fail to allege facts sufficient to show that they took reasonable steps to preserve the secrecy of the information claimed to have been misappropriated.**

Plaintiffs fail to plausibly set forth trade secrets at paragraph 14 of the FAC for yet another reason. Plaintiffs do not allege that either of them took reasonable steps to maintain the secrecy of any of the categories of information alleged as trade secret in

---

[4] PON is an acronym for Passive Optical Network. (Katz Decl., Ex. 13 at col. 2, ln. 28.)

paragraph 14. *See* Cal. Civ. Code § 3426.1(d) (a "trade secret" must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy").

Plaintiffs address the measures they take to keep information secret in paragraph 12 of the FAC, which, purports to identify the "substantial steps" Plaintiffs take to keep confidential the information "at the core of the success of their business." However, paragraph 12 does not refer to paragraph 14 of the FAC. The only information as to which Plaintiffs' specifically allege taking "substantial steps" to preserve secrecy in paragraph 12 is identified in paragraph 11 of the FAC, as "the ability to make design decisions based on knowing what may or may not be successful, as well as the knowledge about both the likely path to the marketplace based on information received from customer and internal work." (The FAC, at paragraph 12, states that Plaintiffs take "substantial steps to keep *such information* secret." (Emphasis added).) With respect to other information, such as that identified as Garez's work product, the FAC identifies facts that tend to confirm that Plaintiffs' failed to take steps to preserve the confidentiality of that information. Plaintiffs did nothing, for an entire year, after purportedly conducting a forensic examination of Garez' work computers and finding information they now allege to be some evidence of improper conduct giving rise to a claim. (FAC ¶¶ 20, 25.)

What is entirely unstated in the FAC, however, is what steps, if any, were taken to preserve the confidentiality and secrecy of each category of information in paragraph 14. Nor could Plaintiffs do so because much of the information called "secret" in paragraph 14 constitutes third-party customer preferences, third-party manufacturer capabilities, easily observable physical sizes and similar product characteristics, information in Plaintiffs' own patent documents, and other public information. Plaintiffs, in short, dodge the pleading requirement that they make specific allegations of facts establishing the existence of plausible trade secrets, including factual allegations of steps taken to preserve the secrecy of the information that is allegedly a trade secret.

### D.   Plaintiffs fail to allege trade secret misappropriation by Litrinium.

Plaintiffs' FAC should also be dismissed as to Litrinium on the independent ground that MACOM fails to plausibly allege misappropriation by Litrinium.

To state a claim for misappropriation under the DTSA or the CUTSA, a plaintiff must plead that the information at issue was "acquired by improper means." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). Under the DTSA, "improper means" includes "misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy," and expressly excludes any "lawful means of acquisition." 18 U.S.C. § 1839(6). Likewise, "improper means" under the CUTSA refers to "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." Cal. Civ. Code § 3426.1(a).

No such conduct by Litrinium has been pled by Plaintiffs. *See Pellerin*, 877 F. Supp. 2d at 989–90 ("the standard on a motion to dismiss is 'whether the plaintiff has pled enough facts raising a plausible claim that the defendant misappropriated those trade secrets'") (citation omitted). Plaintiffs failed to even allege misappropriation by Garez.

Plaintiffs' sole allegation against Litrinium is that it recruited and then hired Mr. Garez to work in France. (FAC ¶¶ 16, 25.) There is not a single allegation of fact, as opposed to legal conclusions, that Litrinium knew, or had reason to know, of any misappropriation of trade secrets by Mr. Garez. The closest the FAC comes is at paragraph 21, in which Plaintiffs allege, on information and belief without any supporting facts:

> "On information and belief, prior to his departure from Plaintiffs' employ, Garez used his regularly scheduled business trips to Plaintiffs' Newport Beach, California offices to visit Litrinium and/or connect with Bajwa in order to coordinate defendant Garez's misappropriation of Plaintiffs' trade secrets."

What's missing are pleaded facts about the information that supposedly leads Plaintiffs to the conclusory belief that Litrinium misappropriated trade secrets. "[C]onclusory

1   allegation based on information and belief remains insufficient under *Iqbal/Twombly*."

2   *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, *2 (N.D. Cal. Mar. 19, 2018) (citing *Arista*

3   *Record LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). Thus, despite Plaintiffs' failure to

4   describe plausible trade secrets, Plaintiffs also fail to plausibly allege that Litrinium

5   misappropriated any of those trade secrets. *See Veronica Foods*, 2017 WL 2806706, at

6   *14.  (finding allegations of use without underlying facts to be "'"naked assertions' and

7   'conclusions' [that] are not the sort of factual allegations that the Court must accept as

8   true at the pleading stage").

9           **1.    Plaintiffs fail to allege facts to plausibly state that Garez**

10                **improperly acquired any trade secrets.**

11          Plaintiffs fail to allege that Garez gained access to the purported trade-secret

12   information supposedly at issue, such as the categories of information set forth in

13   paragraph 14 of the FAC. Plaintiffs, therefore, fail to properly allege that Garez even

14   *could* improperly disclose that information to Litrinium.

15          Plaintiffs allege that they maintain internal network security procedures to restrict

16   access and ensure that internal company information is not publicly available, and that

17   Plaintiffs carefully monitor the results of their internal product efforts. (FAC ¶ 12.)

18   Nowhere does the FAC allege that Garez was able to access or take the information in the

19   categories of paragraph 14 to be able to even show that information to someone outside

20   of MACOM or Mindspeed SAS.

21          In lieu of facts, Plaintiffs allege, in a conclusory and unsupported fashion, that Garez

22   was "responsible for" certain TIA products of MACOM. (FAC ¶ 13.) But this amounts to

23   nothing more than a bare accusation that by virtue of being a Mindspeed SAS employee,

24   Garez (and, in turn, every other employee of Plaintiffs) may have had an *opportunity to*

25   *access* the technology at issue.

26          Such generalized allegations of *potential access* to trade secret information are

27   routinely rejected by courts at the pleadings stage as "insufficient to establish

28   misappropriation." *Pellerin*, 877 F. Supp. 2d at 989 (granting motion to dismiss where the

claimant failed to "allege any facts in support of the legal conclusion that [the accused] . . . 'acquired and/or used'" trade secrets). In *Citcon USA, LLC v. RiverPay Inc.*, for example, the plaintiff alleged, in support of its DTSA and CUTSA claims, that its former employee "maintain[ed] his login and password" to a specific "MySQL database" after taking a new job with a competitor. 2018 WL 6813211, at *6 (N.D. Cal. Dec. 27, 2018). But the plaintiff failed to plausibly allege "how, or when [the defendant] took advantage of the access to log into the database. . . . In other words, [the plaintiff] essentially allege[d] that [the defendant] kept a key to a locked room but [did] not allege that [he] ever unlocked the room to access its contents." *Id.* The court reasoned that without the allegations that the room had been unlocked to access its contents, plaintiff had failed to state a plausible claim of misappropriation and dismissed the complaint accordingly. Courts in this circuit routinely dismiss misappropriation complaints that allege the potential for access, as opposed to actual access. *See also, e.g.*, *Physician's Surrogacy, Inc. v. German*, 2018 WL 638229, at *8 (S.D. Cal. Jan. 31, 2018) (allegations that defendants used a third-party email address to misappropriate plaintiff's trade secrets deemed insufficient without allegations of *when* the email address purportedly was used). Plaintiffs' misappropriation claims against Garez fail on this basis alone.

Plaintiffs do allege that Garez used a "USB device" at some point during the last month of his employment. (*See* FAC ¶ 20.) But this allegation does not plausibly state a claim for misappropriation or even imply one. There is no allegation that use of USB devices at Mindspeed SAS or MACOM was uncommon and would not be expected for any of Plaintiffs' employees within any particular 30-day window. There are also no allegations that Garez used this alleged USB device in any improper way or that Garez used it to misappropriate trade secrets. Plaintiffs' allegation is carefully worded and simply states that Garez used a USB device, which is not a plausible, factual underpinning for claims of misappropriation. Given that Plaintiffs state that they performed a "forensic investigation" into Garez's activities, their failure to identify any actual deletion, copying, disclosure or use of any alleged trade secret speaks volumes.

Accordingly, Plaintiffs rely entirely on the assumption that Garez accessed and then took their *trade secrets* based on the mere fact that Litrinium also sells TIA products. (FAC ¶ 23 ("On information and belief, the development of these components at MACOM were of particular commercial interest to Litrinium").) There is no basis to infer from the mere fact that Litrinium and MACOM compete in the same space that Garez retained or improperly accessed the purported trade secret information either before or following his departure from MACOM. *See Human Longevity, Inc.*, 2018 WL 6617633, at *6 (granting motion to dismiss where alleged facts were "not adequate to infer that Defendant . . . improperly acquired new or different information after [he] left his employment with" plaintiff).

## 2. Even if Plaintiffs had alleged that Garez improperly acquired trade secrets, Plaintiffs fail to allege disclosure to Litrinium.

Plaintiffs' FAC is also devoid of any allegation of fact that Garez disclosed any of Plaintiffs' trade secrets to Litrinium. The closest the FAC comes is to allege based on "information and belief," that Garez "used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Plaintiffs, which were then incorporated into Litrinium products." (FAC ¶¶ 17, 24.) This suggestion, yet again made "[o]n information and belief," is entirely speculative, does not allege any link to the alleged secrets in paragraph 14, and is thus insufficient to survive this motion. *See Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (dismissing complaint in part because allegation made "on information and belief" gives rise to "a reasonable inference [] that it is intended as caveat, to provide additional protection should plaintiff be unable to prove any of the factual allegations" and "creates a further inference that plaintiff . . . is [] engaging in speculation to an undue degree").

Plaintiffs also fail to allege the when or how of Garez's purported disclosure to Litrinium. With no information provided as to the foundation of Plaintiffs' "information and belief," this statement is the epitome of a conclusory allegation (*see Twombly*, 550 U.S. at 555 (stating a claim for relief "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do")), and is inadequate to support the inference that Garez improperly disclosed information or that Litrinium had any knowledge that it was receiving or using any trade-secret information, within the meaning of the DTSA or the CUTSA. *See Human Longevity, Inc.*, 2018 WL 6617633, at *6 (deeming allegation "inadequate to support the inference that [defendant] improperly disclosed information" despite allegations that defendant forwarded emails containing plaintiff's alleged trade secrets, when precise "nature of the alleged [emails] is unclear"); *Veronica Foods*, 2017 WL 2806706, at *14 (dismissing allegations of misappropriation of specific documents such as customer lists and supplier lists as based on "naked assertions" and "conclusions").

Plaintiffs' misappropriation claims are entirely predicated on a legally impermissible assumption. And California has explicitly rejected the doctrine of "inevitable disclosure." *Whyte*, 101 Cal. App. 4th at 1463 ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete."). That means that, under the CUTSA, "a party cannot prove trade secret misappropriation by speculating that a former employee's new employment will inevitably lead the former employee to rely on the former employee's trade secrets." *Pellerin*, 877 F. Supp. 2d at 989; *see also*, *e.g.*, *Les Concierges, Inc. v. Robeson*, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("[A] threat of misappropriation cannot, as a matter of California law, be inferred from the fact [the defendant-employee], upon voluntarily terminating his employment with [the plaintiff-employer], immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties he performed while employed by [the plaintiff-employer]."). District Courts in California have rejected DTSA claims predicated on a similar theory—that a defendant who had access to trade-secret information while employed by the plaintiff must have disclosed that information

when he started working at a competitor and "beginning development of a program to compete with" his former employer.[5] *Human Longevity*, 2018 WL 6617633, at *6.

For all these reasons, Plaintiffs fail to allege facts giving rise to a plausible inference of misappropriation by Garez or Litrinium within the meaning of the DTSA or CUTSA, and Plaintiffs' claims against Litrinium should be dismissed accordingly.

### 3. Plaintiffs also fail to plausibly allege that Garez used Plaintiffs' TIA technology at Litrinium with or without Litrinium's knowledge.

Plaintiffs' FAC contains only vague allegations that "on information and belief" that "Garez used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Plaintiffs, which were then incorporated into Litrinium products." (FAC ¶ 17.) The FAC is silent as to any wrongful conduct by Litrinium, and the FAC does not say that any of this allegedly incorporated information relates to the information set forth at paragraph 14 and its various subparts. Plaintiffs are also careful not to say "which Litrinium then incorporated," but use the passive "which were then incorporated." Here, Plaintiffs accuse Litrinium of trade-secret misappropriation merely by virtue of Litrinium hiring a former MACOM employee.[6] And again, Plaintiffs do not

---

[5] Plaintiffs' theory of misappropriation is particularly speculative since the FAC lacks allegations that Litrinium could not have independently developed its product features, and thus that it could only have done so by obtaining alleged trade secrets through improper means. *See, e.g.*, *Eclectic Properties East*, 751 F.3d at 996–97 (requiring complaint to allege "facts tending to exclude the possibility" that an "alternative explanation is true," and holding that "establishing only a 'possible' entitlement to relief . . . [does] not support further proceedings").

[6] To the extent Plaintiffs' claims against Litrinium alternatively are predicated on the allegation that Litrinium received its technology from Garez, the claim also fails for the reasons discussed *supra* in Part IV.D.1. The claim similarly fails to the extent predicated on the allegation that Litrinium somehow induced Garez to breach any duty, because the Complaint is devoid of any allegations of actions taken by Litrinium to induce a breach of that duty.

allege that they conducted an inspection or analysis of a single Litrinium TIA product to verify this assumption.

Plaintiffs offer only this conclusory allegation that Litrinium used any of Plaintiffs' alleged trade secrets. Plaintiffs do not allege the specific trade secrets purportedly used, how they were used, or when they were used. Courts have declined to infer misappropriation from competition. To the contrary, courts have held that competition is "to be expected," and that allegations of competition, without more, are insufficient to survive a pleading challenge to a misappropriation claim. *Veronica Foods*, 2017 WL 2806706, at *14 (holding that any such allegation of competition must be coupled with "allege[d] facts that are not 'merely consistent with' both a theory of innocent market entry and [misappropriation], but rather '*tend[ ] to exclude*' an innocent explanation" to survive a motion to dismiss) (emphasis added).

Courts have gone further and stated that the mere act of a competitor developing a competing product or service—even if the competitor employs the plaintiff's former employees—cannot carry a trade secret misappropriation claim beyond the pleadings stage. *See, e.g.*, *Human Longevity*, 2018 WL 6617633, at *6 (granting motion to dismiss because "development of a program to compete" with plaintiff does not "giv[e] rise to a plausible inference of misappropriation" or "plausibly suggest an entitlement to relief"); *Les Concierges*, 2009 WL 1138561, at *2 (a trade secret plaintiff "must submit evidence beyond its former employee's knowledge of trade secrets and subsequent change of employers"); *see also Veronica Foods*, 2017 WL 2806706, at *14 (where defendants are alleged to have developed a product to compete in a previously under-competitive market, it "increases the need for specific allegations showing that Defendants used trade secret knowledge" because competing products and services are "to be expected from a new [competitor] entering the market").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

DATED: May 6, 2019

Respectfully, Submitted,

MASCHOFF BRENNAN

By: */s/ Michael I. Katz*

Michael I. Katz
Charles S. Barquist
Jared J. Braithwaite

Attorneys for Defendant LITRINIUM, INC.