Michael I. Katz (CA State Bar No. 181728)
    mkatz@mabr.com
Charles S. Barquist (CA State Bar No. 133785)
    cbarquist@mabr.com
Jared J. Braithwaite (CA State Bar No. 288642)
    jbraithwaite@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone:   (949) 202-1900
Facsimile:    (949) 453-1104

Attorneys for Defendant LITRINIUM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **MACOM Technology Solutions Inc.**, a Delaware corporation; **Mindspeed Technologies, S.A.S.**, a French corporation, | Case No. 8:19cv-00220-JVS-JDE |
| Plaintiffs; | **Joint Stipulation Regarding Litrinium, Inc.'s Motion for Plaintiffs' Pre-Discovery Disclosure of Their Trade Secrets** |
| v. | |
| **Litrinium, Inc.**, a Delaware corporation; **Jerome Garez**, an individual; and **Does 1 through 20**, inclusive, | Motion Assigned to:   Hon. John D. Early<br>Hearing Date:         June 20, 2019 at 10:00 a.m.<br>Courtroom:            6A |
| Defendants. | Discovery Cut-Off:    April 6, 2020<br>Pretrial Conference:  August 3, 2020<br>Trial Date:           August 18, 2020 |

1    Pursuant to Local Rule 37-2, Defendant Litrinium, Inc. and Plaintiffs MACOM

2    Technology Solutions Inc. and Mindspeed Technologies, S.A.S. submit this Joint

3    Stipulation setting forth their respective contentions concerning Litrinium's motion to

4    require Plaintiffs' pre-discovery disclosure of their trade secrets with reasonable

5    particularity pursuant to, for example, California Civil Code § 2019.210.

6    One May 6, 2019, at the Rule 16 case management conference, Judge Selna

7    requested that the parties take this issue before Magistrate Judge Early on an expedited

8    basis.

9    A copy of the transcript from the Court's Rule 16 case management conference is

10   attached as Exhibit 1 to the accompanying Declaration of Michael I. Katz, and pursuant

11   to L.R. 37-2.1, a copy of the Court's order establishing a case schedule is attached as

12   Exhibit 2 to that declaration.

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

      A.   Litrinium's Introductory Statement ...................................................1

      B.   Plaintiffs' Introductory Statement ....................................................4

II.   DISPUTE REGARDING PLAINTIFFS'  PRE-DISCOVERY
      DISCLOSURE OF TRADE SECRETS ........................................................ 6

      A.   Litrinium's Contentions....................................................................6

           1.    California Code of Civil Procedure § 2019.210 requires Plaintiffs to
                 identify their trade secrets with reasonable particularity before
                 obtaining discovery. ....................................................................8

           2.    Federal case law supports a requirement for Plaintiffs to identify
                 their trade secrets with reasonable particularity proceeding with
                 discovery. ...................................................................................10

           3.    Plaintiffs have failed to set forth their alleged trade secrets with
                 sufficient particularity in their First Amended Complaint. ......................14

           4.    Plaintiffs' weaponization of this lawsuit, inadequate pleading,
                 refusal to submit the matter to a neutral expert, and refusal to
                 identify their trade secrets reinforce the need for an order barring
                 Plaintiffs' discovery absent disclosure of their trade secrets with
                 particularity. ...............................................................................23

      B.   Plaintiffs' Contentions ...................................................................24

           1.    Litrinium has not shown good cause to stay discovery ...........................25

           2.    The policy reasons supporting trade secret disclosure confirm that
                 Litrinium must respond to Plaintiffs' discovery ....................................27

           3.    Plaintiffs have sufficiently disclosed their trade secrets at this stage
                 of the litigation...........................................................................29

           4.    Litrinium's final arguments concerning Plaintiffs' conduct confirm
                 why discovery is appropriate here .....................................................34

III.  PLAINTIFFS' CURRENT DISCOVERY REQUESTS ................................... 35

IV.  CONCLUSION ........................................................................................ 37

    A.  Litrinium's Concluding Statement ................................................37

    B.  Plaintiffs' Concluding Statement ...................................................37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

## A.   Litrinium's Introductory Statement

During the Court's Rule 16 case management conference on May 6, 2019. Judge Selna observed that the California statute "anticipates that a detailed statement of the trade secret be made as a condition to going forward with discovery." (Katz Decl., Ex. 1 at p. 3, lns. 13–24.) Plaintiffs have made no such "detailed statement." Nevertheless, at the case management conference, counsel for Plaintiffs confirmed their position that the allegations of trade secrets made in the First Amended Complaint "sufficiently addressed" the issue of "getting a more definitive statement of what the trade secret is," and that their pleading meets the disclosure requirements of Cal. Civ. P. § 2019.210. (*Id.*, Ex. 1 at p. 3, lns. 14–17 & p. 4, lns. 4-9.) Judge Selna stated that if Litrinium found Plaintiffs' disclosure to be insufficient, then the matter should be brought to Magistrate Judge Early on an expedited basis. (*Id.*, Ex. 1 at p. 4, lns. 10–13.)

By this motion, Litrinium seeks entry of an order requiring Plaintiffs—who assert causes of action for trade secret misappropriation under the Defense of Trade Secrets Act ("DTSA") and California's Uniform Trade Secrets Act ("CUTSA")—to identify with reasonable particularity those trade secrets that they have a good faith basis to believe Litrinium misappropriated, prior to commencing discovery related to Plaintiffs' claims against Litrinium. In the parties' meet and confer, which began on April 1, 2019, Plaintiffs have taken the position that the requirement that they first disclose their trade secrets with particularity before commencing discovery does not apply in federal court, a position they continue to maintain even after Judge Selna's statements on the record at the Rule 16 conference. On this basis, Plaintiffs have refused to disclose any information about their trade secrets other than what is included in their First Amended Complaint.

After being served with the Complaint in early February 2019, Litrinium offered to submit its TIA technology to an independent expert to confirm that (1) none of Plaintiffs' designs or purported trade secrets had been used by Litrinium, and (2) Litrinium's TIA designs are markedly different than Plaintiffs'. This would have required Plaintiffs to

identify and disclose their trade secrets—at least to an independent expert. Plaintiffs'
response was to broadly disseminate in the global market Plaintiffs' assertion that
Litrinium had stolen Plaintiffs' trade secrets related to their TIAs and to refer customers
to their publicly filed Complaint. The Complaint contained only generic statements that
the trade secrets at issue consisted of "design concepts and data" related to TIAs. (Katz
Decl., Ex. 3 at ¶ 16.) Plaintiffs' purpose was to disrupt Litrinium from selling its TIA
products, after Litrinium had competed and prevailed in multiple head-to-head
competitions against them, as demonstrated by their thinly-veiled threat against anyone
buying a Litrinium product. What Plaintiffs did not do was identify what trade secrets, if
any, they could plausibly assert had been misappropriated.

Plaintiffs' FAC did not cure the defects of Plaintiffs' initial Complaint. Plaintiffs'
FAC still identifies the trade secrets in terms that are entirely generic and say nothing to
distinguish the alleged trade secrets from what is in the public domain. (*See id.*, Ex. 4 at ¶
14.) The amount of information and detail in the public domain requires Plaintiffs to
identify the trade secrets at issue with much greater particularity than they have done to
date. (Separately, Litrinium has also moved to dismiss Plaintiffs' claims of the FAC for
failure to set forth plausible trade secrets and plausible claims of misappropriation.)

Plaintiffs yet again refused to disclose their trade secrets during the parties'
preparations for the Court's Rule 16 case management conference and during the parties'
Rule 26(f) conference on April 15, 2019 and April 25, 2019. Plaintiffs further took the
position that they would not be providing a statement of their trade secrets as part of the
Rule 26 initial disclosures. As a result, the parties' Rule 26(f) conference regarding scope
of discovery, relevant documents, etc. was cursory because Plaintiffs will not identify
their trade secrets. As it stands, Plaintiffs' purported identification of the scope of trade
secrets at issue in paragraph 14 of the FAC covers all aspects of both parties' and others'
TIA business, from design, to manufacture, to pre-sale customer modifications.

On March 20, 2019, Litrinium filed a motion raising the issue of Plaintiffs' non-
disclosure of trade secrets for consideration in connection with the Rule 16 conference.

(Katz Decl., Ex. 6.) The Court denied that motion without prejudice to refile as a discovery motion in the form of a joint stipulation. (*Id.*, Ex. 7.)

Litrinium requests that, as part of the discovery rules to be applied in this trade-secret case, the Court issue a protective order requiring Plaintiffs to identify their trade secrets with particularity prior to commencing discovery. In order to fulfill the Court's request that this matter of a proper trade secret identification be addressed expeditiously, Litrinium requests that the Court enter a specific expedited procedure to allow for any further challenge to the adequacy of Plaintiffs' trade secret statement:

(1) Litrinium is to serve detailed objections to any statement within three business days of receipt of Plaintiffs' statement;

(2) within three days from receiving the objections, Plaintiffs must meet and confer and definitively state their position, including proposing modifications;

(3) Litrinium is to agree to the proposed modifications, if satisfactory, within two business days; and

(4) Litrinium's obligations with respect to any discovery by Plaintiffs, including Plaintiffs' First Set of Requests for Production to Defendant Litrinium, Inc. and Plaintiffs' First Set of Interrogatories to Defendant Litrinium, Inc., are stayed until 14 days after the later of (a) the date on which Litrinium has advised Plaintiffs that it does not challenge (or challenge further) the sufficiency of their asserted trade secrets disclosure or (b) the date on which the Court (including review by the district judge if sought) has determined that Plaintiffs' disclosure is sufficient or (c) time period set for response by rule.

Finally, Litrinium requests that its obligations in responding to the pending discovery served by Plaintiffs be stayed unless and until Plaintiffs' submit a trade secret statement describing with reasonable particularity the trade secrets they have a good faith basis for alleging Litrinium has misappropriated. (*See* Katz Decl., Exs. 27-28.)

### B.   Plaintiffs' Introductory Statement

In its April 10, 2019 order denying Litrinium's attempt to circumvent the local rules and Federal Rule 26, the Court made clear that, like in most discovery disputes, the resolution of this protective order request will depend on the "facts and circumstances at issue." Yet Plaintiffs submit that nothing in the record before the Court supports the protective order Litrinium seeks here:  A complete stay of discovery for itself with no showing of good cause and no showing that the limited discovery requests propounded by Plaintiffs to date are implicated by the arguments Litrinium advances in this Joint Stipulation.

Litrinium barely mentions the discovery from which it seeks a protective order.  This avoidance is likely because these requests (see Section III of this Joint Stipulation) do not implicate the concerns raised by Litrinium, such as allowing Plaintiffs to tailor their case after seeing Litrinium's documents.  For example, Request For Production (RFP) No. 1 asks for communications between any former employee of Plaintiffs and any of Litrinium's employees.  RFP No. 3 asks for documents "that reference the date, time, and/or place of any meeting between any former employee of PLAINTIFFS and any of YOUR employees."  And Interrogatory 2 asks for the identification of "when YOU first had any discussions with Jerome Garez regarding an employment relationship with YOU."  These requests seek information to support Plaintiffs' allegations, plead on information and belief because they relate to facts fully in Defendants' possession, and their production will either support or undercut Litrinium's counterargument that Mr. Garez was not working with Litrinium prior to departure from Plaintiffs.

As this Court's April 10, 2019 Order made clear, and as Litrinium concedes, whether California Code of Civil Procedure ("CCP") § 2019.210 even applies in federal court is an open question.  *See* Litrinium Contentions § II(A)(1).  And while the Ninth Circuit has not addressed differing district court approaches to the issue, Litrinium cites no case from this District where the Court granted the relief that Litrinium seeks.  Instead, both cases from this District rejected Litrinium's arguments:  one applied the *Erie* doctrine and

found that CCP § 2019.210's automatic stay provision interfered with the application of Rule 26 and thus was not applicable in federal courts; the second rejected a request to stay discovery because no good cause was shown. *See SMC Networks, Inc. v. Hitron Techs., Inc.*, No. SACV121293JSTRNBX, 2013 WL 12136372, at *3 (C.D. Cal. Mar. 15, 2013); *Activerain Corp. v. Move, Inc*., No. CV 07-5037-DDP(CTX), 2008 WL 11343023, at *4 (C.D. Cal. Apr. 29, 2008).

Moreover, even in cases cited by Litrinium where CCP § 2019.210 is considered in a Rule 26 analysis, the courts frequently do not impose a blanket ban against all discovery. For example, Litrinium extensively discusses *Vesta Corp. v. Amdocs Mgmt. Ltd*. *See* Litrinium's Contentions at II(A)(2). In that case, however, the court only limited discovery "relating to the 'Confidential Solutions Methods.'" 147 F. Supp. 3d 1147, 1158 (D. Or. 2015). This is consistent with the policy rationales identified by Litrinium, which focus on the protection of a defendant's own trade secrets. *See* Litrinium's Contentions at II(A)(2) (discussing *Vesta*). Yet Litrinium never makes any showing (let alone a showing of good cause) that Plaintiffs' discovery requests implicate Litrinium's own trade secrets.

Litrinium's joint statement is replete with claims that Plaintiffs will never provide an identification of their trade secrets beyond what is set forth in the FAC.[1] This is not true. Litrinium has a pending interrogatory asking Plaintiffs to "[d]escribe with particularity [their] trade secrets allegedly misappropriated by Litrinium." *See* Lipanovich Decl. Ex. 2, 4. Unlike the FAC, which is public, Plaintiffs will further address their trade secret designation under an appropriate confidentiality designation such that more non-public

---

[1] Plaintiffs do not believe it is productive to argue about who said what during meet and confer phone calls and the characterization of the parties' positions in those phone calls, especially on issues not before the Court. Putting aside the relevance of CCP § 2019.210, Plaintiffs' position has always been that this is a discovery issue and Litrinium did not have sufficient good cause to seek a protective order.

detail about the trade secrets at issue can be given.[2]  If Litrinium believes any answers provided by Plaintiffs are insufficient, it can move for further responses consistent with Local Rule 37.  Such a procedure is proper under Rule 26, as contrasted with Litrinium's request that this Court replace the federal and local rules with a four-step process and a one-way discovery stay.  *See* Litrinium's Introductory Statement.

Even ignoring Litrinium's pending interrogatory, Plaintiffs submit that the trade secret disclosures in the FAC are sufficient to bar the broad relief sought by Litrinium. Paragraph 14 of the FAC sets out eight trade secrets in detail and they all concern a specific type of product.  Based on this trade secret description, Litrinium's served its own detailed discovery, including forty requests for production to each plaintiff, as well as two interrogatories.  *See* Lipanovich Decl. Exs. 1-4.  Litrinium also argues here and in its motion to dismiss before Judge Selna (set to be heard on June 3rd) that Plaintiffs' trade secrets are, in fact, not secret.  Hence, there can be no question that Litrinium understands the scope of the trade secret accusations in this case for the purposes of discovery.

Having failed to establish the necessary good cause under Rule 26, and having failed to provide an explanation as to why the limited discovery requests pending to it cannot be answered, Litrinium's motion should be denied.

## II.  DISPUTE REGARDING PLAINTIFFS' PRE-DISCOVERY DISCLOSURE OF TRADE SECRETS

### A.  Litrinium's Contentions

This case presents a prime example about why Plaintiffs should be required to provide a compliant trade secret statement prior to commencing discovery, because Plaintiffs' suit implicates all of the policy reasons why this rule makes sense. Judge Selna agreed, having been presented with a Rule 26(f) joint statement that included Litrinium's account of the issues raised by the case. At the Rule 16 case management conference,

---

[2] Plaintiffs have proposed that the parties use the Court's model protective order for trade secret cases.  Litrinium has resisted.  If the issue cannot be resolved through further meet and confer Plaintiffs will raise it with the Court.

Judge Selna made clear the Court's intent that "a detailed statement of the trade secret be made as a condition to going forward with discovery," consistent with both California and federal law supporting a requirement for Plaintiffs to disclose their trade secrets with reasonable particularity before advancing the case through the discovery process:

THE COURT:      Good afternoon. What are we going to do about getting a more definitive statement of what the trade secret is?

MR. HOLLAND:    Well, Your Honor, we think we sufficiently addressed it in the First Amended Complaint that this would be a discovery issue. They have served discovery that asks for reasonable particularity of the trade secrets, and we will respond to that.

THE COURT:      That's not what the California statute anticipates. It anticipates that a detailed statement of the trade secret be made as a condition to going forward with discovery.

MR. HOLLAND:    Your Honor, respectfully I think that's not well settled, and I think there is case law on both sides of that.

THE COURT:      Not in the statute.

MR. HOLLAND:    Under 20-1910? Is that what you are referring to?..

THE COURT:      Yes

MR. HOLLAND:    Well, to the extent that we have to meet that requirement, we'll meet that requirement, but we think we have in our First Amended Complaint.

THE COURT:      If you are not satisfied, take it to the magistrate on an expedited basis. Indicate to the magistrate judge that the Court suggests that the issue be taken up on an expedited basis.

(*See* Katz Decl., Ex. 1 at p. 3, lns. 13–24.)

**1.   California Code of Civil Procedure § 2019.210 requires Plaintiffs to identify their trade secrets with reasonable particularity before obtaining discovery.**

Plaintiffs sued under the CUTSA, and California Code of Civil Procedure § 2019.210 requires a party alleging trade secret misappropriation to "identify the trade secret with reasonable particularity" before commencing discovery relating to the trade secret. The purpose of § 2019.210 is to (1) "promote well-investigated claims and dissuade[] the filing of meritless trade secret complaints"; (2) "prevent[] plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets"; (3) "assist the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"; and (4) "enable[] defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 833–34 (2005) (quoting *Computer Economics, Inc. v. Gartner Group Inc.*, 50 F.Supp.2d 980, 985 (S.D. Cal. 1999)). Each of these policy reasons behind the rule is present here.

Whether § 2019.210 is a state statute that applies under the *Erie* Doctrine is an open question in the Ninth Circuit; decisions in the District Courts of California go either way

or avoid the issue.[3] But the purposes and policy of § 2019.210 are generally applicable. Federal courts apply the early-disclosure principles behind § 2019.210 because these same principles govern the federal discovery rules. *Activerain Corp. v. Move, Inc.*, 2008 WL 11343023, *2 (C.D. Cal. Apr. 29, 2008) ("the general policies behind the specific disclosure requirement of § 2019.210 are consistent with the liberal policies behind the federal discovery rules," citing *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947)); *see also Advante International Corp. v. Mintel Learning Technology*, 2006 WL 3371576 at *3 n. 4 (N.D. Cal. Nov. 21, 2006) (not reaching a conclusion as to whether § 2019.210 is mandatory in federal court proceedings, but finding that "the statute provides an appropriate guide in the absence of specific provisions in the federal rules governing trade secret discovery").

Regardless of whether § 2019.210 is binding on this Court, Judge Selna indicated the Court's intent to follow disclosure requirements consistent with § 2019.210 as a condition precedent to Plaintiffs going forward with discovery. (Katz Decl., Ex 1 at p. 3, ln. 13 to p. 4, ln. 13.)

---

[3] *See*, *e.g.*, *Social Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, *2 (N.D. Cal. June 14, 2012) (holding § 2019.210 applicable in federal cases); *Excelligence Learning Corp. v. Oriental Trading Co., Inc.*, 2004 WL 2452834, n. 3 (N.D. Cal. June 14, 2004) (finding § 2019.210 not binding, but applying it because there was no parallel trade secret discovery provision in Federal Rules of Civil Procedure). *Advante International Corp. v. Mintel Learning Technology*, 2006 WL 3371576, n. 4 (N.D. Cal. Nov. 21, 2006) (declining to decide applicability of § 2019.210 in federal cases but using it as guide); *SMC Networks, Inc. v. Hitron Tech., Inc.*, 2013 WL 12136372, *3 (C.D. Cal. Mar. 15, 2013) (finding § 2019.210 not binding on federal courts but noting strong policy reasons for federal protective orders that implement its purpose); *Gabriel Technologies Corp. v. Qualcomm Inc.*, 2012 WL 849167, *4 (S.D. Cal. March 13, 2012) (applying *Erie* to find that § 2019.210 should be applied because it does not conflict with any federal rule and avoids undesirable forum shopping); *Hilderman v. Enea TekSci, Inc.*, 2010 WL 143440, *2 (S.D. Cal. Jan. 8, 2010) (holding that § 2019.210 conflicts with Rule 26).

### 2. Federal case law supports a requirement for Plaintiffs to identify their trade secrets with reasonable particularity proceeding with discovery.

Federal Rule of Civil 26(c) permits the Court to issue a protective order to, among other things, "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding, specifying terms for, or limiting the scope of discovery. Courts have "wide discretion in controlling discovery." *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Accordingly, and consistent with California Code of Civil Procedure § 2019.210, federal courts recognize a requirement for plaintiffs bringing claims of trade-secret misappropriation to identify those trade secrets with reasonable particularity before obtaining discovery. *Vesta Corp. v. Amdocs Mgt. Ltd.*, 147 F. Supp. 3d 1147, 1153 (D. Or. 2015) (noting that "the Court recognizes the 'growing consensus' of courts from around the country who have applied the "reasonable particularity" standard to determine whether a party alleging a claim for misappropriation of trade secrets has sufficiently identified its trade secrets before it may compel discovery of its adversary's trade secrets."); *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Ordering the listing of trade secrets at the outset of the litigation is a common requirement."). Even those court opinions that have held that California Code of Civil Procedure § 2019.210 does not *bind* federal courts recognize that there are still independent and "strong policy reasons for requiring plaintiffs to identify with particularity allegedly misappropriated trade secrets before seeking discovery." *SMC Networks, Inc. v. Hitron Tech., Inc.*, 2013 WL 12136372, *3 n. 1 (C.D. Cal. Mar. 15, 2013).

Courts have independent authority to require the identification of trade secrets before discovery and "'the 'reasonable particularity' standard reflects the Court's authority, pursuant to the Federal Rule of Civil Procedure 26 requirements of early disclosure of evidence, and the Court's authority to control the timing and sequencing of discovery in the interests of justice." *Vesta Corp*, 147 F. Supp. 3d at 1153. The court in *Vesta*,

identified four "strong practical and policy reasons" for requiring plaintiffs "to make pre-discovery disclosures of its alleged misappropriated trade secrets." *Vesta Corp.*, 147 F. Supp. 3d at 1153. First, this requirement would "assist[] this Court in "in determining relevancy and the scope of discovery." *Id.* (internal citations omitted.) Second, it would "prevent[] a 'fishing' expedition into Defendants' trade secrets." *Id.* (internal citations omitted.) Third, it "denies Plaintiff the opportunity to craft a trade secret claim to fit the evidence from the Defendants." *Id.* (internal citations omitted.) Finally, "the requirement prevents 'needless exposure of the defendant's trade secrets . . . and allows well-investigated claims to proceed while discouraging meritless trade secret claims." *Id.* (internal citations omitted); *see also Applied Materials, Inc. v. Adv. Micro-Fabrication Equip. (Shanghai) Co.*, 2008 WL 183520, *1 (N.D. Cal. Jan. 18, 2008) (reciting the same policy reasons).

Requiring Plaintiffs to identify their trade secrets with reasonable particularity would assist the Court in determining relevancy and the scope of discovery. *Porous Media*, 187 F.R.D. at 600 ("Adequate discovery cannot be conducted in the absence of the specific disclosure . . . ."). This consideration is even more important since the 2015 amendments to the Federal Rules of Civil Procedure directed toward "proportional" discovery considerations. *See* Fed. R. Civ. P. 26(b)(1). There is no way to determine what is "proportional to the needs of the case" without knowing what trade secrets this case is about. And an undefined and disproportional scope to discovery improperly promotes a "fishing expedition," to craft claims to discovery. This puts the cart before the horse because it is discovery that should be tailored to the parties' claims and defenses. The best way to set appropriate limits and give a reasonable scope to discovery in this case is for Plaintiffs to identify their alleged trade secrets with reasonable particularity from the outset—which they have yet to do.

The final policy reason for early disclosure of Plaintiffs' trade secrets—to allow well-investigated claims to proceed while discouraging meritless trade secret claims—is particularly relevant here. The rule is designed to flesh out, early, good faith assertions of

trade secret theft from those initiated for anti-competitive purposes. *Vesta Corp.*, 147 F. Supp. 3d at 1153. Litrinium is an Orange County start-up company. Its products at the time the Complaint was filed were developed by Litrinium employees unassociated with Plaintiffs' allegations against Garez. Although Defendant Garez left Plaintiff Mindspeed SAS's employment in March 2018, this was still about fifteen months after the design of Litrinium's current TIA product was completed and ready for manufacture. Litrinium's TIA designs are different than Plaintiffs' TIA designs. Plaintiffs have no basis for suing for misappropriation. They assume Litrinium stole trade secrets simply because Litrinium hired Garez. Litrinium has no reason to believe that Plaintiffs undertook an inspection and analysis of a single Litrinium TIA product because, in the parties' Rule 26(f) conference, Plaintiffs were unable to say which TIA product allegedly embodied Plaintiffs' trade secrets. Because Plaintiffs' trade secret allegations are predicated on Litrinium's hire of Garez, Plaintiffs name every conceivable aspect of TIA design, manufacture, testing, and pre-sale modification as "trade secrets"—a classic fishing expedition. Plaintiffs allege no act of misappropriation by Litrinium, other than to allege on information and belief that Litrinium orchestrated Garez's alleged theft.

Tellingly, Plaintiffs waited one full year before suing Litrinium based on vague allegations that Garez developed TIA designs while working for Mindspeed SAS in France, which designs Plaintiffs claim are actually unrelated to their technology. (Katz. Decl., Ex. 4 at ¶ 18.) On this basis alone, Plaintiffs assume (incorrectly) that Garez must have been working for Litrinium and that he gave the designs to Litrinium. Tellingly, Plaintiffs do not identify these designs as their trade secrets in the First Amended Complaint. Plaintiffs' FAC does include allegation that Plaintiffs conducted a forensic review of Garez' computers when he resigned and discovered this "unrelated" work product. (Katz Decl., Ex. 4 at ¶ 18.) But Plaintiffs did not put Litrinium or Garez on notice of these facts when discovered, even though they now rely on them asserting a trade secret lawsuit. Plaintiffs' failure to take the obvious remedial step of putting Litrinium on notice immediately of suspicions regarding Garez is itself is inconsistent

with the position of a company that seeks to protect its valuable, trade secret information. Instead, Plaintiffs waited one full year to file suit, timed to coincide with Litrinium's announcement of an early round of financing—and for the purpose of disrupting Litrinium's effort to raise capital. (Katz Decl., Ex. 9 at p. 3.)

Upon being served with the Complaint, Litrinium through its counsel offered to submit Litrinium's TIA product to a neutral expert to confirm that Litrinium was not using any of Plaintiffs' trade secrets. (Katz Decl., Ex. 9.) Plaintiffs refused, a decision that again makes no sense if Plaintiffs' purpose was to protect their trade secret information. Plaintiffs refused because they have no idea whether, let alone what, trade secrets have been misappropriated. Plaintiffs' lawsuit is a shoot-first-ask-questions-later approach, where Plaintiffs seek discovery about what Litrinium is doing, and after the fact, are likely to claim that as Plaintiffs' trade secret. Additionally, in the last year, Litrinium, a new market entrant, has won head to head competitions out-performing Plaintiffs and other competitors. Plaintiffs' insistence on proceeding with discovery without making a compliant trade secret statement tends to suggest that Plaintiffs are trying to use this lawsuit to discover what Litrinium is doing so they can copy Litrinium and take Litrinium's trade secrets, claiming them as their own.

Instead of agreeing to submit the matter to a neutral expert, Plaintiffs disseminated to customers and potential customers globally a letter authored by MACOM's Assistant General Counsel, stating that Litrinium had stolen its "trade secrets," without elaboration, naming several of Litrinium's employees, and warning these companies not to do business with Litrinium: "That said, MACOM is committed to protecting its intellectual property rights, including those rights as against parties who knowingly use and incorporate MACOM's proprietary and confidential information in their products, or aid and abet others who do so." (Katz. Decl., Ex. 8.)

Plaintiffs' refusal to identify their trade secrets with particularity, now four months into this lawsuit, is consistent with the objective of a plaintiff seeking to use the existence of a pending suit to improperly bolster these false accusations in the market worldwide to

stifle competition. Holding out on identifying the trade secret serves the purpose of extending the duration of the litigation, driving up the costs and diverting the resources that Litrinium might otherwise expend competing in the market. In short, this case presents all the telltale signs of a lawsuit filed to stifle competition.

As of the date of this Joint Stipulation, due to deficient pleading and Plaintiffs' stated intent to avoid disclosure of their trade secrets as long as possible, Plaintiffs' claims appear to be neither well-investigated nor based in fact. (*See* Katz Decl., Ex. 9.) If Plaintiffs cannot identify their trade secrets that were allegedly misappropriated, then their case is revealed to be meritless from the start. This is an early test to separate the wheat—a case that has merit—from the chaff—this case, filed without any basis and for anti-competitive purposes. Early required disclosure will expose Plaintiffs' claims for what they are—meritless and asserted for anti-competitive purposes to crush an innovative startup, as opposed to a legitimate plea for relief from the Court.

### 3. Plaintiffs have failed to set forth their alleged trade secrets with sufficient particularity in their First Amended Complaint.

At the Rule 16 case management conference, Plaintiffs stated that even if a trade-secret-disclosure requirement applied to them, Plaintiffs' met that requirement through their publicly filed First Amended Complaint. (Katz Decl., Ex. 1 at p. 4, lns. 7–9.) However, "the fact that Plaintiff publicly filed its trade secret disclosure belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016).

Reasonably particular disclosure of trade secrets requires a plaintiff "'to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *See id.* at 1111 (quoting *Adv. Modular Sputtering, Inc. v. Superior Court*, 132 Cal.App.4th 826, 835 (2005)). Reasonable particularity "does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret . . . ." *Id.*

at 835–836. "Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational[, citation], under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Id.* For example, the trade-secret disclosure needs to be sufficiently detailed for the parties to take discovery and determine whether Plaintiffs' alleged secrets are public or generally known.

Litrinium also moved to dismiss Plaintiffs' FAC due to insufficiently pleaded facts to support plausible trade secrets and plausible misappropriation claims. (Katz. Decl., Ex. 5.) Specifically, Plaintiffs' purported identification of trade secrets in the FAC uses generic open-ended descriptions encompassing all aspects of TIA design, and which expressly included non-secret and public information. Further, Plaintiffs' purported identification included aspects of TIA technology directly disclosed in Plaintiffs' and third parties in U.S. Patents, which are also not secret and constitute public knowledge.

> **a)    Plaintiffs' purported identification of trade secrets is not reasonably particular because it states only generic, open-ended categories of information.**

Paragraph 14(1)–(8) of Plaintiffs' FAC purports to describe Plaintiffs' trade secrets in eight categories:

"14. At this stage of the litigation, MACOM submits the following further description of trade secrets at issue in this matter:

(1) method for developing a transimpedance amplifier (TIA) according to customer requirements and specifications for passive optical networks (PON), including performance parameters and shortcomings based on trial and error from internal development efforts;

(2) internal circuit design operational methodologies, including pricing on parts, production costs, test time and methodology and yields and yield improvement methods;

(3) mechanical development methodologies including: (a) Maximum die size allowable in different types of ROSAs and optimal die aspect ratio, and (b) knowledge of customer preferred PAD locations and ROSA signal integrity challenges (high-speed behavior of ROSA pin/substrate);

(4) internally developed information about the ST Microelectronics (STM) B55 process, including performance compared to TowerJazz (TJ) SG18HX processes for high speed bipolar and CMOS transistors as well as cost, cycle time and availability, including allocation issues of STM track records of silicon delivery and benchmarks on process maturity;

(5) design of the TIA, subject to the constraints of an integrated circuit (IC) process and photodetector (PD) packaging including performance targets for current products and potential limitations of MACOM products, as well as IC area reductions;

(6) design for automatic gain control in the TIA to prevent overload;

(7) design for DC offset compensation at the input of the TIA for PON; and

(8) compilation of all trade secrets set forth above including those combined with public technology and confidential and non-confidential business information to produce MACOM products."[4]

---

[4] Elsewhere in the FAC, Plaintiffs continue to state that "Plaintiffs' trade secrets include valuable designs, data and sales information related to the development of TIAs and all iterations and advancements related to Plaintiffs' TIA technology, including all design choices made in connection with such products." (FAC at ¶ 28). Courts have held that these types of categories "obviously … lack any reasonable particularity." *See Perlan*, 178 Cal. App. 4th at 1345 n. 10 (noting that "all related research," "development," "advancements," "improvements," and "processes related thereto" obviously lack any reasonably particularity).

An inventory of categories of scientific or business information "falls far short of the 'reasonable particularity' standard. *Loop AI Labs*, 195 F. Supp. at 1112. Six of those eight categories are also open-ended, using the word "including" as a means of avoiding identification of the metes and bounds of what is claimed as a trade secret. Yet broad "catch-all" language, such as "including," is also insufficient identification. *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal.App.4th 1333, 1340, 1350 (2009). Plaintiffs' use of the open-ended term "including" also ensnares publicly available information and makes the purported definitions so expansive as to render them practically meaningless, and Plaintiffs' formulation fails to set forth a plausible trade secret claim. *See Emazing Lights LLC v. De Oca*, 2016 WL 3658945, *2 (C.D. Cal. Jan. 7, 2016) (finding insufficient a trade secret definition that " 'include[s], but [is] not limited to,' the enumerated items [because any] piece of information could potentially be labeled a trade secret under this definition.").

### b) Plaintiffs' purported identification of trade secrets expressly identifies information that, on its face, is public in nature.

The inclusion in paragraph 14(8) of public technology and non-confidential business information highlights a second, related defect in the FAC. Not only is the identification open-ended, but it claims as Plaintiffs' trade secrets information that, on its face, is public in nature. This same defect is apparent in the first four categories of information identified in FAC paragraph 14 as Plaintiffs' trade secrets.

Paragraph 14(1) of the FAC purports to identify, as a misappropriated trade secret, a "method for developing a transimpedance amplifier (TIA) according to customer requirements and specifications for passive optical networks (PON), including performance parameters and shortcomings based on trial and error from internal development efforts." This fails to identify the metes and bounds of any conceivable trade secret. Simply replace "transimpedance amplifier" in this description with any other product, and this conclusion is obvious: whether it be a "method" for developing a boat, car, or a cell phone, one would be hard pressed to assert that "developing [a product]

according to customer requirements and specifications" is a trade secret. Additionally, the FAC fails to disclose what the methods, customer requirements, specifications, or performance parameters actually are. Plaintiffs need to identify the supposedly secret customer requirements, specifications, and performance parameters so that Litrinium can defend itself and show that the information is publicly available or that Litrinium does not use such information.

Paragraph 14(2) of the FAC is another generic statement of a "design methodology" that is nothing more than a statement that, in designing a TIA, one considers the price of parts, production costs, testing and yields. Again, the FAC fails to disclose what the design methodology is or identify the particular pricing on parts, production costs, test time, methodology, yields, or yield improvement methods are or what they have to do with the unidentified design methodologies.

Paragraph 14(3) of the FAC again identifies a broad category of information, "mechanical development methodologies," which is a fancy way to say the physical dimensions and placement of a product. But the appearance and size of a product are not trade secrets. Plaintiffs' example of "[m]aximum die size allowable in different types of ROSAs and optimal die aspect ratio" is easily shown to be publicly available to any entity manufacturing TIAs.[5] For example, the figures below from Plaintiffs' own TIA datasheet show the die size allowable for connectors on an optical sub-assembly as well as the exact die size and placement of the TIA. (Katz Decl., Ex. 11 at pp. 2 and 15.) Here, Plaintiffs' own public datasheet is more particular than Plaintiffs' vague language in the FAC because the datasheet at least states the die sizes and illustrates the die placement.

---

[5] ROSA is an acronym for receiver optical sub-assembly. These devices, when purchased, can easily be opened up, and the die size and die aspect ratios easily observed.



**MACOM Published Diagram of Optical Receiver Assembly**



**MACOM Published Pad Configuration**

The second example of paragraph 14(3) is "knowledge of customer preferred PAD locations and ROSA signal integrity challenges (high speed behavior of ROSA pin/substrate)." But the FAC fails to identify what knowledge is secret regarding third-party "customer preferred PAD locations" or how third-party "customer preferred PAD locations" can possibly be a trade secret. Again, Plaintiffs do not actually disclose the methodologies, the maximum die sizes for different types of ROSAs, the optimal die aspect ratio, or any of the information purportedly described by paragraph 14(3). For example, Plaintiffs must disclose the die sizes that they claim are secret so that discovery can be focused on relevant material showing the alleged secrecy or generally knowledge regarding such die sizes.

Paragraph 14(4) of the FAC is yet another broad description of general-industry information. STMicroelectronics (STM) and TowerJazz (TJ) are third-party chip manufacturers. Both STM and TowerJazz provide customers with all of the information identified by Plaintiffs as "internally developed information." Plaintiffs again fail to describe with particularity the supposed "internally developed information or what other information provided by these third-party manufacturers to the industry, such as cost, cycle time, and availability, is supposedly secret to Plaintiffs.

With respect to paragraph 14(5), once again, Plaintiffs fail to describe what "design of the TIA," "performance targets," "potential limitations," and other information is

supposedly at issue. The performance targets and limitations of Plaintiffs' current products are actually listed on Plaintiffs' own website, a screen shot of which appears below. (Katz Decl., Ex. 12 at p. 13.) Again, Plaintiffs' website is more particular than the vague language of the FAC because Plaintiffs' website publicly discloses actual performance targets and limitations.

| **Transimpedance Amplifiers (TIA)** (continued) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Part Number | Description | **Block Diagram Key*** | Max Data Rate (Gbps) | Differential Transimpedance Gain (kOhms) | Small Signal Bandwidth (GHz) | Input Overload Current (mA) | Input Referred Noise (IRN, RMS nA) (nA) |
| | | | * * * | | | | |
| MATA-03003 | 28 Gbps Quad Channel Transimpedance Amplifier | **C, D, G, I** | 28 | 3.8 | 21 | 4 | 1400 |

All of the above "descriptions," while offering a veneer of technical jargon, could encompass *anything* related to Plaintiffs'—or anyone else's—TIA products and business. The definitions are extremely broad and, as such, do not give any reasonably particular description of Plaintiffs' alleged trade secret.

> **c)    Plaintiffs' purported identification of trade secrets does not distinguish them from what is generally known as reflected by patents.**

Plaintiffs' and others in the TIA-technology space own patents that show many aspects of TIA design, components, and know-how. (*See* Katz Decl., Exs. 13–26.) Plaintiffs' purported description of trade secrets in the FAC fails to provide any meaningful distinction between what Plaintiffs claim as trade secret from what is disclosed in the public domain.

For example, Patent Publication No. US 2017/0026011 is one of Plaintiffs' own published patent applications regarding a "Transimpedance Amplifier." This publication shows Plaintiffs' TIA designs and electronic environments for using the TIAs. (*See* Katz Decl., Exs. 25–26.) Similarly, Plaintiffs' U.S. Patent No. 8,509,629 is also directed to "a transimpedance amplifier for high rate applications," and its figures also show a circuit

diagram for the disclosed TIA. (Katz Decl., Exs. 19–20.) Additionally, patent filings by others with respect to TIAs show that TIA designs and processes are not uniquely Plaintiffs'. (*See* Katz Decl., Exs. 13–18, 21–23.) Plaintiffs' nebulous description of their trade secrets overlaps with Plaintiffs' own patent filings as well as what is disclosed in patent filings by numerous others in the TIA industry. *See Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465 (9th Cir. 1990) ("matter[s] of common public knowledge" cannot be a trade secret); Cal. Civ. Code § 3426.1 Legis. Comm. Cmts. ("Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market.").

As shown by patent filings regarding TIAs, TIA technology is a "highly specialized technical field, [and] a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Adv. Modular Sputtering*, 132 Cal.App.4th at 836. But Plaintiffs' purported description of their trade secrets in the FAC provide no particularity such that those generic categories are easily shown to be the topic of multiple patents. Plaintiffs cannot in good faith state that all TIA designs are their secrets because U.S. patents show multiple designs for TIAs other than Plaintiffs'. Plaintiffs must reasonably describe what aspects of their TIA designs they claim as secret in order to allow the parties to focus discovery on showing that those aspects are not in fact secret or are not incorporated into Litrinium's products.

Paragraph 14(6) of the FAC claims as a trade secret a "design for automatic gain control in the TIA to prevent overload." This is nothing more than the statement of a generic, public-domain design involving a generic function which can be found in multiple U.S. patents. *See* U.S. Patent No. 9,030,263, entitled "Transimpedance Amplifier (TIA) Circuit and Method," (Katz Decl., Ex. 21 at Abstract ("A TIA circuit and method are provided that merge the automatic gain control function with the bandwidth adjustment function to allow the TIA circuit to operate over a wide dynamic range at multiple data rates.")); *see also* U.S. Patent No. 6,084,478, entitled "Transimpedance

Amplifier with Automatic Gain Control," Katz Decl., Ex. 17; U.S. Patent No. 5,646,573, entitled "Automatic Gain Control Transimpedance Amplifier," Katz Decl., Ex. 16.) These patents at least describe and show automatic gain control with some particularity—in contrast to the overly broad and vague statement in Plaintiffs' FAC.

Paragraph 14(7) of the FAC is also a generic statement of a well-known TIA design for "DC offset compensation at the input of the TIA," which again is easily identified as public knowledge, including in U.S. Patent No. 9,577,753, entitled "Transimpedance Amplifier." In that patent, "FIG. 1A is a block diagram illustrating a PON System."[6] (Katz.



Decl., Ex. 23 at Fig. 1A, col. 2, ln. 3.) And Figure 3 shows a DC offset compensation at the input of a disclosed embodiment of a TIA. Again, the patent describes and shows the particular DC offset that is the subject of the patent—in contrast to the FAC which does nothing to describe the "DC offset compensation at the input of the TIA" with any particularity.

These public examples of TIA designs for automatic gain control and DC offset, show that Plaintiffs' description is overly broad, not reasonably particular, and lacks description sufficient to reasonably distinguish Plaintiffs' asserted trade secrets from public material to permit the parties to focus discovery on Plaintiffs' actual claims.

---

[6] PON is an acronym for Passive Optical Network. (Katz Decl., Ex. 23 at col. 2, ln. 28.)

**4.    Plaintiffs' weaponization of this lawsuit, inadequate pleading, refusal to submit the matter to a neutral expert, and refusal to identify their trade secrets reinforce the need for an order barring Plaintiffs' discovery absent disclosure of their trade secrets with particularity.**

Plaintiffs filed their Complaint on February 4, 2019. Litrinium responded on February 20, 2019 by letter stating the deficiencies of Plaintiffs' Complaint, including its failure to identify the trade secrets at issue. While Plaintiffs nominally agreed to amend their Complaint, Plaintiffs would not identify the trade secrets that are the alleged basis for their claims during the meet-and-confer. Instead of curing the vagaries and deficiencies of the Complaint, however, Plaintiffs disseminated a letter to companies worldwide, accusing Litrinium of trade-secret theft and identifying the Complaint Plaintiffs filed in federal court as substantiating their unfounded accusations. (*See* Katz. Decl., Ex. 8.)

On March 12, 2019, Litrinium sent a detailed letter to Plaintiffs disclosing facts that show Plaintiffs' theft allegations were wrong. (*Id*., Ex. 9.) Mindspeed S.A.S. simply assumed that its former French employee, Jerome Garez, used its purported trade secrets to help Litrinium design a competing TIA when Garez left Mindspeed in early 2018. That assumption, predicated on the 'inevitable disclosure" doctrine, which is discredited in California, was further debunked by Litrinium's March 12, 2019 letter. Litrinium explained that it had already completed the design of its own TIA more than 15 months before Mr. Garez started to work for Litrinium, and thus that its products were designed without any involvement by or input from Mr. Garez. (*Id.*)

In its March 12, 2019 letter, Litrinium offered to have both parties' TIA designs submitted for a complete review by a neutral expert, in ten days' time, to resolve the issue. (*Id.*) Plaintiffs failed to respond. Then, in a letter dated March 20, 2019, Litrinium repeated its offer. (*Id.* at ¶ 5.) But Plaintiffs finally declined Litrinium's invitation.

During this time, instead of pursuing an early resolution, Plaintiffs' Associate General Counsel, John Donnelly, authored and circulated a letter to customers and potential customers indiscriminately and worldwide, stating that Plaintiffs sued Litrinium for trade-secret theft. (*See* Katz. Decl., Ex. 8.) The letter defames Litrinium and its engineers, stating "MACOM believes that, at a minimum, Mr. Garez worked on Litrinium projects while still employed by MACOM and that Defendants misappropriated valuable design information to develop a competing line of products." (*Id.*) Mr. Donnelly concludes his letter by warning all companies not to do business with Litrinium as Plaintiffs would enforce their intellectual property rights. (*Id.* at Ex. 8; *id.* at ¶¶ 9–10.)

By refusing to submit to a neutral expert, and refusing to identify the trade secrets at issue, and at the same time engaging in an extensive smear campaign, Plaintiffs have revealed their purpose as preventing Litrinium, an Orange County-based start-up company, from succeeding in the global market. Tellingly, Plaintiffs waited a year after Mr. Garez left, and a year after Plaintiffs supposedly conducted a forensic investigation of Mr. Garez's computers, and just until Litrinium initiated an investment round, to initiate this lawsuit. By the time the merits are ever addressed, and Plaintiffs' baseless claims rejected, Litrinium will have lost countless contracts notwithstanding that it prevailed in head-to-head competition by offering a superior product.

If Plaintiffs conducted an adequate prefiling investigation, they should have been able to identify their alleged trade secrets with particularity before filing suit. At this point, if Plaintiffs do not know what their own trade secrets are, then they have no basis for suggesting that the defendants misappropriated them and no basis to proceed with discovery. *See Perlan*, 178 Cal.App.4th at 1350 (2009).

## B.  Plaintiffs' Contentions

The Federal Rules of Civil Procedure govern discovery in federal courts.  Rule 26 provides for broad discovery which can be limited under certain facts and circumstances by a showing of good cause.  *See* Fed. R. Civ. P. 26(c).  Here, Litrinium does not carry its

burden to establish good cause to completely stay discovery against it.  Instead of establishing why it needs protection from the limited discovery served on it, Litrinium advances generalized arguments about *potential* issues with trade secret discovery without tying those arguments to discovery served by Plaintiffs. But even these generalized arguments fail to support the relief it seeks thereby requiring denial of the motion.

### 1.   Litrinium has not shown good cause to stay discovery

The party seeking a protective order must establish that "specific prejudice or harm will result if no protective order is granted." *Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc*., No. CV175956JVSPLAX, 2018 WL 6264980, at *1 (C.D. Cal. Sept. 4, 2018).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Mahe v. Cont'l Tire The Americas, LLC*, No. EDCV101744DSFOPX, 2012 WL 12873611, at *2 (C.D. Cal. Jan. 30, 2012).  "A party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995).

Here, Litrinium has not made any showing that it would be harmed or prejudiced by having to respond to the discovery requests that are at issue.  Litrinium never states that responding would be an undue burden, or that responding would require Litrinium to disclose its trade secrets, or that Litrinium's alleged lack of information on the scope of the trade secrets prevents Litrinium from responding.

Litrinium asserts that Judge Selna has already decided this issue and that he "made clear the Court's intent" on CCP § 2019.210.  But the Court's order after the case management conference simply states that "Counsel may request Magistrate Judge Early to consider identifying the alleged trade secrets on an expedited basis." Dkt. 39.  This Order simply reconfirms what was stated in the April 10, 2019 order; that this is a discovery dispute and Litrinium should proceed under the local rules.

In Section II(A)(1) of this Joint Stipulation, Litrinium states that "[w]hether § 2019.210 is a state statute that applies under the *Erie* doctrine is an open question in the Ninth Circuit" and that "decisions in the District Courts of California go either way or avoid the issue." Litrinium Contentions at II(A)(1). But Litrinium omits that none of the facts or circumstances in the cases it cites warranted an order staying all discovery. Indeed, even where federal courts did not dismiss the applicability of CCP § 2019.210 or used it as a guide, there was no stay ordered.

Litrinium cites to seven federal court cases that it claims "go either way or avoid the issue" concerning its legal right to its requested relief. But Litrinium's description of each case omits the court's actual order, none of which provided the relief Litrinium seeks here.

- For *Activerain Corp. v. Move, Inc.*, Litrinium omits that the court denied the defendant's request for a stay of discovery. No. CV 07-5037-DDP(CTX), 2008 WL 11343023, at *4 (C.D. Cal. Apr. 29, 2008).

- In *Advante Int'l Corp. v. Mintel Learning Tech.*, Litrinium again fails to mention that the request for a protective order was denied. No. C 05-01022 JW (RS), 2006 WL 3371576, at *4 (N.D. Cal. Nov. 21, 2006).

- In *Soc. Apps, LLC v. Zynga, Inc.*, there is no indication that discovery was stayed as part of the court's decision. Instead, the court merely ordered a detailed trade secret disclosure and interrogatory response. No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *5 (N.D. Cal. June 14, 2012).

- In *Excelligence Learning Corp. v. Oriental Trading Co.*, Litrinium omits that the court found the disclosures made to be sufficient and held that no stay was warranted. No. 5:03-CV-4947 JF (RS), 2004 WL 2452834, at *4 (N.D. Cal. June 14, 2004).

- In *SMC Networks, Inc. v. Hitron Techs., Inc.*, Litrinium omits that the court held an automatic stay conflicts with Rule 26. No. SACV 121293JSTRNBX, 2013 WL 12136372, at *3 (C.D. Cal. Mar. 15, 2013).

- In *Gabriel Techs. Corp. v. Qualcomm Inc.*, the court did not enter a stay of discovery.  The court did deny the plaintiff's motion to compel, but it appears the dispute had been on-going for two years and it is not clear whether other discovery was continuing during this time frame.  No. 08CV1992 AJB MDD, 2012 WL 849167, at *1 (S.D. Cal. Mar. 13, 2012).

- In *Hilderman v. Enea TekSci, Inc.*, Litrinium correctly states that the court found CCP § 2019.210 to be inapplicable in federal court.  No. 05CV 1049 BTM(AJB), 2010 WL 143440, at *3 (S.D. Cal. Jan. 8, 2010).

In sum, none of these cases issued the relief that Litrinium seeks, and the majority expressly rejected the stay that is sought.  Thus Litrinium's own case law demonstrates why its request should be rejected.

## 2.   The policy reasons supporting trade secret disclosure confirm that Litrinium must respond to Plaintiffs' discovery

In Section II(A)(2) of its submission, Litrinium argues that federal courts "recognize a requirement" of disclosing trade secrets and Litrinium identifies four rationales.  *See* Litrinium's Contentions § II(A)(2) (citing *Vesta Corp.*, 147 F. Supp. 3d at 1158.

But Litrinium again ignores the actual holding of the case it cites.  In *Vesta Corp.*, discussed extensively by Litrinium, the court only limited discovery "relating to the 'Confidential Solutions Methods.'"  147 F. Supp. 3d at 1158.  This is consistent with the policy rationales identified by Litrinium and *Vesta*, which focus on (1) the scope and limits of discovery, (2) preventing a "fishing expedition" into Defendants' trade secrets, (3) denying the opportunity to "craft a trade secret claim to fit the evidence from Defendants," and (4) preventing "needless exposure" of defendant's trade secrets while allowing well-investigated claims to proceed and discouraging meritless claims.  *Id.* These factors center on protecting a defendant's trade secrets, but here Litrinium never makes any showing (let alone a showing of good cause) that Plaintiffs' discovery requests put its trade secrets at risk.

A review of the discovery at issue confirms that the requests seek evidence to bolster allegations in the FAC and run little or no risk of revealing Litrinium's trade secrets.[7]  For example, Interrogatory No. 1 asks for the identification of all email addresses used by former employees of Plaintiffs, including those used by Litrinium's CEO Najabat Hasnain Bajwa.  *See* Joint Statement § 3 (listing requests at issue).  This information may reveal email addresses that were used to communicate with Mr. Garez, Plaintiffs' former employee who is alleged to have misappropriated Plaintiffs' trade secrets.  Similarly, Interrogatory No. 2 asks for when Litrinium first had discussions with Mr. Garez about working for Litrinium.  *Id.*  Based on Plaintiffs' forensic analysis, it is alleged that Mr. Garez was working on projects for the benefit of Litrinium while he was still working for Plaintiffs, and this interrogatory seeks information that would further support those allegations.  These requests (along with the rest of Plaintiffs' discovery) are appropriate and discovery should not be stayed.

Moreover, any argument that the scope of discovery is currently unknown is belied by Litrinium's service on Plaintiffs of forty requests for production.  It is thus clear that Litrinium has no problem identifying the proper scope of discovery when making requests to Plaintiffs, and yet Litrinium seeks to block any discovery served to it on any issue whatsoever.  This is not what Rule 26 provides.  At this stage of the case, Plaintiffs have sufficiently described their trade secrets in the FAC and have thus put Plaintiffs on notice about the scope of their claim (as discussed in the next section).  Discovery should proceed.[8]

---

[7] To the extent that Litrinium raises concerns in the future about the disclosure of its trade secrets, they are likely to be addressed by the Court's model protective order for trade secret cases.  Plaintiffs have offered to enter this as the protective order governing the case with an attorney eyes only designation for especially sensitive information.

[8] Instead of making a showing that is tied to the discovery requests at issue, Litrinium uses the majority of Section II(A)(2) to disparage Plaintiffs and their counsel.  Frankly, these arguments have no place in this discovery motion, and Plaintiffs will not dignify them with a response.  As noted previously, it is Litrinium's burden to show good cause

### 3.    Plaintiffs have sufficiently disclosed their trade secrets at this stage of the litigation

Litrinium next argues that Plaintiffs have failed to sufficiently set forth their trade secrets.  Litrinium makes this same argument in its motion to dismiss, and now apparently seeks parallel rulings from both Judge Selna and Your Honor.  But in making this argument, Litrinium ignores that numerous courts have held that trade secret descriptions like those in the FAC are "sufficiently particular to place Defendant on notice of what information is at issue in this case at the pleading stage. Requiring Plaintiff to go into more detail risks compelling public disclosure of the same trade secrets Plaintiff seeks to protect."  *Keyssa, Inc. v. Essential Prod., Inc*., No. 17-CV-05908-HSG, 2019 WL 176790, at *2 (N.D. Cal. Jan. 11, 2019).  Consistent with this analysis, Litrinium has sought through discovery more detailed disclosure as part of its interrogatories to Plaintiffs to which Plaintiffs intend to provide additional detail once a protective order has been entered to ensure the protection of the information disclosed.

### a)    Plaintiffs' trade secret disclosures are sufficiently detailed

Given Litrinium's failure to show good cause or establish the applicability of CCP § 2019.210, Plaintiffs do not believe the Court needs to address the sufficiency of Plaintiffs' trade secret disclosures to resolve this Joint Stipulation.  But, as explained, Plaintiffs have set forth in detail the trade secrets at issue in the FAC.  And consistent with the detailed nature of the description, numerous courts have found such a disclosure sufficient at this stage.

Repackaging its motion to dismiss arguments for this discovery motion, Litrinium asserts that the word "including" somehow means a trade secret is insufficient.  The only federal court decision cited by Litrinium, *Emazing Lights*, is not analogous.  In *Emazing Lights*, the complaint <u>began</u> its trade secret identification with the broad phrase "include, but are not limited to," followed by a long list of information.  And one of the items in the

for a stay of discovery and to show harm or undue prejudice.  This showing has not been made, and Litrinium's request should be denied.

list was "any other information not publically and widely known."  No.
SACV151561AGEX, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016).  On those
allegations, the court held more specifics were needed.

The FAC alleges eight specific trade secrets.  The fact that some of these trade
secrets contain the word "including" does not render them improper, and courts have
repeatedly accepted trade secrets described in this manner.  *See, e.g.*, *Keyssa*, 2019 WL
176790, at *2 (approving trade secret described as "Heat dissipation and thermal
management architecture, including distribution of thermal elements and heat sinks.");
*Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, No. SACV170158DOCJCGX, 2017 WL
8220703, at *5 (C.D. Cal. Mar. 23, 2017) (approving trade secret described as "Here,
although Plaintiff does not 'spell out' which is included in the trade secrets, it alleges that
the trade secrets include the 13 keys  . . . ."); *TMX Funding, Inc. v. Impero Techs., Inc.*,
No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3-4 (N.D. Cal. June 17, 2010)
(approving trade secret described as "Its product information, including, but not limited
to, cost, pricing, margin data and other financial information.") (all emphasis added).

As to the FAC's trade secret identifications, the descriptions are sufficient.[9]

Trade Secret 1 (FAC ¶ 14(1)):  This identification contains more detail than other
trade secrets involving methods that have been approved by courts at the pleading stage,
such as "Methods for minimizing electromagnetic interference, radiofrequency
interference, and electrostatic discharge" and "Methods for mechanical alignment of
device and connected accessories, as well as for maximization of misalignment
tolerance."  *Keyssa*, 2019 WL 176790, at *2 (approving these trade secrets as sufficiently
disclosed).  And courts have held that customer lists and customer requirements can be a
trade secret.  *See Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL
4951966, at *3 (S.D. Cal. Oct. 12, 2018).  Here there is added specificity in that the trade

---

[9] The trade secret identifications are set forth in Section II(A)(3) of this Joint Stipulation
and thus are not repeated here.

secret is tied to developing a TIA for passive optical networks that is designed in a manner that will meet these requirements and specifications.

Trade Secret 2 (FAC ¶ 14(2)):  This identification contains more detail than similar trade secrets that have been approved by courts at the pleading stage, including the trade secret description "product information, including, but not limited to, cost, pricing, margin data and other financial information."  *See TMX Funding*, 2010 WL 2509979, at *3-4 (approving identification of trade secret).

Trade Secret 3 (FAC ¶ 14(3)):  This identification compares favorably to several trade secret identifications considered sufficient at this stage.  For example, the court in *Keyssa* found that "System architecture to enable wireless EHF millimeter wave transmission of image data" was a sufficient description, which is similarly detailed to subpart (a) of this trade secret.  *Keyssa*, 2019 WL 176790, at *2.  And the court in *TMX Funding* approved as a trade secret "Special buying and service needs, buying and serve patterns, agreements with customers, <u>and buying preferences of customers</u>, including special terms, discounts, and accessories."  *TMX Funding*, 2010 WL 2509979 at *3 (emphasis added).  This description regarding customer preferences is at a similar level of detail to the trade secret in subpart (b) of this trade secret.

Trade Secret 4 (FAC ¶ 14(4)):  This is a detailed identification tied to specific products and referring to a specific foundry manufacturer (TowerJazz).  Courts have found sufficient even more generic trade secret descriptions that refer broadly to "product information."  *See TMX Funding*, 2010 WL 2509979, at *3-4 (approving identification of "product information, including, but not limited to, cost, pricing, margin data and other financial information" as a trade secret).

Trade Secrets 5-7 (FAC ¶ 14(5-7)):  Each of these trade secrets describe the "design" of specific portions of the TIA.  In *KnowledgePlex, Inc. v. Placebase, Inc.*, the court found that "[t]he code required to operate DataPlace <u>and all of the design and development work of the project to create the code</u>" sufficiently identified a trade secret.

No. C 08-4267 JF(RS), 2008 WL 5245484, at *8 (N.D. Cal. Dec. 17, 2008) (emphasis added).  Plaintiffs' disclosure here includes substantially more detail than this description.

Trade Secret 8 (FAC ¶ 14(8)):  This trade secret is limited because it refers back to the prior trade secrets above.  The fact that a trade secret is combined with public information does not make it unprotected.  *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1196 (S.D. Cal. 2012) ("establishing that most (or even all) of the elements are generally known does not foreclose the possibility that the eight steps, taken together, constitute a protectable trade secret").

> ### b)   Litrinium's arguments about patents and other public information are unsupported and based on factual disputes that cannot be resolved on a discovery motion

Litrinium's next argument is also lifted straight out of its motion to dismiss, again apparently asking two judges to rule on the same issue.  Litrinium here seeks in a discovery motion for the Court to determine whether certain patents and other public information contains the trade secrets at issue in this case.  But as Judge Selna has already held in another case, and as other courts make clear, whether information is a trade secret is ordinarily a question of fact." *InfoSpan*, 2015 WL 13357646, at *3 (Selna, J.) (denying summary judgment). Indeed, making such a fact-based argument in a discovery motion is nonsensical, since discovery is meant to allow both parties to prepare their case for an adjudication on the merits. *See In re Syncor ERISA Litigation*, 229 F.R.D. 636, 643 (C.D. Cal. 2005) ("Generally, the purpose of  discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.")

The inappropriateness of Litrinium's arguments is heightened by Litrinium's extensive reliance on outside exhibits.  Indeed, the case law cited by Litrinium recognizes that an "argument that such [trade secret] information is not protected because it is either publicly available or known to those in the trade addresses the merits of [plaintiff's] trade secrets claim rather than its responsibilities under the applicable discovery rules."

*Excelligence Learning*, 2004 WL 2452834, at *4 (denying request for protective order). As explained in yet another case relied on by Litrinium, there is no requirement for "a discovery referee to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence." *Activerain*, 2008 WL 11343023, at *2 (denying request for protective order).  Litrinium in making this argument ignores that the "[t]he procedures for challenging the merits of a trade secret claim prior to trial are set out in Rules 12 and 56 of the Federal Rules of Civil Procedure and are not properly challenged under discovery rules, including the requirement that the trade secret be identified with particularity*." StorageCraft Tech. Corp. v. Symantec Corp*., No. 2:07-CV-856 CW, 2009 WL 112434, at *2 (D. Utah Jan. 16, 2009).

In any event, on the merits, whether an aspect of a trade secret is public is not dispositive of whether it remains a protectable trade secret.  As the court explained in *SkinMedica*, "establishing that most (or even all) of the elements are generally known does not foreclose the possibility that the eight steps, taken together, constitute a protectable trade secret." 869 F. Supp. 2d at 1196.  As that court held, "whether a patent publicly disclosed a trade secret in the correct combination so as to defeat the secrecy of the information is a triable question of fact." *Id.* at 1194.

In addition to being improper in this motion, Litrinium's arguments also establish why its requested discovery relief is barred by its own merits-based argument. Litrinium claims repeatedly that Plaintiffs' description of its trade secrets lacks specificity.  *See generally* Litrinium's Contentions § II(A).  But when it argues Plaintiffs' trade secrets are, in fact, not trade secrets, Litrinium has no problem identifying and describing the trade secret at issue.  This demonstrates that Plaintiffs have met their burden of disclosing sufficient information "to permit the defendant to ascertain at least the boundaries within which the secret lies." *Nelson Bros.*, 2017 WL 8220703, at *5. Litrinium may believe that Plaintiffs do not have any trade secrets worthy of protection, but that is a merits argument, not a basis to issue a blanket protective order prohibiting discovery by Plaintiffs.

### 4. Litrinium's final arguments concerning Plaintiffs' conduct confirm why discovery is appropriate here

Litrinium's final argument also illustrates why the pending discovery should proceed. In its final Section II(A)(4), Litrinium makes a multitude of improper factual arguments about the merits of the complaint, often referring to a March 12, 2019 letter sent by Litrinium's counsel. *See* Litrinium's Contentions § II(A)(4) (citing Katz Ex. 9). This letter, however, is not evidence and has little relevance to the discovery dispute before the Court. Indeed, discovery allows for Plaintiffs to test the claims that Litrinium advances in its letter and repeats before this Court through testimony under oath and production of contemporaneous documents. For example, Litrinium claims that it completed the design of its own TIA fifteen months before Mr. Garez started at Litrinium, see Katz Ex. 9 at 1, and Plaintiffs' Interrogatory No. 4 asked when production began for Litrinium's products to determine if this is true. As another example, Litrinium's March 12, 2019 letter labels allegations that Mr. Garez was working with Litrinium while he was still employed by Plaintiffs as "false, and frankly, defamatory." *Id.* Plaintiffs' discovery addresses this issue as well, asking Litrinim to identify when it first had discussions with Mr. Garez about an employment relationship (Interrogatory No. 2), seeking the production of communications between Litrinium and Mr. Garez (RFP No. 1), and seeking the production of documents setting forth the dates, times, and locations of meetings between Mr. Garez and Litrinium (RFP No. 3). *See* Joint Statement § 3 (listing requests at issue).[10]

---

[10] Another claim by Litrinium is that it offered to have a neutral expert review its products to determine if they contained Plaintiffs' trade secrets. This is a red herring. The trade secret need not be found in the defendant's product, as "information may be improperly used in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived. *InfoSpan*, 2015 WL 13357646 at *5 (Selna, J.). "[L]earning what does not work can be valuable in avoiding similar blind alleys in the future." *La Calhene, Inc. v. Spolyar*, 938 F. Supp. 523, 525 (W.D. Wis. 1996).

Litrinium's merit-based arguments in this motion only confirm the propriety of the discovery at issue.  Indeed, Plaintiffs' discovery requests seek information directly targeted to the FAC's allegations.  There is no identification of any of Plaintiffs' requests that are a "fishing expedition" or that are beyond the scope of the discovery permitted under Rule 26.  If Litrinium has any concerns about the confidentiality of its discovery responses, it should agree to enter the Court's model protective order with an attorney eyes only designation, which Plaintiffs have already offered to do.

Litrinium's *ad hominem* arguments about Plaintiffs' counsel and the merits of the case do nothing but establish that there is no good cause to issue the discovery order sought through this Joint Statement. For this further reason, Litrinium's request should be denied.

## III.  PLAINTIFFS' CURRENT DISCOVERY REQUESTS

Plaintiffs served written interrogatories and requests for production to Litrinium on April 23, 2019. Because Plaintiffs have only asserted trade-secret claims against Litrinium, Plaintiffs' written discovery requests must relate to Plaintiffs' trade-secret allegations. Copies of Plaintiffs' written discovery requests are attached as Exhibits 27 and 28 to the Declaration of Michael I. Katz and are set forth below for the Court's convenience:

**REQUEST FOR PRODUCTION NO. 1:** All DOCUMENTS evidencing COMMUNICATIONS between any former employee of PLAINTIFF, including but not limited to Jerome Garez, and any of YOUR employees, including but not limited to Najabat Hasnain Bajwa, from March 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 2:** All DOCUMENTS evidencing COMMUNICATIONS between PLAINTIFFS and YOU from March 1, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 2 [*second instance*]:** All DOCUMENTS signed by any former employee of PLAINTIFFS, including but not limited to Jerome Garez, in your possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 3:** All DOCUMENTS that reference the date, time and/or place of any meeting between any former employee of PLAINTIFFS and any of YOUR employees.

**REQUEST FOR PRODUCTION NO. 4:** All DOCUMENTS evidencing COMMUNICATIONS between YOU and any customer or potential customer that mentions MACOM or MINDSPEED

**REQUEST FOR PRODUCTION NO. 5:** All DOCUMENTS evidencing COMMUNICATIONS between YOU and any customer or potential customer that mentions a MACOM or MINDSPEED product.

**REQUEST FOR PRODUCTION NO. 5 [*second instance*]:** All data sheets for YOUR products that have been provided by YOU to customers or potential customers.

**REQUEST FOR PRODUCTION NO. 6:** All marketing materials developed by YOU from January 1, 2016 to the present that mentions MACOM or MINDSPEED.

**INTERROGATORY NO. 1:** Please IDENTIFY all email addresses used by any former employees of PLAINTIFFS, including but not limited to Najabat Hasnain Bajwa, from January 2016 to the present.

**INTERROGATORY NO. 2:** Please IDENTIFY when YOU first had any discussions with Jerome Garez regarding an employment relationship with YOU.

**INTERROGATORY NO. 3:** Please IDENTIFY when YOU obtained YOUR first sale for each of the products ever offered for sale by YOU, including the name and location of the PERSON who purchased said

product.

**INTERROGATORY NO. 4:** Separately and for each of YOUR products you have ever offered for sale, IDENTIFY when production started for said products.

**INTERROGATORY NO. 5:** Other than YOURSELF, please IDENTIFY all other PERSONS that YOU use to manufacture YOUR products.

## IV. CONCLUSION

### A.   Litrinium's Concluding Statement

Litrinium's request follows Judge Selna's intent for Plaintiffs' to disclose their alleged trade secrets with reasonable particularity. Litrinium's request further implicates the policy rationales invoked by California and federal courts to require early identification of trade secrets before trade-secret plaintiffs may proceed with discovery. Plaintiffs should not be allowed to continue to hide the identity of their trade secrets for months after filing suit.

Plaintiffs have shown no interest in moving this case forward. They delayed amending their deficient pleading for months, and then only submitted an equally deficient First Amended Complaint, rejected Litrinium's offer to submit the matter to a neutral expert, and refused outright to make any disclosure of trade secrets beyond the FAC. Plaintiffs have been more interested in advertising the fact that they filed a trade-secret lawsuit, than in addressing the merits. Plaintiffs have been using the vague allegations in their deficient pleadings to try to scare customers away from doing business with Litrinium, a startup that has succeeded through its own resources and inventiveness, in making a better performing product. Rather than seek redress from the Court, Plaintiffs' true purpose has been exposed as anti-competitive. The Court's intervention, and protection, is necessary, to avoid abuse of process and ensure fairness and a level playing field in this matter.

For the forgoing reasons, Litrinium requests that the Court enter an order barring Plaintiffs from obtaining discovery until they describe their asserted trade secrets with reasonable particularity and that Litrinium's obligations to respond to outstanding written discovery requests be stayed until Plaintiffs' describe their trade secrets with reasonable particularity.

### B.   Plaintiffs' Concluding Statement

The Federal Rules of Civil Procedure govern discovery in this Court.  Rule 26(c) provides that upon a showing of good cause a protective order may be issued.  This is the

moving party's burden.  Here, Litrinium seeks a protective order from the Court, but never makes a showing of good cause.  Litrinium also never ties its arguments to the discovery requests at issue, nor has Litrinium explained how the factors it puts forth apply to bar Plaintiffs' discovery.

The federal rules and this Court's local rules already set forth the procedure by which Litrinium can seek a full identification of Plaintiffs' trade secrets and challenge that identification if Litrinium believes it is insufficient.  Specifically, Litrinium can serve interrogatory requests (which it has done) and can submit a joint stipulation if it takes issue with the responses.  Instead, Litrinium asks this Court to issue a one-way hold on discovery and replace the discovery dispute process in the local rules with a four-step process it identifies in its Introductory Statement.  But Litrinium can't point the court to case law where the broad relief that it seeks has been granted.  And the only cases from this District that Litrinium cites denied a request to stay discovery for lack of good cause and held that CCP § 2019.210 does not apply in federal court.  This Court should follow the same path and deny Litrinium's request for lack of good cause.


DATED: May 23, 2019                          Respectfully submitted,

MASCHOFF BRENNAN                         THOITS LAW APC

By: */s/ Jared J. Braithwaite*                 By: */s/ Nathaniel H. Lipanovich*
    Michael I. Katz                               Andrew P. Holland
    Charles S. Barquist                         Mark V. Boennighausen
    Jared J. Braithwaite                        Misasha S. Graham
                                                        Nathaniel H. Lipanovich
    Attorneys for Defendant
    LITRINIUM, INC.                             Attorneys for Plaintiffs
                                                        MACOM TECHNOLOGY SOLUTIONS,
                                                        INC. and MINDSPEED TECHNOLOGIES,
                                                        S.A.S.

                                                        *(Signed with permission by filing attorney)*