UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al. | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:   (IN CHAMBERS) Order Regarding Motion to Dismiss**

**The Court, having been informed by the parties in this action that they submit on the Court's tentative ruling previously issued, hereby rules in accordance with the tentative ruling as follows:**

Defendant Litrinium, Inc. ("Litrinium") moved to dismiss the First Amended Complaint ("FAC") filed by Plaintiffs MACOM Technology Solutions, Inc. ("Macom") and Mindspeed Technologies, S.A.S. ("Mindspeed") (together, "Plaintiffs"). Mot., Docket No. 34. Plaintiffs filed an opposition. Opp'n, Docket No. 41. Litrinium replied. Reply, Docket No. 43.

For the following reasons, the Court **grants** the motion.

### I. BACKGROUND

#### A.   Request for Judicial Notice

Litrinium filed a request for judicial notice ("RJN") in support of its motion. RJN, Docket No. 35. Plaintiffs opposed, and Litrinium replied. Docket Nos. 42, 44. Litrinium requests judicial notice of (1) the public availability of two articles from Macom's website (but not the truth of the matters asserted therein; and (2) fourteen United States patents and patent applications related to transimpedance control amplifier ("TIA") technology, which is key to the parties' businesses and relates to the allegedly misappropriated trade secrets at issue. RJN, Docket No. 35, Exs. 1–16.

Information on publically accessible articles or websites is subject to judicial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | **MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.** | | |

notice of the fact that the information was available to the public because such availability is not subject to reasonable dispute. See Holiotrope General, Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants."); Coremetrics, Inc. v. AtomicPark.com, LLC, 370 F. Supp. 2d 1013, 1021 (N.D. Cal. 2005) (taking judicial notice of the contents of a defendant's website). Importantly, Litrinium requests only that the Court take judicial notice of the public availability of the content of these articles and websites not for the truth of matters asserted therein. See Spy Optic, Inc. v. Alibaba.Com, Inc., 163 F. Supp. 3d 755, 762 (C.D. Cal. 2015) ("Courts may take judicial notice of the fact that an internet article is available to the public, but it may not take judicial notice of the truth of the matters asserted in the article.").

Furthermore, "patents are 'matter[s] of public record and the proper subject of judicial notice.'" Sebastian Brown Prods. LLC v. Muzooka Inc., 2016 WL 949004, *5 n.1 (N.D. Cal. Mar. 14, 2016) (quoting X One, Inc. v. Uber Techs., Inc., 2017 WL 878381, *4 (N.D. Cal. Mar. 6, 2017)); see also Profil Institut fur Stoffwechselforschung GmbH v.ProSciento, Inc., 2017 WL 1198992, *2 (S.D. Cal. Mar. 31, 2017) (taking judicial notice of patent in CUTSA case).

Because authenticity and accuracy of the website and patent content at issue cannot reasonably be questioned, the Court grants Litrinium's request to take judicial notice that the information exists and is available to the public. To be clear, the Court does not take judicial notice that Plaintiffs' alleged trade secrets were publically disclosed in these documents – that issue is disputed in this case, and therefore is not properly subject to judicial notice; rather, the Court takes notice that the content of the documents is public.

**B.    Allegations**

The FAC alleges the following. Macom is the United States-based parent of Mindspeed, a French company. FAC, Docket No. 30 ¶¶ 1, 2. Defendant Jerome Garez ("Garez") is a former Mindspeed employee who is now employed by Litrinium. Id. ¶¶ 3, 16.

Plaintiffs design, produce, and sell semiconductor technologies for optical, wireless and satellite networks. Id. ¶ 10. The technology and non-public information at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | <ins>MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.</ins> | | |

issue in this litigation concerns TIA designs and functionality. <ins>Id.</ins> ¶ 13. A TIA is a current-to-voltage converter, often used in optical receiver applications. <ins>Id.</ins> Plaintiffs designed and developed two generations of 28 GHz TIAs that were incorporated into their products, including MATA-03003, MATA-03006, and MATA-03007. <ins>Id.</ins> It is this technology that Garez was principally responsible for in his employment with Macom. <ins>Id.</ins> While employed by Plaintiffs, Garez was responsible for next-generation TIAs including a PAM-3 TIA, 28G Burst Mode TIA, 28G Gen1 TIA, 10G Gen2 TIA, 28G APD TIA single and quad versions, and 28G PIN TIA single and quad versions. <ins>Id.</ins> ¶ 23.

On information and belief, Litrinium was formed in March 2016 by a former Mindspeed and Macom employee, Najabat Hasnain Bajwa ("Bajwa"), who eventually recruited Garez to work at Litrinium. <ins>Id.</ins> ¶¶ 15, 16. Garez tendered his resignation from Mindspeed in early 2018, and his employment terminated on March 6, 2018. <ins>Id.</ins> ¶ 25. Litrinium established an office in France to employ Garez as early as March 7, 2018. <ins>Id.</ins> All "substantive" Litrinium operations are conducted through its California entity. <ins>Id.</ins>

Garez used Plaintiffs' resources and developed confidential and proprietary design concepts while employed by Plaintiffs which were then incorporated into Litrinium products. <ins>Id.</ins> ¶ 17. According to a forensic investigation of Garez's activities conducted after his departure, Garez was working on projects unrelated to his employment with Plaintiffs while still employed by them, including a "burst mode PON receiver" and "3rd generation 28G TIA." <ins>Id.</ins> ¶ 18. These unrelated projects included developing circuits, including running temperature sweeps and other parametric simulations to test the robustness of the designs, and designing schematics. <ins>Id.</ins> Plaintiffs also found that some of the information Garez deleted prior to his departure from their employ concerned his work on a 28G TIA, including work "on a peak detector circuit for a burst-mode TIA and a sophisticated offset compensation circuit." <ins>Id.</ins> ¶ 19.

A forensic analysis of Garez's laptop and desktop computers conducted shortly before his departure indicated that Garez deleted technical information from his company laptop and accessed files on his work laptop using a USB device, a device which Garez never turned over to Plaintiffs despite the Garez's contractual obligation to return all company property. <ins>Id.</ins> ¶ 20.

On information and belief, prior to his departure from Plaintiffs' employ, Garez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | **MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.** | | |

also used regularly scheduled business trips to Plaintiffs' Newport Beach, California offices to visit Litrinium and/or connect with Bajwa to coordinate Garez's misappropriation of Plaintiffs' trade secrets. Id. ¶ 21. The misappropriation is substantial because, on information and belief, the design and development of Plaintiffs' 2nd generation 28G TIA required substantial effort from multiple individuals employed by Plaintiffs, not just Garez. Id. ¶ 22. And, on information and belief, Garez's development of TIAs while employed by Plaintiffs were "of particular commercial interest to Litrinium." Id. ¶ 23.

On February 4, 2019, Plaintiffs brought this action. Docket No. 1. The FAC asserts three causes of action: (1) misappropriation of trade secrets in violation of the federal Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b); (2) misappropriation of trade secrets in violation of the California Uniform Trade Secret Act ("CUTSA"), Cal. Civ. Code §§ 3426, et seq., and (3) breach of contract. FAC, Docket No. 30. The trade secret claims are brought against both Litrinium and Garez, while the breach of contract claim is brought only against Garez. Id. Litrinium now moves to dismiss both of the trade secret misappropriation claims alleged against it. Mot., Docket No. 34.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement of relief." Id. at 679. This determination is context-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al. | | |

specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. For purposes of ruling on a Rule 12(b)(6) motion, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

Plaintiffs assert claims for trade secret misappropriation under both state and federal law. FAC, Docket No. 30 ¶¶ 27–47. To state a claim for misappropriation under the CUTSA, Plaintiffs must allege that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." InfoSpan, Inc. v. Emirates NBD Bank PJSC, No. SACV-11-1062-JVS-ANx, 2015 WL 13357646, at *2 (C.D. Cal. May 6, 2015) (quoting Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (2003)). Moreover, "[t]he elements of misappropriation under the DTSA are similar to those under the CUTSA." Space Data Corp. v. X, No. 16-cv-03260-BLF, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017) (citing 18 U.S.C. § 1839(5) in comparison to Cal. Civ. Code § 3426.1(b)); see also Vendavo, Inc. v. Price f(x) AG, No. 17-cv-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (applying California precedent interpreting the CUTSA to DTSA claims because the "elements of a trade secret misappropriation claim under the DTSA are substantially similar" to the CUTSA). Therefore, the Court's analysis regarding trade secret misappropriation applies to both the state and federal claims unless otherwise noted.

Under the DTSA, the "owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Under this statute, a trade secret includes:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-220 JVS (JDEx)                                   Date  June 3, 2019

Title  **MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.**

> designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being relatively ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Similarly, under the CUTSA, a "trade secret" is defined as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that . . . (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

Nelson Bros. Prof'l Real Estate LLC v. Jaussi, No. SACV-17-0158-DOC-JCGx, 2017 WL 8220703, at *4 (C.D. Cal. Mar. 23, 2017).

     Defendants argue that Plaintiffs' trade secret misappropriation claims fail because (1) the alleged misappropriation did not occur within the territorial jurisdiction of the DTSA or CUTSA because the acts occurred only in France; (2) the existence of a trade secret is not sufficiently alleged because no trade secret is identified and Plaintiffs did not take steps to preserve the secrecy of the alleged trade secrets; and (3) misappropriation is not sufficiently alleged because there is no plausible allegation that Litrinium improperly acquired trade secrets. Mot., Docket No. 34. The Court addresses these issues below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al. | | |

### A.     Territorial Scope

A trade secret misappropriation claim can be brought under the DTSA "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 USC § 1836(b)(1).  The DTSA also applies to conduct occurring outside the United States if (1) "the offender is a . . . organization organized under the laws of the United States or a State" or (2) "an act in furtherance of the offense was committed in the United States."  18 USC § 1837(1-2).  The CUTSA is also subject to the general presumption against the extraterritorial effect of California statutes.  See Cave Consulting Grp., Inc. v. Truven Health Analytics Inc., No. 15-cv-02177-SI, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017) (dismissing CUTSA claim because "[n]o legislative history suggests the [CUTSA] was intended to have extraterritorial effect" and the "presumption [against extraterritoriality] is not rebutted here").

Litrinium argues that Plaintiffs' allegations are insufficient because they do not allege misappropriation of trade secrets based on conduct occurring in the United States, but France.  Mot., Docket No. 34 at 5–8.  Litrinium argues that all of Garez's allegedly wrongful acts occurred in France and the only allegation of misappropriation in the United States – that on information and belief Garez used regular business trips to Plaintiffs' California offices "to visit Litrinium and/or connect with Bajwa in order to coordinate . . . Garez's misappropriation" – is conclusory.  Id.

Plaintiffs argue that both the DTSA and CUTSA apply because the FAC alleges that (1) the trade secrets at issue are related to products used in interstate commerce; (2) Litrinium's principle place of business is California; (3) Garez communicated with employees and/or agents of Litrinium, including CEO Bajwa; (4) Garez used his business trips to California to coordinate misappropriation with Bajwa; (5) the trade secrets have been incorporated in Litrinium products; and (6) Macom's California design centers assisted in developing the trade secrets at issue in this lawsuit.  Opp'n, Docket No. 41 at 6–8.

The Court agrees.  Plaintiffs have sufficiently alleged conduct occurring in California as related to their trade secret misappropriation claims.  Taken as true, Plaintiffs allege that the trade secrets at issue are used by Litrinium in its products which are in the stream of interstate commerce, that a California company and its CEO recruited Garez and coordinated the alleged misappropriation during his trips to California, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al. | | |

that Macom's California locations assisted in developing the trade secrets at issue. See FAC, Docket No. 30 ¶¶ 2–4, 9–11, 16–17, 21, 29. Therefore, Plaintiffs sufficiently allege conduct within the territorial jurisdiction of the DTSA and CUTSA.

### B. Identification of Trade Secrets

The DTSA and the CUTSA define a trade secret as information that: (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner. See 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

"A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist," and "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164–65 (9th Cir. 1998) (internal citations and quotation marks omitted). Only then can defendant "ascertain at least the boundaries within which the secret lies." Nelson, 2017 WL 8220703, at *5 (citation omitted).

Litrinium argues that the FAC does not sufficiently identify information constituting a trade secret. Mot., Docket No. 34 at 8–17. Specifically, Litrinium argues that the FAC does not plausibly allege the existence of trade secret information because it (1) states only generic, open-ended information; (2) identifies information that on its face is public in nature; and (3) alleges generic categories of information without distinguishing them from what is generally known, as reflected by publicly filed patent documents. Id. Plaintiffs argue in opposition that the FAC alleges the misappropriated trade secret information with sufficient specificity. Opp'n, Docket No. 41 at 9–18.

The Court finds that Plaintiffs' allegations are sufficient to identify the boundaries of the trade secrets allegedly misappropriated by Defendants. The FAC describes the categories of trade secret information as:

> 1. method for developing a [TIA] according to customer requirements and specifications for passive optical networks (PON), including performance parameters and shortcomings based on trial and error from internal development efforts;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-220 JVS (JDEx)                             Date   June 3, 2019

Title   <u>**MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.**</u>

    2.    internal circuit design operational methodologies, including pricing on parts, production costs, test time and methodology and yields and yield improvement methods;

    3.    mechanical development methodologies including: (a) Maximum die size allowable in different types of ROSAs and optimal die aspect ratio, and (b) knowledge of customer preferred PAD locations and ROSA signal integrity challenges (high-speed behavior of ROSA pin/substrate);

    4.    internally developed information about the ST Microelectronics (STM) B55 process, including performance compared to TowerJazz (TJ) SG18HX processes for high speed bipolar and CMOS transistors as well as cost, cycle time and availability, including allocation issues of STM track records of silicon delivery and benchmarks on process maturity;

    5.    design of the TIA, subject to the constraints of an integrated circuit (IC) process and photodetector (PD) packaging including performance targets for current products and potential limitations of MACOM products, as well as IC area reductions;

    6.    design for automatic gain control in the TIA to prevent overload;

    7.    design for DC offset compensation at the input of the TIA for PON; and

    8.    compilation of all trade secrets set forth above including those combined with public technology and confidential and non-confidential business information to produce MACOM products.

FAC, Docket No. 30 ¶¶ 14(1)–(8).

    At the pleading stage, this language is sufficiently particular to place Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al. | | |

on notice of the information at issue in this case. See Keyssa, Inc. v. Essential Prod., Inc., No. 17-CV-05908-HSG, 2019 WL 176790, at *2 (N.D. Cal. Jan. 11, 2019) (finding sufficient categories of trade secret information similar to the categories Plaintiffs describe in the FAC). Moreover, requiring Plaintiffs to go into more detail risks compelling public disclosure of the same trade secrets Plaintiff seeks to protect. See id.; Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 252 (1968) ("One who seeks to protect his trade secrets from wrongful use or disclosure does not have to spell out the details of the trade secret to avoid a demurrer to a complaint. To so require would mean that the complainant would have to destroy the very thing for which he sought protection by making public the secret itself.").

Furthermore, other district courts have found trade secrets described at a similar level of specificity to be sufficiently pled. See Keyssa, 2019 WL 176790, at *2; Nelson, 2017 WL 8220703, at *5 ("[A]lthough Plaintiff does not 'spell out' what is included in the trade secrets, it alleges that the trade secrets include [information] which sets forth thirteen factors and sub-factors for buying successful student housing."); Nextdoor.Com, Inc. v. Abhyanker, No. C-12-5667 EMC, 2013 WL 3802526, at *6 (N.D. Cal. July 19, 2013) (finding trade secret allegations sufficient even though "some of these listed trade secrets are somewhat more general" because "the list as a whole provides sufficient specificity to give Counter–Defendants notice of [the] allegations, at least at the pleading stage. Requiring significantly more detail from [the party alleging misappropriation] at this stage raises the risk of forcing him to publically disclose his trade secrets in the pleadings."); TMX Funding, Inc. v. Impero Techs., Inc., No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (finding trade secrets sufficiently pled based on allegations of "nine broad categories of trade secret information" including "customer lists," "customer profiles," "product information," and "business methods and marketing plan," among other similarly broad categories).

Litrinium argues that Plaintiffs insufficiently allege how the information described above is separate from the trade's general knowledge of the subject matter. Mot., Docket No. 34 at 15–17. For support, Litrinium points to fourteen published patents and patent applications it contends disclose the same designs and processes claimed by Plaintiffs to be the trade secret information misappropriated by Defendants. See id. The Court disagrees.

"Whether the alleged trade secrets are actually generally known to the public is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | **MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.** | | |

question of fact and beyond the scope of a motion to dismiss." Nelson, 2017 WL 8220703, at *5; see also InfoSpan, 2015 WL 13357646, at *3 ("Whether information is a trade secret is ordinarily a question of fact."). As another district court aptly explained:

> the issue of whether all of plaintiffs' alleged trade secrets have been publicly disclosed is a factual issue which is properly the subject of discovery. . . . [P]laintiffs' complaint contains sufficient factual allegations to plausibly allege the existence of the trade secrets. In arguing that plaintiffs have not affirmatively distinguished their alleged trade secrets from public information, defendants effectively ask the court to conduct a review of the evidence to determine whether plaintiffs' trade secrets have been made public. This sort of review is more appropriate on a motion for summary judgment.

E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek, No. 1:17-CV-00808-DAD-EPG, 2018 WL 2463869, at *6 (E.D. Cal. June 1, 2018).

Similarly here, the Court will not undertake a summary judgment-like review of the patents at issue in comparison to the alleged trade secret information to determine whether information has been made public, particularly at the pleading stage where all inferences are to be drawn in Plaintiffs' favor. This is so despite the Court taking judicial notice of the patent documents at issue. As noted, the Court takes judicial notice of the existence and public availability of the patent documents, but not the disputed fact that they contain information rendering it implausible that Plaintiffs' allege the existence of trade secret information. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."). Moreover, the public availability of a trade secret is not necessarily dispositive of whether it remains protectable as a trade secret, e.g., even where steps are generally known individually, the steps may be protectable when taken together or compiled into one process. See SkinMedica, Inc. v. Histogen Inc., 869 F. Supp. 2d 1176, 1196 (S.D. Cal. 2012) ("[E]stablishing that most (or even all) of the elements are generally known does not foreclose the possibility that the eight steps,

Case 8:19-cv-00220-JVS-JDE Document 48 Filed 06/03/19 Page 12 of 15 Page ID #:1196

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-220 JVS (JDEx)  Date  June 3, 2019

Title  **MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.**

taken together, constitute a protectable trade secret.").

Therefore, the Court finds that Plaintiffs allege the existence of trade secrets with sufficient particularity.

**C.    Preservation of Secrecy**

Litrinium next argues that the FAC does not allege the existence of a trade secret because it fails to allege that Plaintiffs took reasonable steps to maintain the secrecy of the trade secret information.  Mot., Docket No. 34 at 17–18.

The Court finds that Plaintiffs sufficiently allege reasonable steps to preserve their trade secrets.  The FAC alleges that (1) Garez executed confidentiality agreements as an employee of Mindspeed; (2) Plaintiffs maintain "stringent security measures" to protect their trade secrets, including restriction of access on a "need to know" basis, and encrypting and password-protecting the networks hosting Plaintiffs' confidential and proprietary information, as well as the devices provided to their employees; (3) Plaintiffs restrict access to their physical facilities with security cameras and guards; and (4) Plaintiffs require vendors, partners, contractors, and other associates to sign confidentiality agreements before trade secret information is disclosed to them.  FAC, Docket No. 30 ¶¶ 3, 30–32, 41.

Courts have found similar measures sufficient to show reasonable efforts to protect a trade secret.  See, e.g., Nelson, 2017 WL 8220703, at *5 ("'Reasonable efforts' to maintain a trade secret's secrecy can include advising employees of the existence of a trade secret, or limiting access to the information on a 'need to know basis,' requiring employees to sign confidentiality agreements, or keeping secret documents under lock.") (citing MAI Sys. Corp. v. Peak Computer, 991 F.2d 511, 521 (9th Cir. 1993) (confidentiality agreements); Religious Tech. Center v. Netcom On–Line Comm. Servs., Inc., 923 F. Supp. 1231, 1256 (N.D. Cal. 1995) (locking documents); and Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1288 (1990) (need to know)).  Moreover, the "reasonable efforts" analysis is fact-intensive.  See Infospan, 2015 WL 13357646, at *3.

Accordingly, the Court finds that Plaintiffs adequately allege that they took reasonable steps to preserve the secrecy of the allegedly misappropriated trade secret

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | **MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.** | | |

information.

**D.   Misappropriation**

Lastly, Litrinium argue that the trade secret misappropriation claims should be dismissed because the FAC fails to plausibly allege misappropriation by Litrinium. Mot., Docket No. 34 at 19–25. Specifically, Litrinium argues that the FAC fails to plausibly allege (1) that Garez improperly acquired any trade secrets; (2) that any trade secrets were disclosed to Litrinium; and (3) that Garez used Plaintiffs' TIA technology at Litrinium with or without Litrinium's knowledge. Id.

Misappropriation under the DTSA includes both the acquisition of trade secrets by improper means and the "disclosure or use of a trade secret of another . . . by a person who . . . at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was - . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." See 18 USC § 1839(5)(A), (5)(B)(ii)(III); InfoSpan, 2015 WL 13357646, at *4 (misappropriation under the CUTSA can occur through improper acquisition or through use).

The FAC alleges the following. On information and belief Bajwa, a former employee of Plaintiffs and founder of Litrinium, stayed in contact with Garez after departing from Plaintiffs' employ and eventually recruited Garez to Litrinium. FAC, Docket No. 30 ¶ 16. On information and belief Garez used Plaintiffs' resources to develop confidential, proprietary designs while employed by Plaintiffs, which were then incorporated into Litrinium products. Id. ¶ 17. According to a forensic investigation, Garez was working on projects unrelated to his job duties while employed by Plaintiffs, including "developing circuits," "running temperature sweeps," and "developing schematics of . . . designs." Id. ¶ 18. Prior to departing from Plaintiffs' employ, Garez attempted to delete information concerning his work on a "28G TIA, including work on a peak detector circuit for a burst-mode TIA and a sophisticated offset compensation circuit." Id. ¶ 19. He also "deleted technical information from his company laptop and access files on his work laptop using a USB device within one month of his departure." Id. ¶ 20. On information and belief, Garez used regular business trips to California to "visit Litrinium and/or connect with Mr. Bajwa in order to coordiante Garez's misappropriation of Plaintiffs' trade secrets." Id. ¶ 21. Garez worked on "next

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al. | | |

generation TIA" products while employed by Plaintiffs that on information and belief "were of particular commercial interest to Litrinium." Id. ¶ 23. Garez used Plaintiffs' resources and time to learn of certain circuit processes which provide a competitive advantage and then used that knowledge for Litrinium products. Id. ¶ 24.

The foregoing allegations are insufficient to state a claim for trade secret misappropriation because Plaintiffs do not plausibly allege that Garez improperly acquired any trade secrets. Garez's communications with Litrinium are not alleged to relate to any trade secret information. See FAC, Docket No. 30 ¶ 9. Plaintiffs allegations that Garez implemented trade secret information into Litrinium products is conclusory, merely restating the language of the claim element. See id. ¶¶ 17, 21. The allegation that Plaintiffs' products were of "particular commercial interest" to Litrinium is too vague to support a claim of misappropriation. Id. ¶ 23. Furthermore, Garez's knowledge of "certain circuit processes" is not tied to Plaintiffs' alleged trade secret information, and Garez's recruitment to Litrinium and departure from Plaintiffs' employ does not allege wrongful conduct, but a mere common change in employment, even construed in the light most favorable to Plaintiffs. See id. ¶ 24.

Moreover, although it is alleged that Garez worked on hidden projects unrelated to his job duties and attempted to delete such information from his computer prior to departing from Plaintiffs' employ, the FAC does not allege that these projects were related to the allegedly misappropriated trade secrets the FAC identifies. See id. ¶¶ 14, 18–19. The allegation that Garez used a USB device to access unspecified files is also not tied to the allegedly misappropriated trade secret information, and using a USB device to access files is not wrongful conduct in and of itself. See id. ¶ 20. If Plaintiffs' forensic investigation revealed support for the contention that Garez accessed, deleted, copied, disclosed, or acquired Plaintiffs' trade secret information for Litrinium's use, Plaintiffs should plead those facts.

There is also no non-conclusory allegation regarding Garez's purported disclosure of Plaintiffs' trade secrets to Litrinium. The FAC alleges that, on information and belief, Garez incorporated Plaintiffs' proprietary designs into Litrinium products. FAC, Docket No. 30 ¶¶ 17, 24. Again, this is not linked to the trade secret information as described in the pleading, nor any Litrinium product. Furthermore, the allegation is made on information and belief, accentuating the conclusory nature of the allegation. And finally, Plaintiffs do not allege which trade secrets were purportedly used, how they were used, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | June 3, 2019 |
| Title | <u>**MACOM Technology Solutions Inc., et al. v. Litrinium, Inc., et al.**</u> | | |

when they were used, and the allegations that unspecified confidential designs were "incorporated in" or "used for" unspecified Litrinium products is insufficiently vague and conclusory to support Plaintiffs' claims for trade secret misappropriation.  The same holds true for the conclusory allegation that Bajwa and Garez "coordinate[d] Garez's misappropriation of trade secrets" during business trips to California – this does not cure the failure of the FAC to allege how the misappropriation occurred, when it occurred, and what was misappropriated by Defendants.

As Litrinium points out, other than conclusory and irrelevant allegations, there are no well-pled facts related to Garez's misappropriation other than that he left Mindspeed's employment to work for Litrinium after being recruited away by a former Mindspeed employee.  Without plausible allegations that Garez improperly acquired trade secrets, the FAC cannot allege that Litrinium improperly acquired or used trade secrets, because Garez is the only link between Plaintiffs and Litrinium.  The mere allegation that Garez left Plaintiffs' employ for a competitor who also sells TIA products is insufficient to infer that Garez acquired, disclosed, and/or used Plaintiffs' trade secret information.

Accordingly, the motion to dismiss the trade secret misappropriation claims is granted without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court **grants** the motion without prejudice, and with leave to amend.  Plaintiffs are granted **thirty (30) days** leave to amend their pleading to address the deficiencies identified in this Order.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |