UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Order Regarding Motion to Dismiss

    Defendants Litrinium Inc. ("Litrinium") and Jerome Garez ("Garez") (collectively, "Defendants") filed a motion to dismiss Plaintiffs MACOM Technology Solutions Inc.'s ("MACOM") and Mindspeed Technologies, S.A.S.'s ("Mindspeed") (collectively, "Plaintiffs") Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(2)-(3) and 12(b)(6). Mot., ECF No. 55. In support of their motion, Defendants concurrently submitted the declaration of Jerome Garez ("Garez Declaration"). Garez Decl., ECF No. 55-1. Plaintiffs opposed the motion and filed the declarations of Jo Donovan ("Donovan Declaration") and Myriam-Rose Kohn ("Kohn Declaration") in support thereof. Opp'n., ECF No. 56; Donovan Decl., ECF No. 56-1; Kohn Decl., ECF No. 56-2. Defendants replied and filed the declaration of Michael I. Katz ("Katz Declaration") in support thereof. Reply, ECF No. 57; Katz Decl., ECF No. 57-1. Plaintiffs objected to Defendants submission of the Katz Declaration. Obj., ECF No. 58.

    For the following reasons, the Court **GRANTS** the motion.

**I. BACKGROUND**

    The SAC alleges that MACOM is the United States-based parent of Mindspeed, a French company. SAC ¶¶ 1, 2. Plaintiffs design, produce, and sell semiconductor technologies for optical, wireless, and satellite networks. Id. ¶ 11. The technology and non-public information at issue in this litigation concerns transimpedance amplifier ("TIA") designs and functionality. Id. ¶ 14. A TIA is a current-to-voltage converter, often used in optical receiver applications. Id. Garez is a former employee of Mindspeed who during his tenure was principally responsible for next-generation TIAs including a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

PAM-4 TIA, 28G Burst Mode TIA, 28G Gen1 TIA, 10G Gen2 TIA, 28G APD TIA single and quad versions, and 28G PIN TIA single and quad versions. Id. ¶¶ 3, 26.

As alleged on information and belief, Litrinium was formed in March 2016 by a former Mindspeed and MACOM employee, Najabat Hasnain Bajwa ("Bajwa"), who eventually recruited Garez to work at Litrinium. Id. ¶¶ 17, 18. Garez tendered his resignation from Mindspeed on or about December 6, 2017, and his employment terminated on March 6, 2018. Id. ¶ 28. Litrinium established an office in France to employ Garez as early as March 7, 2018. Id. All "substantive" Litrinium operations are conducted through its California entity. Id. ¶ 29.

Garez was directly involved in developing the alleged trade secrets. Id ¶ 44. According to a forensic investigation of Garez's activities conducted after his departure, Garez was working on projects unrelated to his employment with Plaintiffs while still employed by them, including a "burst mode PON receiver" and "3rd generation 28G TIA." Id. ¶ 21. These unrelated projects included developing circuits, including running temperature sweeps and other parametric simulations to test the robustness of the designs, and designing schematics. Id. Plaintiffs also found that some of the information Garez deleted prior to his departure from their employ concerned his work on a 28G TIA, including work "on a peak detector circuit for a burst-mode TIA and a sophisticated offset compensation circuit." Id. ¶ 22.

A forensic analysis of Garez's laptop and desktop computers conducted shortly before his departure indicated that Garez deleted technical information from his company laptop and accessed files on his work laptop using a USB device, a device which Garez never turned over to Plaintiffs despite the Garez's contractual obligation to return all company property. Id. ¶ 23.

As alleged on information and belief, prior to his departure from Plaintiffs' employ, Garez also used regularly scheduled business trips to Plaintiffs' Newport Beach, California offices to visit Litrinium and/or connect with Bajwa to coordinate Garez's misappropriation of Plaintiffs' trade secrets. Id. ¶ 24. The misappropriation is substantial because, as alleged on information and belief, the design and development of Plaintiffs' 2nd generation 28G TIA required substantial effort from multiple individuals employed by Plaintiffs, not just Garez. Id. ¶ 25. And, on information and belief, Garez's development of TIAs while employed by Plaintiffs were "of particular commercial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

interest to Litrinium." Id. ¶ 26.

The SAC asserts three causes of action: (1) misappropriation of trade secrets in violation of the federal Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b); (2) misappropriation of trade secrets in violation of the California Uniform Trade Secret Act ("CUTSA"), Cal. Civ. Code §§ 3426, et seq., and (3) breach of contract. SAC, ECF No. 54. The trade secret claims are brought against both Litrinium and Garez, while the breach of contract claim is brought only against Garez. Id. Defendants now move to dismiss all claims alleged therein. Mot., Docket No. 55.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(2)

Before trial, nonresident defendants may move to dismiss the case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Pennoyer v. Neff, 95 U.S. 714, 720 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 206 (1977). The contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient "contacts, ties, or relations" between the defendant and the forum state before "mak[ing] binding a judgment *in personam* against an individual or corporate defendant." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Due Process requires that "there exist 'minimum contacts' between the defendant and the forum" in order to protect the defendant "against the burdens of litigating in a distant or inconvenient" court and lend "a degree of predictability to the legal system." World-Wide Volkswagen, 444 U.S. at 291–92, 297.

Jurisdiction must also comport with law of the forum state. See Fed. R. Civ. P. 4(k)(1)(A); Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because California's long-arm statute allows the exercise of jurisdiction on any basis consistent with the state and federal constitutions, the jurisdictional analyses of state law and federal due process are the same. Cal. Code. Civ. Proc. § 410.10; see also Yahoo!, 433 F.3d at 1205.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction,

Case 8:19-cv-00220-JVS-JDE   Document 72   Filed 09/23/19   Page 4 of 18   Page ID #:3168

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff's allegations of jurisdictional facts must also be supported by competent proof. Hertz Corp. v. Friend, 559 U.S. 77, 96–97 (2010). In the absence of an evidentiary hearing, "[h]owever, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)). To make the requisite showing, a plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotation marks and citation omitted). In evaluating the plaintiff's showing, all uncontroverted allegations in the complaint are taken as true and all disputed facts are resolved in plaintiff's favor. Id.; Schwarzenegger, 374 F.3d at 800.

A defendant may waive personal jurisdiction requirements prior to the initiation of suit. M/S Bremen v. Zapata Off-shore Co., 407 U.S. 1, 11 (1972). Valid forum selection clauses, when freely negotiated and not unreasonable or unjust, constitute a waiver of personal jurisdiction requirements. Id. at 12–13. In diversity jurisdiction cases, federal law controls the interpretation and analysis of forum selection clauses because forum selection is a venue matter. Jones v. GNC Franchising, Inc., 211 F.3d 495, 497 (9th Cir. 2000); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988).

Personal jurisdiction may be premised on general personal jurisdiction (based on a defendant's continuous presence in a state) or specific personal jurisdiction (based on specific contacts with the state specifically related to the claims at issue).

### 1. General Personal Jurisdiction

For general jurisdiction to exist over a nonresident defendant, it must have affiliations with the forum state "so continuous and systematic as to render the foreign [defendant] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)) (internal quotation marks omitted). In other words, a defendant's "continuous and systematic general business contacts" with the forum must "approximate physical presence" in the forum state. Schwarzenegger, 374 F.3d at 801 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)). Where general jurisdiction exists, the Court has jurisdiction over the defendant for all purposes, even in cases where the claims arise from dealings unrelated to those that establish jurisdiction. Daimler, 571 U.S. at 127.

   2. Specific Personal Jurisdiction

A defendant is subject to specific personal jurisdiction only if a controversy arises out of or is sufficiently related to the defendant's contacts with the forum state. Goodyear, 564 U.S. at 919; see also Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995). The Ninth Circuit has established a three-part test to determine whether courts may exercise specific jurisdiction over a nonresident defendant:

> (1)   The nonresident defendant purposefully directs his activities or consummates some transaction with the forum or the forum's resident; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; and
>
> (2)   The claim arises out of or results from the nonresident defendant's forum-related activities; and
>
> (3)   The exercise of jurisdiction comports with fair play and substantial justice (i.e., jurisdiction is reasonable).

Schwarzenegger, 374 F.3d at 802 (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden on the first two prongs. Id. If the plaintiff fails to satisfy either prong, "jurisdiction in the forum would deprive the defendant of due process of law." Omeluk, 52 F.3d at 270. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

### B. Fed. R. Civ. P. 12(b)(3)

An action may be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Transfer is generally in the interest of justice because "dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990) (internal quotation marks omitted). The plaintiff bears the burden of showing that venue is properly laid in the district where the action was filed. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).

Where the court has federal question jurisdiction over the action, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

This "calculus changes, however, when the parties' contract contains a valid forum-selection clause." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013). A valid forum-selection clause should be given controlling weight "in all but the most exceptional cases." Id. The analysis changes in three ways with the presence of a valid forum-selection clause. Id. First, the party seeking transfer "bears the burden of establishing" that the "forum for which the parties bargained is unwarranted." Id. Second, the Court may not consider the private interest factors because they are deemed to weigh "entirely in favor of the preselected forum." Id. at 582. "[A] district court may consider arguments about public-interest factors only," but they "will rarely defeat a transfer motion." Id. Third, the original venue's choice of law rules will not apply in the preselected forum. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

In determining whether to enforce a forum-selection clause under Rule 12(b)(3), the Court "'must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the nonmoving party.' The non-moving party's pleadings need not be accepted as true, however, and [the Court] may consider facts outside the pleadings." Petersen v. Boeing Co., 715 F.3d 276, 279 (9th Cir. 2013). For procedural purposes here, Garez is the non-moving party.

### C. Fed. R. Civ. P. Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement of relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. For purposes of ruling on a Rule 12(b)(6) motion, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### D. Leave to Amend

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

Leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend should be granted, four factors are considered: (1) undue delay, (2) bad faith or dilatory motive, (3) prejudice to the opposing party, and (4) futility of amendment. Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007); Foman v. Davis, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

#### A. Personal Jurisdiction as to Garez

The issue is whether Garez, who is not a citizen of California, can be subject to personal jurisdiction in California based on his contacts with the forum state. Garez submitted a declaration indicating that he is a citizen of and resides in France has only "occasionally traveled to California in connection with [his] employment and to attend conferences." Garez Decl. ¶¶ 1, 7.

##### 1. General Jurisdiction

Defendants allege that the SAC does not sufficiently plead general jurisdiction over Garez because Plaintiffs have not pled that Garez had sufficient substantial or continuos and systematic contacts with California to render him present in the state for all purposes. Mot. 5. In turn, Plaintiffs incorrectly reply that the Court has already ruled on jurisdiction.[1] Opp'n. 14. The remainder of Plaintiffs' brief focuses on specific personal jurisdiction and not general jurisdiction. Id. 14, n.6.

Here, Garez is domiciled in France and employed in France. Garez Decl. ¶ 2. Garez admits that he has "occasionally traveled to California" in connection with his employment and to attend conferences. Id. ¶ 7. However, occasional travel for employment and to attend conferences are not substantial, continuous, and systematic contacts to the extent that would deem Garez "present" in California for all purposes. See Yahoo!, 433 F.3d at 1205. The Court finds that it does not have general jurisdiction over Garez.

---

[1] The Court's June 3, 2019 Order determined that Plaintiffs sufficiently alleged conduct in California as related to their trade secret misappropriation claims, but did not rule on whether the court has personal jurisdiction over Garez. Order, 7, ECF No. 48.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

2.  Specific Jurisdiction

    (A)  *Purposeful Availment*

The "purposeful availment" prong of the Ninth Circuit's three part test assures that a nonresident defendant will be aware that it could be sued in the forum state. World-Wide Volkswagen, 444 U.S. at 297. This requirement is met if Defendants engaged in "significant activities" within California or have created "continuing obligations" between itself and the forum. Gray & Co. v. Firestenberg Mach. Co., 913 F.2d 758, 760 (9th Cir.1990). The availment must be purposeful, and will not be found where the defendant's contacts with the forum occurred solely by the actions of the plaintiff or of a third party. See Burger King, 471 U.S. at 475. This requirement may be satisfied by a demonstration of purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof. Yahoo!, 433 F.3d at 1206.

Nevertheless, the Ninth Circuit has treated "purposeful availment" differently in tort and contract cases. In tort cases, the Court typically inquires whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, regardless of whether or not the actions themselves occurred within the forum. Yahoo!, 433 F.3d at 1206 (citing Schwarzenegger, 374 F.3d at 803). Defendants must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) which causes harm that the Defendants know is likely to be suffered in the forum state. Id. In contrast, in contract cases, the Court inquires whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s][a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract. Yahoo!, 433 F.3d at 1206.

The SAC alleges that Garez has had sufficient contacts because he has had "numerous and continuous communications with Plaintiffs' employees . . . . Garez frequently communicated with MACOM's Newport Beach employees via email, videoconferences and phone calls about the development of the trade secrets and about Plaintiffs' products that are at issue." SAC ¶ 9. The SAC further asserts that MACOM, a Delaware corporation with its principle place of business in Massachusetts, operates design centers in California which "assist in developing the trade secrets" at issue. Id. ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

2.  Garez allegedly "provided internal presentations" to Plaintiffs' California employees and "travel[ed] to California to attend technical conferences," providing as an example four trips taken by Garez to California between 2014-2016 which were reimbursed by Plaintiffs.  Id. ¶ 9.  Plaintiffs also allege that they believe Garez's contacts have continued during his employment at Litrinium because nine of Litrinium's eleven employees are located in Southern California and only Garez is believed to work in France.  Id. ¶ 10.  Garez allegedly works "closely with Litrinium's engineering and marketing employees in California to design and market Litrinium's products."  Id.  Plaintiff contends that Litrinium is a Delaware corporation with its principal place of business located in Aliso Viejo, California, but believe the sole purpose of Litrinium's office in France is to employ Garez.  Id. ¶ 4, 10.  Further, Plaintiffs allege that on information and belief Garez used "regularly scheduled business trips to Plaintiffs' Newport Beach, California offices to visit Litrinium and/or connect with Mr. Bajwa in order to coordinate Garez' misappropriation of Plaintiffs' trade secrets."  Id. ¶ 24.

Defendants argue that Garez' communications with coworkers were not acts aimed at the State of California.  Mot. 8.  Defendants further argue that Garez' alleged deletion of files and inappropriate use of a USB device are not alleged to have occurred in California.  Id. 9.  Finally, Defendants contend that Plaintiffs have not shown that the Garez would have known that the alleged harm caused by him was likely to be suffered in California.  Id.

The Court disagrees.  Since Plaintiffs allege both contract and tort claims, the court analyses the "purposeful availment" prong for both.  Turning first to the torts claims, Garez' continuous communications with coworkers at MACOM's design centers to develop trade secrets are acts directed at California.  Additionally, as described above, Plaintiffs alleged that Garez traveled to California for work during his tenure at Plaintiffs and used such travel to coordinate misappropriation of Plaintiffs' trade secrets.  Id. ¶ 24.  Such acts were also directed at California.  Furthermore, taking Plaintiffs allegations as true, Garez would likely have known that misappropriating trade secrets which were developed in part by employees located at a design center in California would affect California.  As such, the court finds that Garez purposefully directed his contacts at California for purposes of the torts claims.

Turning now to Plaintiffs breach of contract claim, Garez purposefully availed himself of conducting activities or consummating transactions in the forum by (1)

Case 8:19-cv-00220-JVS-JDE   Document 72   Filed 09/23/19   Page 11 of 18   Page ID #:3175

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

traveling to California for work during his tenure at Plaintiffs and using such travel to coordinate misappropriation of Plaintiffs' trade secrets; and (2) continuously communicating with Plaintiffs employees in California to develop Plaintiffs' trade secrets. See Id. ¶¶ 9, 24.

    (B) *Arising Out Of Or Resulting from Forum Related Activities*

  To satisfy the second part of the specific jurisdiction analysis, Plaintiffs must show Defendants' activities arise out of or relate to their forum-related activities. Menken v. Emm, 503 F.3d 1050, 1058 (9th Cir. 2007). This requirement is met if "but for" the contacts between the Defendants and the forum state, the cause of action would not have arisen. Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).

  This prong is met by Plaintiffs as Plaintiffs' alleged injuries would not have occurred "but for" Garez': (1) alleged contacts with Plaintiffs' California employees to develop trade secrets; (2) coordination with Bajwa to coordinate misappropriation of trade secrets; and (3) targeting Plaintiffs whose trade secrets are alleged to have been developed in part in design centers in California. See SAC ¶¶ 2, 9, 24.

    (C) *Jurisdiction is Reasonable*

  Finally, the Court turns to the reasonableness inquiry. Once the first two prongs have been decided, Defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction." Harris Rutsky & Co., 328 F.3d at 1132. The Court considers seven factors in weighing reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Id. No one factor is dispositive in itself. Id. Instead, the Court must balance all seven factors. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

Defendants argue that an exercise of jurisdiction over Garez offends traditional notions of fair play and substantial justice because Garez is a French citizen and resident who is employed in France and lacks the means to defend himself in California. Mot. 11. Furthermore, Defendants contend that Garez has not purposefully interjected himself in the affairs of California in part because Plaintiffs are based out of Massachusetts and France. Id. Defendants conclude that France is a suitable alternative forum and that California has less of an interest in the matter at hand than France, where Mindspeed and Garez are located. Id.

Plaintiffs respond that Garez' burden in defending himself is minimal since he is jointly represented by Litrinium's counsel. Opp'n. 21. Plaintiffs also assert that since Litrinium, Garez's counsel, and Plaintiffs' counsel are located in California, and MACOM's California design center assisted in developing the trade secrets at issue, the current forum is convenient and efficient. Id. 21-22. Additionally, Plaintiffs properly note that California has a strong interest in applying its trade secrets laws to protect against misappropriation of trade secrets. Id.

Defendants have not met their burden of presenting a compelling case that this Court's exercise in jurisdiction would be unreasonable. Garez has made continuous contacts in California with both Plaintiffs' and Litrinium's employees and has traveled to California in the past, including to allegedly coordinate the misappropriation of trade secrets. Furthermore, Garez is represented jointly with Litrinium whose principal place of business is alleged to be in California. Additionally, California has a strong interest in protecting against misappropriation of trade secrets. Although the alternative forum of France exists, it would not provide the most efficient judicial resolution of the controversy given that (as discussed below) although it governs the breach of contract claim, Plaintiffs have also alleged a violation of the Defense of Trade Secrets Act and the California Uniform Trade Secret Act. Considered as a whole, these factors suggest that this Court's exercise in jurisdiction comports with fair play and substantial justice.

Accordingly, the Court exercises specific personal jurisdiction over Garez.

### B. Appropriate Venue

Garez next alleges that this Court is an inappropriate venue to adjudicate Plaintiffs' breach of contract claim because his employment agreement includes a forum selection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

clause directing that disputes arising from the contract be adjudicated in France. Mot. 12. Garez's 2006 Employment Agreement ("2006 Agreement") states: "[t]his contract will be subject to the jurisdiction of the French courts who will adjudicate according to French law." Kohn Decl. 2. The Court interprets the language "[l]e présent contrat sera soumis à la compétence des tribunaux francais qui statueront selon le droit français," particularly the phrase "this contract will be submitted to the jurisdiction of the French courts" to provide exclusive jurisdiction in France. See Garez Decl. 2, Ex. B, 4.

Plaintiffs argue that the 2014 letter titled Terms and Conditions of Post-Acquisition Employment ("2014 Letter Agreement") and not the 2006 Employment Agreement ("2006 Agreement") should control because the 2014 Letter Agreement amends the 2006 Agreement and omits the "will be subject to the jurisdiction of the French courts" language. Opp'n. 23; Garez Decl., Exh. B, 1[2]; Donovan Decl., Ex. 1. However, while Plaintiffs are correct that the 2014 Letter Agreement does not contain that language, the 2014 Letter Agreement notes that the terms of Garez's employment with Mindspeed had not changed "unless otherwise described in [the] letter." Donovan Decl., Ex. 1, 4. As such, the omission of the specific language along with an omission as to a change in the controlling jurisdiction, do not render the language in the 2006 Agreement invalid.

Accordingly, the court dismisses Count III of the SAC for lack of proper venue.

C.   **Failure to Allege Trade Secret Misappropriation**

Misappropriation under the DTSA includes both the acquisition of trade secrets by improper means and the "disclosure or use of a trade secret of another . . . by a person who . . . at the time of the disclosure or use, knew or had reason to know that the knowledge of the trade secret was - . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." See 18 USC § 1839(5)(A), (5)(B)(ii)(III); InfoSpan, 2015 WL

---

[2]The Court notes that Defendant Garez has violated L.R. 11-3.10 which requires that a document in a foreign language must be filed concurrently with an English translation unless the Court orders otherwise upon a showing of good cause.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

13357646, at *4 (misappropriation under the CUTSA can occur through improper acquisition or through use).

Defendants argue that Plaintiffs' trade secret misappropriation claims should be dismissed because the SAC fails to plausibly allege misappropriation by Litrinium. Mot. 13-25. Specifically, Defendants argue that the SAC (1) fails to cure those defects noted by the Court in its prior Order because they rely on the same acts previously alleged and have failed to connect the alleged acts with the misappropriation of trade secrets; (2) fails to allege disclosure to or use of the alleged trade secrets by Litrinium; (3) fails to plausibly allege Litrinium has knowledge of the alleged misappropriation; and (4) continues to rely on competition as the basis of their claims. Id.

The SAC alleges the following. On information and belief, Bajwa, a former employee of Plaintiffs and founder of Litrinium, stayed in contact with Garez after departing from Plaintiffs' employ and eventually recruited Garez to Litrinium. SAC ¶¶ 17-19. Garez was involved in developing the alleged trade secrets, many of the alleged trade secrets are expressed in documents authored by or presentations delivered by Garez, and Garez and Plaintiffs spent years developing the alleged trade secrets. Id. ¶ 44. Despite there having been "no significant marketing activities by Litrinium" prior to Garez employment there, within months of Garez' arrival, Litrinium began marketing competing products. Id. Per "many of Plaintiffs' customers," Litrinium offers products with "the same or similar features" that include Plaintiffs' alleged trade secrets. Id. Defendants could not have developed the features within the "relevant time period" without using the alleged trade secrets. Id. Garez traveled on sales visits shortly after joining Litrinium, "which only makes sense if Garez was intimately familiar with Litrinium's products. Such familiarity is likely based on Litrinium offering products that have the same trade secret features and designs that Garez helped develop for Plaintiffs." Id.

Plaintiffs allegations that Garez could only have traveled on sales visits if he was familiar with Litrinium's products, and such familiarity is "likely" due to Garez' familiarity with products offering the same trade secret features, are conclusory statements that do not support an inference of misappropriation of a trade secret. See Id. The allegation that a former employee is sufficiently familiar with a product to travel on

Case 8:19-cv-00220-JVS-JDE   Document 72   Filed 09/23/19   Page 15 of 18   Page ID #:3179

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

sales visits does not lead one to the conclusion that the employee inappropriately used his knowledge to misappropriate a trade secret. Within the same vein are Plaintiffs' allegations that Litrinium was not marketing competitive products until a few month after Garez commenced his employment at Litrinium. See Id.

Plaintiffs continues to allege that according to a forensic investigation, Garez was working on projects unrelated to his job duties while employed by Plaintiffs, including "developing circuits," "running temperature sweeps," and "developing schematics of . . . designs." Id. ¶ 21. Plaintiffs add that "on information and belief" the work was done to benefit Litrinium so that "Garez would bring this knowledge from Plaintiffs with him when he joined Litrinium." Id. Prior to departing from Plaintiffs' employ, Garez attempted to delete information concerning his work on a "28G TIA, including work on a peak detector circuit for a burst-mode TIA and a sophisticated offset compensation circuit." Id. Plaintiffs allege that certain files and file pathways appear "according to their names" to be related to the alleged trade secrets. Id. ¶ 22. Plaintiffs also continue to allege that Garez "deleted technical information . . . from his company laptop and accessed files on his work laptop using a USB device within one month of his departure." Id. ¶ 22, 23. Plaintiffs add that using a USB device in this way is against company policy. Id. 23.

Plaintiffs continue to allege that "on information and belief," Garez used regularly scheduled business trips to California to "visit Litrinium and/or connect with Mr. Bajwa in order to coordinate Garez's misappropriation of Plaintiffs' trade secrets." Id. ¶ 24. Garez worked on "next generation TIAs" while employed by Plaintiffs that as alleged on information and belief "were of particular commercial interest to Litrinium" as evidenced by the fact that "Litrinium is targeting Plaintiffs' customers" and marketing products with the "same or similar features." Id. ¶¶ 26, 44. Garez used Plaintiffs' resources and time to develop and refine trade secrets and then misappropriated them for use by Litrinium to speed up development and refine their products. Id. ¶ 27.

The foregoing allegations are insufficient to state a claim for trade secret misappropriation. Although Plaintiffs have attempted to cure the defective allegations that plagued the First Amended Complaint, they have failed to plausibly allege that Defendants improperly acquired any trade secrets. The allegation that Garez had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

knowledge of trade secret information and was then recruited to Litrinium describes a change in employment, but not wrongful conduct.

Additionally, Plaintiffs have not alleged that the hidden projects relate to the allegedly misappropriated trade secrets. See Id. ¶ 21. Plaintiffs only allege that they were done to Litrinium's benefit "so that Garez would bring this knowledge from Plaintiffs with him." Id. However, Plaintiffs acknowledge that the hidden projects were "unrelated to his job duties." Id. The Court also fails to see how deleting information that "appears" to be related to trade secrets could constitute misappropriation or use of a trade secret. See Id. ¶ 22. Further, the allegation as to the USB only states that its use was against company policy, but not that it contained trade secrets which were misappropriated by Garez. Id. ¶ 23.

Plaintiffs have also failed to plausibly allege the disclosure or use of their trade secrets by Garez and Litrinium. First, Plaintiffs allegations that Garez used trade secret for the benefit of Litrinium products remains conclusory. See Id. ¶¶ 24, 27 ("such as marketing products with the same features as Plaintiffs products shortly after Garez started"). The allegation that Litrinium did not begin marketing their products until shortly after Garez began his employment there or that they developed competitive products with similar features does not allege wrongful conduct, but instead describes a market competitor. The Court also takes issue with Plaintiffs' contentions that Defendants' time to market of competitive projects was too short. Even when taken as true and in the light most favorable to Plaintiffs, the mere fact that a competitor markets a product faster than it took another competitor to develop their product, does not plausibly allege that the competitor's product must have been created with trade secrets. This is especially the case when Plaintiffs allegations are that Litrinium began marketing competitive products in "June 2018" and was formed more than two years earlier in "March 2016," while it took Plaintiffs three or more years to develop their second generation TIA products. Id. ¶¶ 31, 35. The allegations are further weakened given that they are based on "Plaintiffs' experience in the industry" and Plaintiffs' customers' comments that Litrinium's development time line is "too fast." Id. ¶¶ 34, 53.

The SAC also continues to have conclusory allegations regarding Garez' purported disclosure of Plaintiffs' trade secrets to Litrinium. Plaintiffs' allegations that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

"features" are similar or the same according to its customers are insufficient. See Id. ¶ 32. Further, the reworded allegation as to Bajwa's and Garez's coordinated misappropriation of trade secrets during business trips to California remains conclusory and is still does not explain how the misappropriation occurred, when it occurred and what was misappropriated by Defendant. Id. ¶ 24.

As the Court previously explained, without plausible allegations that Garez improperly acquired trade secrets, Plaintiffs cannot allege that Litrinium improperly acquired or used trade secrets since Garez is the only link between them. The allegation that Garez left Plaintiffs' employ for a competitor is insufficient to infer that Garez acquired, disclosed, and/or used Plaintiffs' trade secret information.

Therefore, the motion to dismiss the trade secret misappropriation claims is granted without prejudice.

### D. Leave to Amend

Plaintiffs seek leave to amend the allegations noting that they have only had one attempt to add allegations of trade secret misappropriation. Opp'n. 25. Defendants oppose the motion suggesting that Plaintiffs' goal is to use the lawsuit as a marketing weapon.[3] Reply, 25. However, leave should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Court does not find that there was undue delay given that this action was filed earlier this year and the complaint has only been amended twice. Additionally, the action does not appear to have been filed in bad faith. Finally, the court is not convinced by Defendants' arguments that amendment is futile or that they will be unduly prejudiced. Therefore, the Court grants Plaintiffs leave to amend.

### IV. CONCLUSION

---

[3]The Court excludes consideration of the Katz Declaration filed along with Defendants' Reply. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-220 JVS (JDEx) | Date | 9/23/2019 |
|---|---|---|---|
| Title | M/A-COM Technology Solutions, Inc., et al., v. Litrinium, Inc. et al. | | |

For the foregoing reasons, the Court **GRANTS** the motion. Plaintiffs are granted **twenty (20) days** leave to amend their pleading to address the deficiencies identified in this Order.

**IT IS SO ORDERED.**

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |